## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

---------------------------------------------------------------- x

|  |  |  |
|---|---|---|
| | : | |
| *In re:* | : | **Chapter 11** |
| | : | |
| **GT ADVANCED TECHNOLOGIES INC.,** *et. al.,* | : | **Case No. 14-_____ (____)** |
| | : | |
| **Debtors.**[1] | : | |
| | : | **Joint Administration Requested** |

---------------------------------------------------------------- x

### DEBTORS' EMERGENCY *EX PARTE* MOTION FOR ENTRY OF ORDER, PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 345(b), 363(c)(1), 364(a), 364(b), AND 503(b)(1), BANKRUPTCY RULES 6003 AND 6004, (A) AUTHORIZING DEBTORS TO USE EXISTING CASH MANAGEMENT SYSTEM, (B) AUTHORIZING AND DIRECTING BANKS AND FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS, (C) AUTHORIZING CONTINUED USE OF INTERCOMPANY TRANSACTIONS, (D) WAIVING REQUIREMENTS OF SECTION 345(b) OF BANKRUPTCY CODE AND (E) AUTHORIZING DEBTORS TO USE <u>EXISTING BANK ACCOUNTS AND EXISTING BUSINESS FORMS</u>

GT Advanced Technologies Inc. ("<u>GT</u>") and its affiliated debtors as debtors in possession in the above-captioned cases (collectively, "<u>GTAT</u>" or the "<u>Debtors</u>") hereby submit this motion (the "<u>Motion</u>") pursuant to sections 105(a), 345(b), 363(c)(1), 364(a), 364(b) and 503(b)(1) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), for entry of an order, substantially in the form attached hereto as <u>Exhibit B</u> (the "<u>Proposed Order</u>"), (a) authorizing GTAT to use its existing cash management system, (b) authorizing and directing banks and financial institutions to honor and process checks and transfers, (c) authorizing the continuation of Intercompany

---

[1] The Debtors, along with the last four digits of each debtor's tax identification number, as applicable, are: GT Advanced Technologies Inc. (6749), GTAT Corporation (1760), GT Advanced Equipment Holding LLC (8329), GT Equipment Holdings, Inc. (0040), Lindbergh Acquisition Corp. (5073), GT Sapphire Systems Holding LLC (4417), GT Advanced Cz LLC (9815), GT Sapphire Systems Group LLC (5126), and GT Advanced Technologies Limited (1721).  The Debtors' corporate headquarters are located at 243 Daniel Webster Highway, Merrimack, NH 03054.

Transactions (as defined below) in the ordinary course of business and consistent with historical business practices, (d) waiving the requirements of section 345(b) of the Bankruptcy Code, and (e) authorizing GTAT to use its existing bank accounts and existing business forms.  In support of this Motion, GTAT respectfully represents:

## <u>JURISDICTION, VENUE AND STATUTORY BASIS</u>

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 345(b), 363(c)(1), 364(a), 364(b), and 503(b)(1) of the Bankruptcy Code, Bankruptcy Rules 6003 and 6004.

## <u>BACKGROUND</u>

3.      On the date hereof (the "<u>Petition Date</u>"), GTAT commenced voluntary cases under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Hampshire (the "<u>Court</u>").  GTAT continues to operate its businesses and manage its properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no committees have been appointed or designated.

4.      GTAT has requested that these chapter 11 cases be consolidated for procedural purposes only, and be jointly administered pursuant to Bankruptcy Rule 1015(b).

5.      Information regarding GTAT's business, capital structure, and the circumstances leading to these chapter 11 cases is set forth in the *Declaration of Daniel W. Squiller in Support of Chapter 11 Petitions and First-Day Motions* (the "<u>First Day Declaration</u>"), which is incorporated herein by reference and filed contemporaneously herewith.

### GTAT's Business

6.      GTAT and its non-Debtor affiliates (collectively, the "GTAT Group") are leading manufacturers and suppliers of advanced materials and equipment for the global consumer electronics, power electronics, solar, and LED industries.  The GTAT Group designs and sells high-quality sapphire production equipment and materials for a wide variety of domestic and international markets, including the consumer electronics market.  In addition, the GTAT Group's historical business is based in the solar industry, where it is a leading provider of key polysilicon and photovoltaic equipment, services and technologies.  The GTAT Group is also in the process of developing and commercializing additional equipment and products, including an ion implantation equipment tool and advanced solar cell metallization and interconnect technology.  As of the Petition Date, the GTAT Group employs approximately 1,100 full-time employees in the United States and abroad, approximately 1,000 of whom work for the Debtors. The stock of GT is publicly traded under the symbol "GTAT".

7.      As of June 28, 2014, the GTAT Group's unaudited and consolidated financial statements reflected assets totaling approximately $1.5 billion and liabilities totaling approximately $1.3 billion.

### RELIEF REQUESTED

8.      By this Motion, GTAT seeks entry of an order: (a) authorizing GTAT to continue using its existing cash management system; (b) authorizing and directing banks and financial institutions to honor and process checks and transfers; (c) authorizing the continued use of Intercompany Transactions in ordinary course of business and consistent with historical business practices; (d) waiving the requirements of section 345(b) of the Bankruptcy Code; and (e) authorizing GTAT to use its existing bank accounts and existing business forms.

## Overview Of GTAT's Cash Management System

9.      To efficiently and seamlessly manage their business, GTAT maintains an integrated cash management system that provides well-established mechanisms for the collection, concentration, and disbursement of funds used in its world-wide operations (the "Cash Management System").  The Cash Management System is similar to those commonly employed by large technology companies to collect and transfer funds.  In the ordinary course of business, GTAT accurately records such collections, transfers, and disbursements as they are made.

10.      Because GTAT's operations are run in this manner and because of the nature of GTAT's businesses, it is most practical and efficient for GTAT to continue operating as it has prior to the Petition Date, as described more fully below.  The numerous benefits of using the Cash Management System include the ability to (a) quickly create status reports on the location and amount of funds, thereby allowing management to track and control funds, (b) ensure cash availability, and (c) reduce administrative expenses by facilitating the movement of funds.

11.      Granting GTAT authority to continue using the Cash Management System will facilitate a smooth transition into these chapter 11 cases.  A diagram of the Cash Management System is attached as Exhibit A (the "Cash Management Diagram").

### A.      Domestic Bank Accounts

12.      GTAT maintains 16 bank accounts in the United States (the "Domestic Bank Accounts") that are used to receive incoming payments, deposit checks, concentrate funds and make disbursements in the ordinary course of GTAT's business.  The Domestic Bank Accounts are maintained principally with Bank of America, N.A. ("BofA"); however, GTAT also maintains (i) one deposit account with Wells Fargo Bank, N.A ("Wells Fargo"), and (ii) one money market account with Santander Bank ("Santander").

