UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

-----------------------------------------------------------x
                                                           :
*In re:*                                                   :   Chapter 11
                                                           :
**GT ADVANCED TECHNOLOGIES INC.,** *et al.*,               :   Case No. 14-11916 (____)
                                                           :
Debtors.[1]                                                :
                                                           :   Joint Administration Requested
-----------------------------------------------------------x

**DEBTORS' MOTION, PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 365(a), AND 554 AND BANKRUPTCY RULE 6004, FOR ENTRY OF ORDER AUTHORIZING DEBTORS TO REJECT CERTAIN UNEXPIRED LEASES OF NON-RESIDENTIAL REAL PROPERTY, *NUNC PRO TUNC* TO PETITION DATE**

GT Advanced Technologies Inc. ("GT") and its affiliated debtors as debtors in possession in the above-captioned cases (collectively, "GTAT" the "Debtors") hereby submit this motion (the "Motion"), pursuant to sections 105(a), 365(a), and 554 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order authorizing GTAT to reject certain unexpired leases of non-residential property, including any amendments or modifications thereto, *nunc pro tunc* to the Petition Date (as defined herein).  In support of this Motion, GTAT respectfully represents:

**JURISDICTION, VENUE AND STATUTORY BASIS**

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors, along with the last four digits of each debtor's tax identification number, as applicable, are: GT Advanced Technologies Inc. (6749), GTAT Corporation (1760), GT Advanced Equipment Holding LLC (8329), GT Equipment Holdings, Inc. (0040), Lindbergh Acquisition Corp. (5073), GT Sapphire Systems Holding LLC (4417), GT Advanced Cz LLC (9815), GT Sapphire Systems Group LLC (5126), and GT Advanced Technologies Limited (1721).  The Debtors' corporate headquarters are located at 243 Daniel Webster Highway, Merrimack, NH 03054.

2. The statutory bases for the relief requested herein are sections 105(a), 365(a), and 554(a) of the Bankruptcy Code and Bankruptcy Rule 6004.

## BACKGROUND

3. On the date hereof (the "Petition Date"), GTAT commenced voluntary cases under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Hampshire (the "Court"). GTAT continues to operate its businesses and manage its properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no committees have been appointed or designated.

4. GTAT has requested that these chapter 11 cases be consolidated for procedural purposes only and jointly administered pursuant to Bankruptcy Rule 1015(b).

5. Information regarding GTAT's business, capital structure, and the circumstances leading to these chapter 11 cases is set forth in the *Declaration of Daniel W. Squiller in Support of Chapter 11 Petitions and First-Day Motions* (the "First Day Declaration"), which is incorporated herein by reference and filed contemporaneously herewith.

### Debtors' Business

6. GTAT and its non-Debtor affiliates (collectively, the "GTAT Group") are leading manufacturers and suppliers of advanced materials and equipment for the global consumer electronics, power electronics, solar, and LED industries. The GTAT Group designs and sells high-quality sapphire production equipment and materials for a wide variety of domestic and international markets, including the consumer electronics market. In addition, the GTAT Group's historical business is based in the solar industry, where it is a leading provider of key polysilicon and photovoltaic equipment, services and technologies. The GTAT Group is also in the process of developing and commercializing additional equipment and products, including an

ion implantation equipment tool and advanced solar cell metallization and interconnect technology. As of the Petition Date, the GTAT Group employs approximately 1,100 full-time employees in the United States and abroad, approximately 1,000 of whom work for the Debtors. The stock of GT is publicly traded under the symbol "GTAT".

7. As of June 28, 2014, the GTAT Group's unaudited and consolidated financial statements reflected assets totaling approximately $1.5 billion and liabilities totaling approximately $1.3 billion.

## RELIEF REQUESTED

8. By this Motion, GTAT requests the entry of an order authorizing and approving GTAT's rejection of certain unexpired leases of non-residential real property set forth on Schedule 1 to the proposed order attached hereto as Exhibit A, including any amendments or modifications thereto (each a "Lease" and, collectively, the "Leases"), effective *nunc pro tunc* to the Petition Date.

## BASIS FOR THE RELIEF REQUESTED

9. As of the Petition Date, GTAT occupies premises across the United States and Asia in connection with the operation of manufacturing facilities, office space, and other business activities. With respect to many locations, GTAT does not own the real property where such enterprises are located and, instead, lease the real property from numerous lessors and other counterparties. By this Motion and in order to maximize the value of its estates, GTAT seeks to reject the Leases corresponding to the locations at which GTAT has ceased operations prior to the Petition Date.