13.     The Domestic Bank Accounts consist of deposit, disbursement, and investment accounts. Each of the Domestic Bank Accounts maintained by GTAT (with the name and contact information of the corresponding Bank) as part of its centralized Cash Management System is listed on <u>Schedule 1</u> to <u>Exhibit B</u> attached hereto.

**B.      Foreign Debtor Bank Accounts**

14.     As described more fully in the First Day Declaration, GTAT maintain operations and facilities outside of the United States. Indeed, 98% of GTAT's total revenue is generated outside the United States. To facilitate and support these operations, Debtor GT Advanced Technologies Limited ("<u>GT Advanced</u>") maintains seven bank accounts with BofA and its affiliate branches (the "<u>Foreign Debtor Bank Accounts</u>", together with the Domestic Bank Accounts, the "<u>Debtor Bank Accounts</u>"). Each of the Foreign Debtor Bank Accounts is listed on <u>Schedule 2</u> to <u>Exhibit B</u> attached hereto.

**C.      Non-Debtor Bank Accounts**

15.     Eight direct and indirect subsidiaries of GT have not sought chapter 11 relief in these proceedings (the "<u>Non-Debtor Bank Accounts</u>"). Each of the Non-Debtor Bank Accounts is listed on <u>Schedule 3</u> to <u>Exhibit B</u> attached hereto.

**D.      Accounts Overview**

16.     Given the number of Domestic Bank Accounts and Foreign Debtor Bank Accounts, this Motion does not describe each and every account in detail but, rather, highlights the significant features of the Cash Management System that GTAT used prior to the Petition Date. The Cash Management System was organized to collect and transfer funds generated by GTAT's businesses and to disburse the funds as necessary to satisfy the obligations of those businesses. GTAT could not function without continuing to maintain the accounts that comprise the Cash Management System.

a.      Collections and Disbursements

17.     GTAT generates revenue primarily from the sale of sapphire material and equipment and solar related equipment.  Those funds are deposited into operational accounts maintained by GTAT.  The operational accounts function as deposit and disbursement accounts from which GTAT disburses funds in the ordinary course of business.  For instance, GT Sapphire Systems Group LLC maintains an operational account with Wells Fargo from which deposits are made and disbursements issued.

18.     Additionally, GTAT provides purchasing cards (the "P-Cards") to certain employees to purchase goods and services that are used in GTAT's business.  BofA issues the P-Cards, and GTAT pays BofA directly for the business charges and fees incurred on those cards.  Historically, BofA has automatically debited a GTAT account on a monthly basis to satisfy the charges that were incurred on the P-Cards during the prior month.  GTAT requests authority to continue using the P-Card program postpetition in the ordinary course of business as part of its Cash Management System.

b.      Investment Accounts

19.     Two of the Debtors maintain investment accounts with BofA.  GTAT Corporation ("GTAT Corp.") holds two investment accounts with BofA (the "GTAT Investment Accounts") and GT Advanced Equipment Holding LLC ("GT Equipment") holds one investment account with BofA (the "GT Equipment Investment Account").  The GT Equipment Investment Account currently has a zero balance and the Debtors do not intend to use the GT Equipment Investment Account during these chapter 11 cases.

## II.   Intercompany Transactions

20.     In the ordinary course of business, the Debtors transfer funds between each other (the "Intercompany Transactions") as well as their non-Debtor affiliates.  GTAT accounts for the

6

movement of cash between, as well as the payment of expenses on account of, the various legal entities by recording intercompany payables and receivables. The intercompany accounts reflect real debts that are due and owing among GTAT and its non-Debtor affiliates.

21. GTAT could not function without the funds that are transferred through the Cash Management System. If GTAT is unable to continue Intercompany Transactions, GTAT's ordinary-course operations would be unnecessarily and severely hindered. Accordingly, if the Intercompany Transactions cannot continue, GTAT would be unable to operate its businesses during these chapter 11 cases, and a successful restructuring would be highly unlikely. Avoiding such potentially crippling disruptions to operations by continuing the Intercompany Transactions is, therefore, in the best interests of the estates. Accordingly, GTAT seeks the authority to continue to participate in Intercompany Transactions postpetition, in the ordinary course of business. Consistent with its prepetition practices, GTAT will maintain records of all transfers and can ascertain, trace, and account for all Intercompany Transactions. Moreover, GTAT's advisors employ personnel trained in chapter 11 cash management systems and are working closely with GTAT to ensure that GTAT will continue to maintain and administer these accounting records postpetition.

22. Additionally, pursuant to sections 105(a) and 503(b) of the Bankruptcy Code, GTAT requests that claims between Debtors arising from postpetition Intercompany Transactions be granted administrative expense priority status. Such Intercompany Transactions are consistent with and authorized by section 364(a) of the Bankruptcy Code, which provides that, unless the Court orders otherwise, GTAT is authorized to incur unsecured debt in the ordinary cause of business allowable as an administrative expense under section 503(b)(1).

## BASIS FOR RELIEF REQUESTED

### The Court Should Authorize GTAT to Maintain Its Existing Bank Accounts and Use Its Existing Cash Management System and Grant a Waiver of Any Requirement to Close Existing Accounts

23.    Although GTAT maintains its Debtor Bank Accounts as part of an established Cash Management System, the United States Trustee for Region 1, who administers bankruptcy cases filed in the District of New Hampshire, has issued certain chapter 11 operating guidelines pursuant to 28 U.S.C. § 586 ("U.S. Trustee Guidelines"). These guidelines include a requirement that chapter 11 debtors close all existing bank accounts upon filing of the petition and open new "debtor in possession" accounts in certain financial institutions designated as authorized depositories by the U.S. Trustee. These requirements are designed to draw a clear line of demarcation between prepetition and postpetition transactions and operations and prevent the inadvertent postpetition payment of prepetition claims. Here, however, a waiver of certain requirements is warranted given the controls that have been established to ensure a clear line of demarcation between prepetition and postpetition transactions.

24.    All of the Debtor Bank Accounts are maintained at financially stable banking institutions. Indeed, the U.S. Trustee has identified BofA, Wells Fargo and Santander as approved depositories for cases pending in this District.

25.    To protect against the unauthorized payment of prepetition obligations, GTAT represents that, if it is authorized to continue to use the Debtor Bank Accounts, they will not pay, and will not instruct the Banks to pay, any debts incurred before the Petition Date, other than as authorized by the Court.