### Leases To Be Rejected

10. The Leases to be rejected provide no benefit to GTAT's estates. By rejecting the Leases, GTAT believes that it will be able to save approximately $695,118.00 per year.

3

Currently, GTAT continues to be obligated to pay rent under the Leases even though they have ceased operations at the respective premises. GTAT previously vacated the leased locations and surrendered the premises to the lessor. Moreover, in addition to its obligations to pay rent under the Leases, GTAT also is obligated to pay for certain property taxes, utilities, insurance, and other related charges associated with the Leases. GTAT has determined in its business judgment that such costs constitute an unnecessary drain on GTAT's resources.

11. In considering its options with respect to the Leases prior to the Petition Date, GTAT and its advisors evaluated the possibility of certain assignments or subleases of the Leases. To date, no one has expressed any interest in subleasing or taking an assignment of GTAT's Leases for more than the rent owed by GTAT. Moreover, GTAT has determined that the costs of the Leases exceed any marginal benefits that may be received from potential future assignments or subleases.

12. Accordingly, in an effort to reduce postpetition administrative costs and in the exercise of GTAT's sound business judgment, GTAT believes that the rejection of the Leases, *nunc pro tunc* to the Petition Date is in the best interests of GTAT, its estates, and its creditors.

### Rejection of the Leases Reflects GTAT's Sound Business Judgment

13. Section 365(a) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."[2] Courts have interpreted section 365 as allowing "a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed."[3]

---

[2] *See Univ. Med. Ctr. v. Sullivan (In re University Med. Ctr.)*, 973 F.2d 1065, 1075 (3d Cir. 1992).

[3] *In re Rickel Home Centers, Inc.*, 209 F.3d 291, 298 (3d Cir. 2000) (quoting *Stewart Title Guar. Co. v. Old Republic Nat'l Title Co.*, 83 F.3d 735, 741 (5th Cir. 1996)).

4

14. The decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the debtor.[4] The business judgment standard mandates that a court approve a debtor's business decision, unless the decision "is the product of bad faith, or whim, or caprice."[5] Upon finding that a debtor has exercised its sound business judgment in determining that rejection of certain contracts or leases is in the best interests of its creditors and all parties in interest, a court should approve the rejection under section 365(a) of the Bankruptcy Code.[6]

15. The rejection of the Leases reflects GTAT's exercise of sound business judgment and is in the best interests of GTAT, its estates, and its creditors. GTAT also has ceased all operations at the premises subject to a Lease, and such premises currently are vacant. Nevertheless, GTAT is required to pay approximately $69,010.00 per month to comply with its obligations under the Leases. GTAT has determined that the Leases are no longer necessary for GTAT's business operations. The Leases are not a source of potential value for GTAT's future

---

[4] *See, e.g.*, *In re Malden Brooks Farm LLC*, 435 B.R. 81, 83 (Bankr. D. Mass. 2010) ("In this circuit the test governing motions to assume or reject . . . is the business judgment rule. . . . The rule accords a debtor's decision to assume or reject an executory contract or unexpired lease the defense mandated by the sound business judgment rule as generally applied by courts to discretionary actions or decisions of corporate directors." (citations omitted)); *In re Taylor*, 913 F.2d 102, 107 (3d Cir. 1990); *Nat'l Labor Relations Bd. v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."); *see also In re Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003).

[5] *Moran v. City of Central Falls*, 475 B.R. 323, 333 (D.R.I. 2012) ("Once the debtor or trustee has established that the rejection benefits the estate, the non debtor party bears the burden of proving that the debtor's decision derives from bad faith, whim or caprice." (citations omitted)); *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) (internal citations omitted); *see also Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) ("In any event, court approval under Section 365(a), if required, except in extraordinary situations, should be granted as a matter of course.")

[6] *In re Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003); *In re Bradlees Stores, Inc.*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996), *appeal dismissed*, 210 B.R. 506 (S.D.N.Y. 1997); *In re Summit Land Co.*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

5

operations, creditors, or interest holders and constitute an unnecessary drain on GTAT's resources.