26.    Moreover, any new account that GTAT opens will be: (a) with a bank that is (i) organized under the laws of the United States of America or any state therein and (ii) has

8

executed, or is willing to immediately execute, a Uniform Depository Agreement with the U.S. Trustee; and (b) designated a "Debtor in Possession" account by the relevant bank. Additionally, GTAT will provide the U.S. Trustee with notice of any new accounts that are opened.

27.     Enforcement of the U.S. Trustee's requirements here would impair GTAT's business operations and its restructuring efforts. GTAT's Cash Management System is highly computerized, which allows GTAT, with the assistance of its advisors, to manage cash flow needs and includes the necessary accounting controls to enable GTAT, as well as creditors and the Court, to trace funds through the system and ensure that all transactions are adequately documented and readily ascertainable. While GTAT's cases are pending, GTAT, with the assistance of its advisors, will continue to maintain and administer detailed records reflecting all transfers of funds.

28.     Accordingly, to avoid delays in payments to administrative creditors, and to ensure as smooth a transition into chapter 11 as possible, GTAT must be permitted to continue to maintain its existing Debtor Bank Accounts and open new and close existing accounts as needed, subject to the requirements noted above and the requirements under any debtor in possession financing proposed by GTAT.

29.     Allowing GTAT to utilize its prepetition Cash Management System and engage in related routine transactions is entirely consistent with applicable provisions of the Bankruptcy Code and customary relief in chapter 11 cases of similar size and scope. In particular, section 363(c)(1) of the Bankruptcy Code authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing." The purpose of section 363(c)(1) is to provide a debtor in possession with the flexibility to engage in the ordinary transactions required to operate its business without unneeded oversight by its creditors or the

court.[2]  Included within the purview of section 363(c) is a debtor's ability to continue the "routine transactions" necessitated by a debtor's cash management system.[3]

30.     The Cash Management System constitutes an ordinary course and essential business practice that is fully integrated into GTAT's operations and provides significant benefits to GTAT, including, among other things, the ability to (a) control corporate funds, (b) ensure the maximum availability of funds when and where necessary, and (c) reduce administrative expenses by facilitating the movement of funds and the development of more timely and accurate account balance information.

31.     Further, the existing Cash Management System is the most effective mechanism to manage receipts and disbursements between GTAT and third parties.  As a practical matter, because the Cash Management System interconnects GTAT's operations, it would be extremely difficult, expensive, and time-consuming to establish and maintain a different cash management system.

32.     Lastly, the Court may exercise its equitable powers to grant the relief requested herein.  Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title."  Continuing the Cash Management System without interruption is vital to the efficient and economic administration of these chapter 11 cases.  Therefore, it is within the Court's equitable power under section 105(a)

---

[2]     *See*, *e.g.*, *In re Roth Am., Inc.*, 975 F.2d 949, 952 (3d Cir. 1992) ("The framework of section 363 is designed to allow a trustee (or debtor-in-possession) the flexibility to engage in ordinary transactions without unnecessary creditor and bankruptcy court oversight, while protecting creditors by giving them an opportunity to be heard when transactions are not ordinary."); *Med. Malpractice Ins. Ass'n v. Hirsch (In re Lavigne)*, 114 F.3d 379, 384 (2d Cir. 1997); *In re Nellson Nutraceutical, Inc.*, 369 B.R. 787, 796 (Bankr. D. Del. 2007); *United States ex rel. Harrison v. Estate of Deutscher (In re H&S Transp. Co.)*, 115 B.R. 592, 599 (M.D. Tenn. 1990) ("Section 363 is designed to strike [a] balance, allowing a business to continue its daily operations without excessive court or creditor oversight and protecting secured creditors and others from dissipation of the estate's assets."); *In re Sea Queen Kontaratos Lines, Ltd.*, 10 B.R. 609, 609 (Bankr. D. Me. 1981) (citing § 363(c)(1) for the premise that "[t]here is a strong presumption that a reorganization debtor may continue to operate its business.").

to approve the continued use of the Cash Management System.  Based on the foregoing, GTAT submits that maintenance of the existing Cash Management System is in the best interests of GTAT's estates and all parties in interest.  Indeed, bankruptcy courts routinely permit large corporations to continue using their existing cash management systems, generally treating requests for such relief as customary in chapter 11 cases.[4]

### Waiving the Requirements of Section 345 of the Bankruptcy Code Is Warranted

33.     Section 345 of the Bankruptcy Code governs a debtor's deposit and investment of cash during a chapter 11 case and authorizes deposits or investments of money as "will yield the maximum reasonable net return on such money, taking into account the safety of such deposit or investment."  For deposits or investments that are not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," section 345(b) of the Bankruptcy Code requires the estate to obtain from the entity with which the money is deposited or invested a bond in favor of the United States and secured by the undertaking of an adequate corporate surety, unless the Court for cause orders otherwise.[5]  In the alternative, the estate may require the entity to deposit governmental securities pursuant to 31 U.S.C. § 9303.  Section 9303 provides that when a person

---

[3]      *Amdura Nat'l Distrib. Co. v. Amdura Corp. (In re Amdura Corp.)*, 75 F.3d 1447, 1453 (10th Cir. 1996).

[4]      *See In re Columbia Gas Sys., Inc.*, 136 B.R. 930, 934 (Bankr. D. Del. 1992) (recognizing that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash"), *aff'd in part, rev'd in part*, 1992 U.S. Dist. LEXIS 9460 (D. Del. July 6, 1992), *aff'd in part, rev'd in part*, 997 F.2d 1039 (3d Cir. 1993), *cert. denied sub nom. Official Comm. of Unsecured Creditors v. Columbia Gas Transmission Corp.*, 510 U.S. 1110 (1994); *see also In re Munce's Superior Petroleum Products, Inc.*, Case No. 11-10975 (JMD) (Bankr. D.N.H. Mar. 17, 2011); *In re Sea Pine, Inc.*, Case No. 10-10590 (LHK) (Bankr. D. Me. April 27, 2010); *In re Correct Building Products, LLC*, Case No. 09-21024 (JBH) (Bankr. D. Me. July 8, 2009); *In re Red Shield Environmental, LLC*, Case No. 08-10633 (LHK) (Bankr. D. Me. July 10, 2008); *In re Androscoggin Energy LLC*, Case No. 04-12221 (LHK) (Bankr. D. Me. Dec. 22, 2004); *In re Pegasus Satellite Television, Inc.*, Case No. 04-20878 (JBH) (Bankr. D. Me. June 7, 2004); *In re Divine Inc.*, Case No. 03-11472-JNF (Bankr. D. Mass. 2003); *In re ACT Mfg., Inc.*, Case No. 01-47641 (JBR) (Bankr. D. Mass. 2001); *In re Trend-Lines, Inc.*, Case No. 00-15431 (CJK) (Bankr. D. Mass. 2000).