### *Nunc Pro Tunc* Rejection Is Appropriate

16. GTAT also respectfully requests that the Court authorize the rejection of the Leases, *nunc pro tunc* to the Petition Date. While section 365 of the Bankruptcy Code does not specifically address whether the Court may order rejection to be effective retroactively, many courts have held that bankruptcy courts may authorize rejection retroactive to a date prior to entry of the order authorizing rejection.[7] Indeed, the First Circuit has ruled "that a bankruptcy court, when principles of equity so dictate, may approve a rejection of a nonresidential lease pursuant to section 365(a) retroactive to the motion filing date."[8] Further, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

17. Here, the balance of equities favors authorizing GTAT to reject the Leases *nunc pro tunc* to the Petition Date. Without the authority to reject retroactively, GTAT will be forced to incur potential administrative expenses for agreements that provide no benefit to GTAT's estates. Further, allowing GTAT to reject the Leases will not unduly prejudice the counterparties

---

[7] *See In re Thinking Machines Corp.*, 67 F.3d 1021, 1028-29 (1st Cir. 1995) ("[R]ejection under § 365(a) does not take effect until judicial approval is secured, but the approving court has the equitable power, in suitable cases, to order a rejection to operate retroactively."); *Republic Underwriters Ins. Co. v. DBSI Republic, LLC (In re DBSI, Inc.)*, 409 B.R. 720, 734 (Bankr. D. Del. 2009) (providing that bankruptcy court may enter lease rejection order with an effective date earlier than the date the order is entered); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (acknowledging that bankruptcy court may approve a rejection retroactive to the date the motion is filed after balancing equities in a particular case); *see also In re Phila. Newspapers, LLC*, 424 B.R. 178, 185 (Bankr. E.D. Pa. 2010) (permitting rejection of executory contract retroactive to motion filing date and finding "the decision to grant retroactive rejection of a lease or contract is dictated by equitable considerations"); *BP Energy Co. v. Bethlehem Steel Corp.*, Case No. 02-civ-6419, 2002 WL 31548723, at *2-3 (S.D.N.Y. Nov. 15, 2002) (finding that bankruptcy courts' equitable powers allow for retroactive rejection date of executory contracts when favored by "balance of the equities").

[8] *Thinking Machines*, 67 F.3d at 1028.

to these agreements because such counterparties will receive notice of the Motion and, therefore, will have sufficient opportunity to object if they so choose. Indeed, the counterparties to these agreements may benefit from such rejection because they will be relieved of their own obligations under the respective agreements. For example, counterparties to Leases of premises that GTAT already has vacated will be able to re-let the currently vacant premises immediately. The relief requested herein has been granted in other large and complex chapter 11 cases.[9] GTAT submits that similar relief is warranted in these chapter 11 cases.

## WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)

18. To implement the foregoing successfully, GTAT seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay of an order authorizing the use, sale, or lease of property under Bankruptcy Rule 6004(h) to the extent applicable.

## RESERVATION OF RIGHTS

19. Nothing contained herein is intended or should be construed as an admission of the validity of any claim against GTAT, a waiver of GTAT's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy

---

[9] *See, e.g.*, *In re Energy Future Holdings Corp*, Case No. 14-10979 (CSS) (Bankr. D. Del. Jun. 30, 2014) (authorizing rejection of leases *nunc pro tunc*); *In re Furniture Brands International, Inc.*, Case No. 13-12329 (CSS) (Bankr. D. Del. Oct. 2, 2013) (authorizing rejection of leases, subleases, and ancillary agreements effective *nunc pro tunc* to petition date); *In re Friendly Ice Cream Corp.*, Case No. 11-13167 (KG) (Bankr. D. Del. Oct. 24, 2011) (authorizing rejection of leases *nunc pro tunc* to date debtors vacated premises); *In re Harry & David Holdings, Inc.*, Case No. 11-10884 (MFW) (Bankr. D. Del. Apr. 27, 2011) (authorizing rejection of "dark store" leases *nunc pro tunc* to petition date); *In re CB Holding Corp.*, Case No. 10-13683 (MFW) (Bankr. D. Del. Dec. 13, 2010) (entering omnibus order authorizing rejection of certain unexpired leases for closed restaurants *nunc pro tunc* to petition date); *In re Visteon Corp.*, Case No. 09-11786 (CSS) (Bankr. D. Del. June 23, 2009) (authorizing rejection of leases *nunc pro tunc* to petition date); *In re Sun-Times Media Grp., Inc.*, Case No. 09-11092 (CSS) (Bankr. D. Del. Apr. 28, 2009) (same); *In re Buffets Holdings, Inc.*, Case No. 08-10141 (MFW) (Bankr. D. Del. Feb. 13, 2008) (authorizing rejection of leases *nunc pro tunc* to petition date); *see also, e.g.*, *In re Archbrook Laguna Holdings LLC*, Case No. 11-13292 (SCC) (Bankr. S.D.N.Y. Sept. 7, 2011) (authorizing rejection of contract *nunc pro tunc* to prior notice date); *In re TerreStar Networks Inc.*, Case No. 10-15446 (SHL) (Bankr. S.D.N.Y. Mar. 23, 2011) (authorizing rejection of executory contracts *nunc pro tunc* to prior notice date). Because of the voluminous nature of the unreported orders cited herein, they are not annexed to the Motion. Copies of these orders are available upon request of the Debtors' proposed undersigned counsel.