is required by law to give a surety bond, that person, in lieu of a surety bond, may provide a governmental obligation.[6]

34.    The Court, however, has discretion to waive the foregoing section 345(b) requirements "for cause."[7]    In determining whether the "for cause" standard has been met, the Court should consider the "totality of the circumstances," utilizing the following factors:

(a)    the sophistication of the debtor's business;
(b)    the size of the debtor's business operations;
(c)    the amount of the investments involved;
(d)    the bank ratings (Moody's and Standard and Poor) of the financial institutions where the debtor in possession funds are held;
(e)    the complexity of the case;
(f)    the safeguards in place within the debtor's own business of insuring the safety of the funds;
(g)    the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions;
(h)    the benefit to the debtor;
(i)    the harm, if any, to the estate; and
(j)    the reasonableness of the debtor's request for relief from section 345(b) requirements in light of the overall circumstances of the case.[8]

35.    GTAT submits that the circumstances of these chapter 11 cases warrant such relief.  GTAT utilizes a complex Cash Management System that relies on multiple Debtor Bank Accounts on a daily basis.  The Debtor Bank Accounts are all authorized depositories and in compliance with section 345 of the Bankruptcy Code.

36.    GTAT believes that funds to be held in its Debtor Bank Accounts, even when in an amount in excess of the amounts insured by the FDIC, are secure and that obtaining bonds to secure these funds, as required by section 345(b) of the Bankruptcy Code, is unnecessary and detrimental to GTAT's estates and creditors.  GTAT submits that "cause" exists pursuant to

---

[5]    *See* 11 U.S.C. § 345(b).

[6]    *See* 31 U.S.C. § 9303.

[7]    11 U.S.C. § 345(b).

[8]    *In re Serv. Merch. Co., Inc.*, 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

section 345(b) to waive such requirement because, among other considerations, (a) the Banks are highly rated and are federally chartered banks subject to supervision by federal banking regulators in the United States, (b) GTAT retains the right to remove funds held at the Banks and establish new bank accounts as needed, (c) the cost associated with satisfying the requirements of section 345 is burdensome, and (d) the process of satisfying those requirements would lead to needless inefficiencies in the management of GTAT's business.  Moreover, strict compliance with the requirements of section 345 would not be practical in these chapter 11 cases.  A bond secured by the undertaking of a corporate surety would be prohibitively expensive, if such bond is available at all.  GTAT believes that the benefit of waiving the 345(b) requirement far outweighs any potential harm to the estates.  As such, GTAT submits that cause exists for a waiver of the investment and deposit restrictions of section 345(b) of the Bankruptcy Code.

37.     The relief requested herein has been granted in other large and complex chapter 11 cases.[9]  GTAT respectfully submits that such relief should be granted here.

### Maintenance of GTAT's Existing Check Stock is Warranted

38.     To minimize expenses to the estates, GTAT also requests authorization to continue using check stock as it existed immediately prior to the Petition Date, without reference to GTAT's status as debtor in possession.  Most parties doing business with GTAT undoubtedly will be aware of GTAT's status as debtor in possession as a result of the press coverage.  In addition, each of GTAT's known creditors will receive direct notice of the commencement of these chapter 11 cases.

---

[9]     *See, e.g., In re Furniture Brands,* Case No. 13-12329 (CSS) (Bankr. D. Del. Sep. 30, 2013); *In re A123 Sys., Inc.,* Case No. 12-12859 (KJC) (Bankr. D. Del. Dec. 11, 2012); *In re WP Steel Venture LLC,* Case No. 12-11661 (KJC) (Bankr. D. Del. June 1, 2012); *In re Solar Trust of Am., LLC,* Case No. 12-11136 (KG) (Bankr. D. Del. Apr. 3, 2012); *In re AES Eastern Energy, L.P.,* Case No. 11-14138 (KJC) (Bankr. D. Del. Jan. 26, 2012).  Because of the voluminous nature of the unreported orders cited herein, they are not annexed to the Motion.  Copies of these orders are available upon request of GTAT's proposed undersigned counsel.

39.     Finally, changing correspondence and check stock would be expensive, unnecessary, and burdensome to GTAT's estate and will not confer any real benefit upon those dealing with GTAT.  For these reasons, GTAT requests that authorization to use existing check stock without being required to place the label "Debtor-in-Possession" (or any similar label) upon it until such checks are used.  Upon reordering check stock, GTAT will ensure that subsequently issued checks bear the designation "Debtor-in-Possession" and the lead case number in these chapter 11 cases.

40.     In other large chapter 11 cases, courts in this and other districts have recognized that strict enforcement of the requirement that a debtor in possession close its bank accounts does not serve the rehabilitative process of chapter 11.[10]  Similar authorization is appropriate in these chapter 11 cases.

### The Court Should Authorize GTAT and the Banks to Honor Certain Prepetition Obligations Related to the Cash Management System

41.     GTAT requests that the Court authorize and direct the Banks on which checks are drawn or electronic funds are transferred in the ordinary course of GTAT's business to receive, process, honor, and pay, to the extent of funds on deposit, any and all such checks or electronic transfers, whether such checks or transfers were issued before or after the Petition Date, upon the receipt by each such bank of notice of such authorization without further order of the Court.

42.     Further, GTAT also requests that the Court authorize and direct the Banks to rely on the representations of GTAT as to which checks are issued and authorized to be paid in

---

[10]     *See, e.g.*, *In re Munce's Superior Petroleum Products, Inc.*, Case No. 11-10975 (JMD) (Bankr. D.N.H. Mar. 17, 2011); *In re Sea Pine, Inc.*, Case No. 10-10590 (LHK) (Bankr. D. Me. Apr. 27, 2010); *In re Correct Building Products, LLC*, Case No. 09-21024 (JBH) (Bankr. D. Me. July 8, 2009*); In re Red Shield Environmental, LLC*, Case No. 08-10633 (LHK) (Bankr. D. Me. July 10, 2008); *In re Androscoggin Energy LLC*, Case No. 04-12221 (LHK) (Bankr. D. Me. Dec. 22, 2004); *In re Gold-Standard Baking, Inc.*, 179 B.R. 98, 105-106 (Bankr. N.D. Ill. 1995) (holding United States Trustee's requirement prohibiting issuance of checks without "debtor in possession" designations unenforceable); *In re Great Northern Paper, Inc.*, Case No. 03-10048 (LHK) (Bankr. D. Me. 2003).

accordance with this Motion without any duty of further inquiry and without liability for following GTAT's instructions.   Given, the necessity of maintaining the Cash Management System, GTAT respectfully submits that this relief is necessary and warranted.