7

Code. GTAT expressly reserves its rights to contest any invoice or claim related to the relief requested herein in accordance with applicable law.

## NOTICE

20. Notice of this Motion has been provided by email, facsimile or overnight courier to: (a) the Office of the United States Trustee for Region 1, 1000 Elm Street, Suite 605 Manchester, NH 03101, Attn: Geraldine L. Karonis; (b) the creditors holding the 30 largest unsecured claims against GTAT's estates (on a consolidated basis); (c) the indenture trustee for the Debtors' (i) 3.00% Convertible Senior Notes due 2017, and (ii) 3.00% Convertible Senior Notes due 2020, U.S. Bank National Association, 60 Livingston Avenue, St. Paul, MN 55107, Attn: Hazrat R. Haniff; (d) the Internal Revenue Service, 1000 Elm St., 9th Floor Manchester, NH 03101, Attn: District and Regional Directors; (e) U.S. Securities and Exchange Commission, 100 F Street, NE, Washington, DC 20549; (f) Apple Inc., 1 Infinite Loop, Cupertino, CA 95014, Attn: Jessica L. Fink, Senior Restructuring Counsel; and (g) those parties who have formally filed requests for notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002; and (h) the counterparties to agreements listed on Schedule 1 to the proposed order.

## NO PRIOR REQUEST

21. No previous request for the relief sought herein has been made by GTAT to this or any other court.

## WAIVER OF MEMORANDUM OF LAW

22. GTAT requests that the Court waive and dispense with the requirement set forth in Rule 7102(b)(2) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of New Hampshire ("LBR") that any motion filed shall have an accompanying memorandum of law. The legal authorities upon which GTAT relies are set forth in the Motion.

8

Accordingly, GTAT submits that a waiver of the LBR 7102(b)(2) requirement is appropriate under these circumstances.

[*remainder of page intentionally left blank*]

Case: 14-11916 Doc #: 22 Filed: 10/06/14 Desc: Main Document Page 9 of 15

**WHEREFORE**, GTAT respectfully requests that the Court enter an order, substantially in the form attached hereto, granting the relief requested herein and granting GTAT such other and further relief as is just and proper.

Dated: October 6, 2014
      Manchester, NH

      */s/ Daniel W. Sklar*_____
      Daniel W. Sklar, Esq.
      Holly J. Barcroft, Esq.
      NIXON PEABODY LLP
      900 Elm Street
      Manchester, NH 03101-2031
      Telephone: (603) 628-4000
      Facsimile: (603) 628-4040

      - and -

      Luc A. Despins, Esq.
      Andrew V. Tenzer, Esq.
      James T. Grogan, Esq.
      PAUL HASTINGS LLP
      Park Avenue Tower
      75 East 55th Street, First Floor
      New York, New York 10022
      Telephone: (212) 318-6000
      Facsimile: (212) 319-4090

      *Proposed Co-Counsel for the Debtors and the Debtors in Possession*

## **EXHIBIT A TO MOTION**

**PROPOSED ORDER**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

---------------------------------------------------------------x
                                                               :
*In re:*                                                       :  Chapter 11
                                                               :
**GT ADVANCED TECHNOLOGIES INC.,** *et al.*,                   :  Case No. 14-11916 (____)
                                                               :
Debtors.[1]                                                    :
                                                               :  Jointly Administered
                                                               :
                                                               :  RE: Docket No. __
---------------------------------------------------------------x

### ORDER GRANTING DEBTORS' MOTION FOR ENTRY OF ORDER, PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a), 365(a), AND 554 AND BANKRUPTCY RULE 6004, AUTHORIZING DEBTORS TO REJECT CERTAIN UNEXPIRED LEASES OF NON-RESIDENTIAL REAL PROPERTY, *NUNC PRO TUNC* TO PETITION DATE

Upon the motion (the "Motion")[2] of GT Advanced Technologies Inc. ("GT") and its affiliated debtors as debtors in possession (collectively, "GTAT" or the "Debtors") for entry of an order authorizing GTAT to reject certain unexpired leases of non-residential property, including any amendments or modifications thereto, *nunc pro tunc* to the Petition Date, all as more fully described in the Motion; and upon consideration of the First Day Declaration; and it appearing that the relief requested is in the best interests of GTAT's estates, its creditors and other parties in interest; and upon consideration of the First Day Declaration; and this Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to

---

[1] The Debtors, along with the last four digits of each debtor's tax identification number, as applicable, are: GT Advanced Technologies Inc. (6749), GTAT Corporation (1760), GT Advanced Equipment Holding LLC (8329), GT Equipment Holdings, Inc. (0040), Lindbergh Acquisition Corp. (5073), GT Sapphire Systems Holding LLC (4417), GT Advanced Cz LLC (9815), GT Sapphire Systems Group LLC (5126), and GT Advanced Technologies Limited (1721). The Debtors' corporate headquarters are located at 243 Daniel Webster Highway, Merrimack, NH 03054.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Motion.