43.     Moreover, in connection with the Cash Management System, GTAT may incur fees and other charges (collectively, all such fees and charges, the "Bank Account Claims") in connection with (a) Bank services (the "Service Charges"), (b) checks deposited with banks that have been dishonored or returned for insufficient funds in the applicable amount, and (c) any reimbursement or other payment obligations, such as overdrafts, arising under any agreements governing the Debtor Bank Accounts, including, without limitation, any prepetition cash management agreements or treasury services agreements (the "Bank Account Agreements"). GTAT estimates that outstanding Bank Account Claims total less than $10,000 as of the Petition Date.

44.     As with the Cash Management System, payment of the Bank Account Claims will minimize disruption to GTAT's operations and is, therefore, in the best interests of its estates. Absent payment of the Bank Account Claims, the Banks might assert setoff rights against the funds in the Debtor Bank Accounts on account of the Bank Account Claims, freeze the Debtor Bank Accounts, and/or refuse to provide banking services to GTAT.  The payment of Bank Account Claims generally will not prejudice unsecured creditors given that, as noted above, the Banks may have setoff rights with respect to the Bank Account Claims.  Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, GTAT seeks authority, in its sole discretion, to pay and/or reimburse the Banks in the ordinary course of business for any Bank Account Claims arising prior to or after the Petition Date.

45.     Courts have routinely granted the same or similar relief as requested in the

Motion to chapter 11 debtors.[11]  GTAT respectfully submits that such relief should be granted here.

**The Court Should Authorize GTAT to Continue
the Intercompany Transactions in the Ordinary Course of Business**

46.     Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, debtors in possession are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners."[12]  Implicit in the fiduciary duties of any debtor in possession is the obligation to "protect and preserve the estate, including an operating business's going-concern value."[13]  As the *CoServ* court noted, there are instances in which a debtor can fulfill this fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim."[14]  The pre-plan satisfaction of prepetition claims is one such instance if the payment "is the only means to effect a substantial enhancement of the estate."[15]

47.     Here, authorizing GTAT, in its business judgment, to continue to engage in Intercompany Transactions, in the ordinary course of business and consistent with historical business practices, will assist GTAT in fulfilling its fiduciary obligations to maximize the value of the estate for all creditors and thus is a valid exercise of sound business judgment.  As noted above, the Intercompany Transactions are essential to the continued going-concern value and survival of GTAT's operations.

48.     Furthermore, authorizing GTAT to continue the Intercompany Transactions is

---

[11]     *See, e.g., In re Furniture Brands,* Case No. 13-12329 (CSS) (Bankr. D. Del. Sep. 30, 2013); *In re A123 Sys., Inc.*, Case No. 12-12859 (KJC) (Bankr. D. Del. Dec. 11, 2012); *In re LightSquared Inc.*, Case No. 12-12080 (SCC) (Bankr. S.D.N.Y. Jun. 11, 2012); *In re Local Insight Media Holdings, Inc.*, Case No. 10-13677 (KG) (Bankr. D. Del. Nov. 19, 2010); *In re OTC Holdings Corp.*, Case No. 10-12636 (BLS) (Bankr. D. Del. Aug. 27, 2010).

[12]     *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).

[13]     *Id.*

[14]     *Id.*

appropriate under sections 363(b) or 363(c) and is an appropriate exercise of the Court's

equitable powers under section 105(a) of the Bankruptcy Code.[16]   Further, authorization to

engage in intercompany transactions, similar to the relief requested here, is routinely granted in

complex chapter 11 cases.[17]

49.     To ensure that any GTAT entity does not fund the operations of an affiliated

entity without a right to repayment, GTAT respectfully request that, pursuant to sections

503(b)(1) and 364(b) of the Bankruptcy Code, all intercompany obligations of a Debtor arising

after the Petition Date be accorded administrative expense priority.  If intercompany obligations

are accorded administrative expense priority, each entity utilizing funds flowing through the

Cash Management System should continue to bear ultimate repayment responsibility for such

ordinary course transactions.

50.     Accordingly, GTAT requests that the Court authorize GTAT to continue engaging

in Intercompany Transactions in the ordinary course of business and in connection with its

continued use of the Cash Management System.  Additionally, pursuant to sections 105(a) and

503(b) of the Bankruptcy Code, GTAT requests that claims arising from postpetition

Intercompany Transactions be granted administrative expense priority status.

---

[15]     *Id.*

[16]     *See, e.g., In re Gen. Growth Props.,* 412 B.R. 609, 610 (Bankr. S.D.N.Y. 2009) (holding that debtors were authorized to continue prepetition cash management practices, including intercompany transactions, pursuant to Bankruptcy Code sections 105(a) and 363(c)); *Charter Co. v. Prudential Ins. Co. of Am. (In re Charter Co.),* 778 F.2d 617, 621 (indicating that order authorizing continued use of cash management system that involved funds transfers to non-debtor affiliates was "entirely consistent" with section 363(c)(1) because the practice was "usual and customary in the past").

[17]     *See, e.g., In re Kingsbury Corporation,* Case No. 11-13671 (JMD) (Bankr. D.N.H. Oct. 6, 2011)*; In re MPM Silicones, LLC,* Case No. 14-22503 (RDD) (Bankr. S.D.N.Y. May 16, 2014); *In re Energy Future Holdings Corp,* Case No. 14-10979 (CSS) (Bankr. D. Del.Jun. 4, 2014); *In re Furniture Brands,* Case No. 13-12329 (CSS) (Bankr. D. Del. Sep. 30, 2013); *In re A123 Sys., Inc.,* Case No. 12-12859 (KJC) (Bankr. D. Del. Dec.11, 2012); *In re WP Steel Venture LLC,* Case No. 12-11661 (KJC) (Bankr. D. Del. Jun. 1, 2012); *In re Satelites Mexicanos, S.A. de C.V.,* Case No. 11-11035 (CSS) (Bankr. D. Del. Apr. 11, 2011); *In re Ambassadors Int'l, Inc.,* Case No. 11-11002 (KG) (Bankr. D. Del. Apr. 5, 2011); *In re Local Insight Media*

## THE REQUIREMENTS OF BANKRUPTCY RULE 6003 ARE SATISFIED

51.     Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  GTAT submits that the facts described herein demonstrate that the relief requested in this Motion is necessary to avoid immediate and irreparable harm to GTAT's business operations and the value of GTAT's estates, and that Bankruptcy Rule 6003 has been satisfied to permit such payments.