28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided under the particular circumstances, and it appearing that no other or further notice need be provided; and after due deliberation and sufficient cause appearing therefor, it is hereby ORDERED THAT:

1. The Motion is GRANTED as set forth herein.

2. The Leases listed in Schedule 1 hereto, are deemed rejected, *nunc pro tunc* to the Petition Date.

3. Nothing in this Order or the Motion shall be construed as prejudicing any rights GTAT may have to dispute or contest the amount of or basis for any claims asserted against GTAT arising in connection with the rejection of the Leases or as an admission as to the validity or priority of any claim against GTAT.

4. Nothing in the Motion or this Order shall be deemed or construed as an approval of an assumption of any contract pursuant to section 365 of the Bankruptcy Code and all such rights are reserved.

5. Notice of the Motion as provided therein shall be deemed good and sufficient notice, and the requirements of Bankruptcy Rule 6004(a) are satisfied by such notice or otherwise deemed waived to the extent applicable.

6. Notwithstanding Bankruptcy Rule 6004(h) to the extent applicable, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

7. The requirement set forth in LBR 7102(b)(2) that any motion filed shall have an accompanying memorandum of law is waived.

8. All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

9. GTAT is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order in accordance with the Motion.

10. This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: _____, 2014
       Manchester, NH

                                                          
CHIEF UNITED STATES BANKRUPTCY JUDGE

## SCHEDULE 1 TO ORDER

## REJECTED LEASES

| Name and Address of Landlord | Street Address of Lease/Sublease/Related Interest or Name/Description of Executory Contract |
|---|---|
| JB MANAGEMENT, L.P.<br>1825 BELL STREET SUITE 100<br>SACRAMENTO, CA 95825<br>ATTN: JAMES GATELY<br>FACSIMILE: (916) 929-2890<br><br>-AND-<br><br>BLOCK HAWLEY COMMERCIAL REAL ESTATE SERVICES<br>16253 SWINGLEY RIDGE ROAD<br>SUITE 150<br>CHESTERFIELD, MO 63017<br>ATTN: JEFFREY R. HAWLEY | STANDARD INDUSTRIAL LEASE AGREEMENT, DATED MARCH 3, 2009, AS AMENDED BY THAT CERTAIN FIRST AMENDMENT TO LEASE, DATED JULY 2010, AND AS FURTHER AMENDED BY THAT CERTAIN SECOND AMENDMENT TO LEASE, DATED OCTOBER 31, 2011.<br><br>1600 PARK 3700 PLACE<br>SUITES 1 & 2<br>HAZELWOOD, MO 63042 |
| TNK ASSOCIATES LLC<br>20 TRAFALGAR SQUARE, SUITE 602<br>NASHUA, NH 03063 | LEASE, DATED DECEMBER 13, 2010, AS AMENDED BY THAT CERTAIN FIRST AMENDMENT TO LEASE, DATED DECEMBER 31, 2010, AND AS FURTHER AMENDED BY THAT CERTAIN SECOND AMENDMENT TO LEASE, DATED JANUARY 26, 2011, AND AS FURTHER AMENDED BY THAT CERTAIN THIRD AMENDMENT TO LEASE, DATED JUNE, 2011, AND AS FURTHER AMENDED BY THAT CERTAIN FOURTH AMENDMENT TO LEASE, DATED JULY 31, 2013 (AND NOTICE OF TERMINATION LETTER DATED JUNE 9, 2014)<br><br>20 TRAFALGAR SQUARE<br>NASHUA, NH 03063 |
| ARIZONA BOARD OF REGENTS FOR AND ON BEHALF OF ARIZONA STATE UNIVERSITY<br><br>ASU REAL ESTATE DEVELOPMENT OFFICE<br>P.O. BOX 873908<br>TEMPE, ARIZONA 85287-3908 | LEASE AGREEMENT, DATED APRIL 25, 2014.<br><br>7700 S. RIVER PARKWAY<br>TEMPE, AZ 85284 |