## WAIVER OF BANKRUPTCY RULES 6004(A) AND (H)

52.     To implement the foregoing successfully, GTAT seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h).

## RESERVATION OF RIGHTS

53.     Nothing contained herein is intended or should be construed as an admission of the validity of any claim against GTAT, a waiver of GTAT's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  GTAT expressly reserves its right to contest any invoice or claim related to the relief requested herein in accordance with applicable law.

## NOTICE

54.     Notice of this Motion has been provided by email, facsimile or overnight courier to: (a) the Office of the United States Trustee for Region 1, 1000 Elm Street, Suite 605 Manchester, NH 03101, Attn: Geraldine L. Karonis; (b) the creditors holding the 30 largest unsecured claims against GTAT's estates (on a consolidated basis); (c) the indenture trustee for

---

*Holdings, Inc.*, Case No. 10-13677 (KG) (Bankr. D. Del. Nov. 19, 2010); *In re OTC Holdings Corp.*, Case No. 10-12636 (BLS) (Bankr. D. Del. Aug. 27, 2010).

18

the Debtors' (i) 3.00% Convertible Senior Notes due 2017, and (ii) 3.00% Convertible Senior Notes due 2020, U.S. Bank National Association, 60 Livingston Avenue, St. Paul, MN 55107, Attn: Hazrat R. Haniff; (d) the Internal Revenue Service, 1000 Elm St., 9th Floor Manchester, NH 03101, Attn: District and Regional Directors; (e) U.S. Securities and Exchange Commission, 100 F Street, NE, Washington, DC 20549; (f) Apple Inc., 1 Infinite Loop, Cupertino, CA 95014, Attn: Jessica L. Fink, Senior Restructuring Counsel; (g) those parties who have formally filed requests for notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002; and (h) those entities listed on <u>Schedules 1, 2 and 3</u> attached to <u>Exhibit B</u>.

## NO PRIOR REQUEST

55.     No previous request for the relief sought herein has been made by GTAT to this or any other court.

## WAIVER OF MEMORANDUM OF LAW

56.     GTAT requests that the Court waive and dispense with the requirement set forth in Rule 7102(b)(2) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of New Hampshire ("LBR") that any motion filed shall have an accompanying memorandum of law. The legal authorities upon which GTAT relies are set forth in the Motion. Accordingly, GTAT submits that a waiver of the LBR 7102(b)(2) requirement is appropriate under these circumstances.

*[remainder of page intentionally left blank]*

**WHEREFORE**, GTAT respectfully requests that the Court enter an order, substantially in the forms attached hereto, granting the relief requested herein and granting GTAT such other and further relief as is just and proper.

Dated: October 6, 2014
        Manchester, NH

/s/ Daniel W. Sklar
Daniel W. Sklar, Esq.
Holly J. Barcroft, Esq.
NIXON PEABODY LLP
900 Elm Street
Manchester, NH 03101-2031
Telephone: (603) 628-4000
Facsimile: (603) 628-4040

- and -

Luc A. Despins, Esq.
Andrew V. Tenzer, Esq.
James T. Grogan, Esq.
PAUL HASTINGS LLP
Park Avenue Tower
75 East 55th Street, First Floor
New York, New York 10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090


*Proposed Co-Counsel for the Debtors and Debtors in Possession*

# EXHIBIT A

**DIAGRAM OF CASH MANAGEMENT SYSTEM**

# GTAT Advanced Technologies Inc. Cash Management System



## **EXHIBIT B**

**PROPOSED ORDER**

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF NEW HAMPSHIRE

------------------------------------------------------------- x
:
*In re:*                                            :   **Chapter 11**
:
**GT ADVANCED TECHNOLOGIES INC.,** *et. al.,*  :   **Case No. 14-_____ (_____)**
:
**Debtors.**[1]                                 :
:
:   **Jointly Administered**
:
:   RE: Docket No. __
------------------------------------------------------------- x

### ORDER, PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 345(b), 363(c)(1), 364(a), 364(b), AND 503(b)(1), BANKRUPTCY RULES 6003 AND 6004, (A) AUTHORIZING DEBTORS TO USE EXISTING CASH MANAGEMENT SYSTEM, (B) AUTHORIZING AND DIRECTING BANKS AND FINANCIAL INSTITUTIONS TO HONOR AND PROCESS CHECKS AND TRANSFERS, (C) AUTHORIZING CONTINUED USE OF INTERCOMPANY TRANSACTIONS, (D) WAIVING REQUIREMENTS OF SECTION 345(b) OF BANKRUPTCY CODE AND (E) AUTHORIZING DEBTORS TO USE EXISTING BANK ACCOUNTS AND EXISTING BUSINESS FORMS

Upon the motion (the "Motion")[2] of GT Advanced Technologies Inc. ("GT") and its

affiliated debtors as debtors in possession (collectively, "GTAT" or the "Debtors"), for entry of

an order pursuant to Bankruptcy Code sections 105(a), 345(b), 363(c)(1), 364(a), 364(b), and

503(b)(1), Bankruptcy Rules 6003 and 6004, as set forth more fully in the Motion; and this Court

having jurisdiction to consider the Motion and the relief requested therein in accordance with 28

U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a

core proceeding pursuant to 28 U.S.C. § 157; and venue being proper in this Court pursuant to 28

U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion being adequate and

---

[1]     The Debtors, along with the last four digits of each debtor's tax identification number, as applicable, are: GT Advanced Technologies Inc. (6749), GTAT Corporation (1760), GT Advanced Equipment Holding LLC (8329), GT Equipment Holdings, Inc. (0040), Lindbergh Acquisition Corp. (5073), GT Sapphire Systems Holding LLC (4417), GT Advanced Cz LLC (9815), GT Sapphire Systems Group LLC (5126), and GT Advanced Technologies Limited (1721).  The Debtors' corporate headquarters are located at 243 Daniel Webster Highway, Merrimack, NH 03054.

appropriate under the particular circumstances; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED THAT:

1.      The Motion is GRANTED as set forth herein.

2.      GTAT is authorized and empowered to continue to manage its cash pursuant to its existing Cash Management System, and to collect, concentrate, and disburse cash in accordance with such Cash Management System.

3.      All Banks with which GTAT maintains Debtor Bank Accounts as of the Petition Date are authorized and directed to continue to treat, service, and administer such Debtor Bank Accounts as accounts of the respective GTAT entity as a debtor in possession account without interruption and in the usual and ordinary course, and to receive, process, honor and pay any and all checks, drafts, wires, or ACH transfers drawn on the Debtor Bank Accounts by the holders or makers thereof, as the case may be; provided that, GTAT and the Banks may, without further order of this Court, agree to and implement changes to the cash management systems and procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts.

4.      Notwithstanding anything to the contrary in any other order of this Court, the Banks (a) are authorized and directed to accept and honor all representations from GTAT as to which checks, drafts, wires, or ACH transfers should be honored or dishonored, consistent with any orders of this Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated prior to, on, or subsequent to the Petition Date, and whether the Banks believe the

---

[2]      Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

payment is or is not authorized by an order of this Court, (b) have no duty to inquire as to whether such payments are authorized by an order of this Court, and (c) such Banks shall not have any liability to any party for relying on such representations by GTAT as provided for herein.

5.       The Banks shall not be liable to any party on account of (a) following GTAT's instructions or representations as to any order of this Court, (b) the honoring of any prepetition check or item in a good faith belief that this Court has authorized such prepetition check or item to be honored, or (c) an innocent mistake made despite implementation of reasonable item handling procedures.

6.       Any payment from a Debtor Bank Account at the request of GTAT made by a Bank prior to the Petition Date (including any ACH transfer that such Bank is or becomes obligated to settle), or any instruments issued by such Bank on behalf of GTAT pursuant to a "midnight deadline" or otherwise, shall be deemed to be paid prepetition, whether or not actually debited from the Debtor Bank Account prepetition.

7.       Nothing contained herein shall prevent GTAT from closing any of its Debtor Bank Accounts or opening any additional bank accounts, provided that such Bank is a party to a Uniform Depository Agreement with the U.S. Trustee, as it may deem necessary and appropriate, to the extent consistent with the terms of any orders of this Court relating thereto, and any relevant bank is authorized to honor GTAT's request to close or open such Debtor Bank Accounts or additional bank accounts, as the case may be; provided, however, that GTAT shall give notice within fifteen (15) days to the U.S. Trustee and any statutory committees appointed in these chapter 11 cases of the opening of any additional bank accounts or the closing of any

3

Debtor Bank Accounts and shall report the opening or closing of any Debtor Bank Account on the monthly operating report next submitted to the U.S. Trustee.

8.    The Banks, in accordance with current practice and the agreement governing the Debtor Bank Accounts, are authorized to "charge back" to GTAT accounts any amounts incurred by the Banks resulting from returned checks or other returned items, and GTAT is authorized to pay any fees and expenses owed to the Banks, in each case regardless of whether such items were deposited prepetition or postpetition or relate to prepetition or postpetition items.  Each of GTAT's Banks is authorized to debit GTAT's accounts in the ordinary course of business without the need for further order of this Court for: (a) all checks drawn on GTAT's accounts that are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date; (b) all checks or other items deposited in one of GTAT's accounts with such Bank prior to the Petition Date that have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent GTAT was responsible for such items prior to the Petition Date; and (c) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System.

9.    Any party receiving payment from GTAT is authorized and directed to rely upon the representations of GTAT as to which payments are authorized by this Order.

10.    GTAT's continued use of its Cash Management System shall be deemed to comply with section 345 of the Bankruptcy Code, and GTAT is relieved from the obligations pursuant to section 345(b) of the Bankruptcy Code to obtain a bond from any entity for any of the Debtor Bank Accounts.

11.     To the extent necessary to execute the Cash Management System and manage the day-to-day operations of its businesses, GTAT is authorized to continue to engage in Intercompany Transactions postpetition, in the ordinary course of business.  GTAT shall continue to maintain records with respect to all transfers of cash or property (including pursuant to such transactions) so that all Intercompany Transactions may be readily ascertained, traced, and recorded properly on applicable intercompany accounts.

12.     Any claim against a Debtor arising from postpetition Intercompany Transactions shall be given administrative expense priority in accordance with sections 503(b) and 507(a)(2) of the Bankruptcy Code.

13.     GTAT is authorized to (a) designate, maintain, and use any or all of the Debtor Bank Accounts in existence as of the Petition Date, including the bank accounts listed on Schedules 1 and 2 annexed hereto, and need not comply with the U.S. Trustee Guidelines, (b) deposit funds into and withdraw funds from such accounts by all usual means, including checks, wire transfers, automated transfers, and other debits, (c) close existing accounts, including, without limitation, any inactive accounts, and (d) treat their prepetition Debtor Bank Accounts for all purposes as debtor in possession accounts.

14.     For all Banks that are party to a Uniform Depository Agreement with the U.S. Trustee, within fifteen (15) days of the date of entry of this Order, GTAT shall (a) contact such Bank, (b) provide the Bank with each of GTAT's tax identification numbers, and (c) identify each of its bank accounts held at such Banks as being held by a debtor in possession in a bankruptcy case.

15.     For Banks that are not party to a Uniform Depository Agreement with the U.S. Trustee, GTAT shall use its good-faith efforts to cause the bank to execute a Uniform Depository

agreement in a form prescribed by the U.S. Trustee within forty-five (45) days of the date of entry of this Order.

16.     GTAT is authorized to continue to use its check stock substantially in the form existing immediately before the Petition Date, without reference to its status as debtors in possession, provided, however, that GTAT will print "Debtors in Possession" or "DIP" and the lead case number on any new or reordered check stock as soon as practicable.

17.     Nothing in the Motion or this Order shall be deemed or construed as an admission as to the validity or priority of any claim against GTAT.

18.     Nothing in the Motion or this Order shall be deemed or construed as an approval of an assumption or rejection of any contract pursuant to section 365 of the Bankruptcy Code and all such rights are reserved.

19.     Notice of the Motion as provided therein shall be deemed good and sufficient notice, and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice or otherwise deemed waived.

20.     Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

21.     The requirement set forth in LBR 7102(b)(2) that any motion filed shall have an accompanying memorandum of law is waived.

22.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

23.     This Court retains jurisdiction with respect to all matters arising from or related to the interpretation, implementation or enforcement of this Order.

Dated:  _____, 2014
            Manchester, NH

_____
CHIEF UNITED STATES BANKRUPTCY JUDGE

## SCHEDULE 1

**DOMESTIC BANK ACCOUNTS**

| BANK | LAST FOUR DIGITS OF ACCOUNT | ACCOUNT HELD BY | ADDRESS | TYPE OF ACCOUNT |
|---|---|---|---|---|
| Bank of America | 3294 | GTAT Corporation | 100 W 33rd St. New York, NY 10001 | Deposit Account |
| Bank of America | 5002 | GTAT Corporation | 100 W 33rd St. New York, NY 10001 | Deposit Account |
| Bank of America | 4487 | GTAT Corporation | 100 W 33rd St. New York, NY 10001 | Deposit Account |
| Bank of America | 1546 | GTAT Corporation | 100 W 33rd St. New York, NY 10001 | Deposit Account |
| Bank of America | 7590 | GTAT Corporation | 100 W 33rd St. New York, NY 10001 | Deposit Account |
| Bank of America | 4718 | GTAT Corporation | 100 Federal Street Boston, MA 02110 | Investment Account |
| Bank of America | 5254 | GTAT Corporation | 100 Federal Street Boston, MA 02110 | Investment Account |
| Santander Bank | 8960 | GTAT Corporation | 75 State Street Boston, MA 02109 | Money Market Account |
| Bank of America | 8144 | GT Advanced Equipment Holding LLC | 100 W 33rd St. New York, NY 10001 | Deposit Account |
| Bank of America | 3803 | GT Advanced Equipment Holding LLC | 100 Federal Street Boston, MA 02110 | Investment Account |
| Bank of America | 8343 | Lindbergh Acquisition Corp. | 100 W 33rd St. New York, NY 10001 | Deposit Account |
| Bank of America | 5023 | GT Advanced Cz LLC | 100 W 33rd St. New York, NY 10001 | Deposit Account |
| Bank of America | 6497 | GT Advanced Cz LLC | 100 W 33rd St. New York, NY 10001 | Deposit Account |
| Wells Fargo | 2633 | GT Sapphire Systems Group LLC | 1 Front St, 21st Fl. San Francisco, CA 94111 | Operating Account |
| Bank of America | 7965 | GT Sapphire Systems Group LLC | 100 W 33rd St. New York, NY 10001 | Deposit Account |
| Bank of America | 9105 | GT Sapphire Systems Group LLC | 100 W 33rd St. New York, NY 10001 | Deposit Account |

## **SCHEDULE 2**

**FOREIGN DEBTOR BANK ACCOUNTS**

| BANK | LAST FOUR DIGITS OF ACCOUNT | ACCOUNT HELD BY | ADDRESS | TYPE OF ACCOUNT |
|---|---|---|---|---|
| Bank of America (US) | 7350 | GT Advanced Technologies Limited | 100 W 33rd St. New York, NY 10001 | Deposit Account |
| Bank of America (Hong Kong) | 2022 | GT Advanced Technologies Limited | 9/F Devon House 979 King's Road Hong Kong | Operating Account |
| Bank of America (Hong Kong) | 2014 | GT Advanced Technologies Limited | 9/F Devon House 979 King's Road Hong Kong | Operating Account |
| Bank of America (Hong Kong) | 2030 | GT Advanced Technologies Limited | 9/F Devon House 979 King's Road Hong Kong | Operating Account |
| Bank of America (Hong Kong) | 2056 | GT Advanced Technologies Limited | 9/F Devon House 979 King's Road Hong Kong | Operating Account |
| Bank of America (Hong Kong) | 2048 | GT Advanced Technologies Limited | 9/F Devon House 979 King's Road Hong Kong | Operating Account |
| Bank of America (Hong Kong) | 9201 | GT Advanced Technologies Limited | 9/F Devon House 979 King's Road Hong Kong | Deposit Account |

## SCHEDULE 3

**NON-DEBTOR FOREIGN ACCOUNTS**

| BANK | LAST FOUR DIGITS OF ACCOUNT | ACCOUNT HELD BY | ADDRESS | TYPE OF ACCOUNT |
|---|---|---|---|---|
| Bank of America | 3253 | GTAT IP Holding LLC | 100 W 33rd St. New York, NY 10001 | Deposit Account |
| Bank of America (Luxembourg) | 1013 | GT Advanced Technologies Luxembourg Sarl | Uitbreidingstraat 180, Box 6, B2600, Antwerp Belgium | Deposit Account |
| Bank of America | 2018 | GT Advanced Technologies GmbH | Neue Mainzer Strasse 52, 60311 Frankfurt am Main, Germany | Operating Account |
| Bank of America | 2026 | GT Advanced Technologies GmbH | Neue Mainzer Strasse 52, 60311 Frankfurt Am Main, Germany | Operating Account |
| HSBC Bank (Taipei) | 1334 | GT Advanced Technologies Taiwan | No 68, Nanking East Rd., Sec 3, Taipei City Taiwan | Operating Account |
| HSBC Bank (Taipei) | 1388 | GT Advanced Technologies Taiwan | No 68, Nanking East Rd., Sec 3, Taipei City Taiwan | Deposit Account |
| HSBC Bank (Taipei) | 1821 | GT Advanced Technologies Taiwan | No 68, Nanking East Rd., Sec 3, Taipei City Taiwan | Deposit Account |
| Bank of America, Taiwan | 7013 | GT Advanced Technologies Taiwan | 6F-10, No. 38, Taiyuan Street, Jhubei City, Hsinchu County, 30265, Taiwan R.O.C. | Operating Account |
| Bank of America, Taiwan | 7055 | GT Advanced Technologies Taiwan | 6F-10, No. 38, Taiyuan Street, Jhubei City, Hsinchu County, 30265, Taiwan R.O.C. | Operating Account |
| HSBC Bank (China) | 7055 | GT Solar China | 22F-38F, HSBC Bldg, Shanghai ifc, 8 Century Avenue, Pudong, Shanghai China 200120 | Operating Account |
| HSBC Bank (China) | 7056 | GT Solar China | 22F-38F, HSBC Bldg, Shanghai IFC, 8 Century Avenue, Pudong, Shanghai China 200120 | Operating Account |
| Shanghai Pudong Development Bank | 1721 | GT Solar China | 18 Jiafeng Road, Waigaoqiao Free Trade Zone, Shanghai China 200131 | Operating Account |
| ICBC Bank | 5723 | GT Sapphire Technology (Guiyang) Co, Ltd | Qinzhen, China | Operating Account |

| BANK | LAST FOUR DIGITS OF ACCOUNT | ACCOUNT HELD BY | ADDRESS | TYPE OF ACCOUNT |
|---|---|---|---|---|
| Bank of China | 5567 | GT Solar Shanghai | 61F, 1266 Nanjing Road (W), Shanghai China 200040 | Operating Account |
| Shanghai Bank | 6076 | GT Solar Shanghai | Room 524, 6 JiLong Rd., Waigaoqiao Free Trade Zone, Shanghai China 200131 | Account for tax payments (required under local law) |
| Shanghai Pudong Development Bank | 2271 | GT Solar Shanghai | 18 Jiafeng Road, Waigaoqiao Free Trade Zone, Shanghai China 200131 | Operating Account |