## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

-------------------------------------------------------------x
:
*In re:*                                          :    **Chapter 11**
:
**GT ADVANCED TECHNOLOGIES INC.,** *et al.,* :    **Case No. 14-_____ (____)**
:
**Debtors.**[1]                                   :
:    **Joint Administration Requested**
-------------------------------------------------------------x

### DEBTORS' EMERGENCY *EX PARTE* APPLICATION, PURSUANT TO 28 U.S.C. § 156(c), SECTIONS 105(a) AND 503(b) OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 2002, AND LBR 3001-1, FOR ENTRY OF ORDER AUTHORIZING DEBTORS TO EMPLOY AND RETAIN KURTZMAN CARSON CONSULTANTS LLC AS NOTICE, CLAIMS, AND BALLOTING AGENT TO DEBTORS, EFFECTIVE *NUNC PRO TUNC* TO PETITION DATE

GT Advanced Technologies Inc. ("GT") and its affiliated debtors as debtors in possession in the above-captioned cases (collectively, "GTAT" or the "Debtors") hereby submit this application (the "Application"), pursuant to 28 U.S.C. § 156(c), sections 105(a) and 503(b) of title 11 of the United States Code (the "Bankruptcy Code"), Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3001-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of New Hampshire ("LBR"), for the entry of an order, substantially in the form attached hereto as Exhibit A (the "Proposed Order"), authorizing and approving GTAT's retention of Kurtzman Carson Consultants LLC ("KCC") as notice, claims, and balloting agent to GTAT in connection with these chapter 11 cases, effective *nunc pro tunc* to the Petition Date (as defined herein).  In support of this

---

[1]       The Debtors, along with the last four digits of each debtor's tax identification number, as applicable, are: GT Advanced Technologies Inc. (6749), GTAT Corporation (1760), GT Advanced Equipment Holding LLC (8329), GT Equipment Holdings, Inc. (0040), Lindbergh Acquisition Corp. (5073), GT Sapphire Systems Holding LLC (4417), GT Advanced Cz LLC (9815), GT Sapphire Systems Group LLC (5126), and GT Advanced Technologies Limited (1721).  The Debtors' corporate headquarters is located at 243 Daniel Webster Highway, Merrimack, NH 03054.

Application, GTAT submits the Declaration of Evan Gershbein, Senior Vice President of Corporate Restructuring Services of KCC (the "Gershbein Declaration"), a copy of which is attached hereto as Exhibit B and incorporated by reference herein.  In further support of this Motion, GTAT respectfully represents:

## JURISDICTION, VENUE AND STATUTORY BASIS

1.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.     The statutory bases for the relief requested in this Application are 28 U.S.C. § 156(c), sections 105(a) and 503(b) of the Bankruptcy Code, Bankruptcy Rule 2002, and LBR 3001-1.

## BACKGROUND

3.     On the date hereof (the "Petition Date"), GTAT commenced voluntary cases under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Hampshire (the "Court").  GTAT continues to operate its businesses and manage its properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no committees have been appointed or designated.

4.     GTAT has requested that these chapter 11 cases be consolidated for procedural purposes only and jointly administered pursuant to Bankruptcy Rule 1015(b).

5.     Information regarding GTAT's business, capital structure, and the circumstances leading to these chapter 11 cases is set forth in the *Declaration of Daniel W. Squiller in Support*

*of Chapter 11 Petitions and First-Day Motions* (the "First Day Declaration"), which is
incorporated herein by reference and filed contemporaneously herewith.

### GTAT's Business

6.      GTAT and its non-Debtor affiliates (collectively, the "GTAT Group") are leading
manufacturers and suppliers of advanced materials and equipment for the global consumer
electronics, power electronics, solar, and LED industries.  The GTAT Group designs and sells
high-quality sapphire production equipment and materials for a wide variety of domestic and
international markets, including the consumer electronics market.  In addition, the GTAT
Group's historical business is based in the solar industry, where it is a leading provider of key
polysilicon and photovoltaic equipment, services, and technologies.  The GTAT Group is also in
the process of developing and commercializing additional equipment and products, including an
ion implantation equipment tool and advanced solar metallization and interconnect technology.
As of the Petition Date, the GTAT Group employs approximately 1,100 full-time employees in
the United States and abroad, approximately 1,000 of whom work for the Debtors.  The stock of
GT is publicly traded under the symbol "GTAT".

7.      As of June 28, 2014, the GTAT Group's unaudited and consolidated financial
statements reflected assets totaling approximately $1.5 billion and liabilities totaling
approximately $1.3 billion.

### RELIEF REQUESTED

8.      By this Application, GTAT seeks entry of an order authorizing GTAT to employ
and retain KCC as notice, claims, and balloting agent to GTAT in connection with these chapter
11 cases, effective *nunc pro tunc* to the Petition Date.

### Services To Be Provided by KCC

9.      GTAT proposes to employ KCC as the authorized notice, claims, and balloting

agent to, among other things, undertake mailings as directed by GTAT, the Court, or the United

States Trustee (the "U.S. Trustee"), and as required by the Bankruptcy Code, the Bankruptcy

Rules, or the LBR, all in accordance with that certain Services Agreement, dated as of October 6,

2014 between KCC and GTAT (such agreement, together with all amendments, modifications,

renewals thereof and all documents ancillary thereto or otherwise entered into in connection

therewith, the "Services Agreement"), a copy of which is attached as Schedule 1 to Exhibit A

attached hereto.  The proposed retention of KCC is the most effective and efficient manner of

noticing the numerous creditors and parties in interest of the commencement of these chapter 11

cases and other developments in these chapter 11 cases.  Specifically, KCC will perform, to the

extent GTAT requests, the following services in its role as claims and balloting agent, as well as

any quality control related thereto:

      a.      preparing and serving required notices and documents in these chapter 11 cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by GTAT and/or the Court, including, if applicable, (i) the notice of the commencement of these chapter 11 cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code, (ii) notice of the claims bar date, (iii) notices of objections to claims and objections to transfers of claims, (iv) notices of hearings on motions filed by the U.S. Trustee, (v) notices of transfers of claims, (vi) notices of any hearings on a disclosure statement and confirmation of GTAT's plan or plans of reorganization, and (vii) all other notices, orders, pleadings, publications, and other documents as GTAT and/or the Court may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

      b.      maintaining and updating the master mailing lists of creditors;

      c.      within seven days after the mailing of a particular notice, filing with the Court a copy of the notice served with a certificate of service attached indicating the name and complete address of each party served;

      d.      receiving, examining, and maintaining copies of all proofs of claim and proofs of interest filed in these chapter 11 cases;

e.      maintaining the official claims register (the "Claims Register") in these chapter 11 cases by docketing all proofs of claim and proofs of interest in a claims database that includes the following information for each such claim or interest asserted: (i) the name and address of the claimant or interest holder and any agent thereof, if the proof of claim or proof of interest was filed by an agent, (ii) the date the proof of claim or proof of interest was received by KCC and/or the Court, (iii) the claim number assigned to the proof of claim or proof of interest, (iv) the asserted amount and classification of the claim, and (v) the applicable GTAT entity against which the claim or interest is asserted;

f.      recording all transfers of claims pursuant to Bankruptcy Rule 3001(e);

g.      revising the creditor matrix after the objection period expires;

h.      recording any order entered by the Court which may affect a claim by making a notation on the Claims Register;

i.      monitoring the Court's docket for any claims-related pleading filed and making necessary notations on the Claims Register;

j.      maintaining a separate Claims Register for each GTAT entity if these chapter 11 cases are jointly administered, each of which shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by KCC;

k.      filing a quarterly updated Claims Register with the Court in alphabetical and numerical order.  If there was no claims activity, a certification of no claim activity may be filed;

l.      maintaining an up-to-date mailing list of all creditors and all entities who have filed proofs of claim or proofs of interest and/or request for notices in the case and providing such list to the Court or any interested party upon request (within 48 hours);

m.      providing access to the public for examination of claims and the Claims Register at no charge;

n.      forwarding all claims, an updated Claims Register, and an updated mailing list to the Court within ten days of entry of an order converting any of these chapter 11 cases or within 30 days of entry of a final decree.  The Claims Register and mailing list will be provided in both paper and on disc and in alphabetical and numerical order.  The mailing list disc will be in .txt format;

o.      implementing necessary security measures to ensure the completeness and integrity of the Claims Register;

p.      complying with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders, and other requirements;

q.      providing temporary employees to process claims as necessary;

r.     promptly complying with such further conditions and requirements as the office of the Clerk of the Court (the "Clerk's Office") or the Court may at any time prescribe;

s.     providing such other claims processing, noticing, and related administrative services as may be requested from time to time by GTAT;

t.     to the extent necessary, gathering data in conjunction with the preparation of the GTAT entities' schedules of assets and liabilities and statements of financial affairs;

u.     assisting in the dissemination of information to the public and responding to requests for administrative information regarding the case as directed by GTAT or the Court, including through the use of a case website and/or call center; and

v.     performing other administrative tasks pertaining to the administration of these chapter 11 cases, as may be requested by GTAT or the Clerk's Office.

10.     In connection with these activities, KCC will follow the notice and claims procedures that conform to the guidelines promulgated by the Clerk's Office and the Judicial Conference of the United States, and as may be ordered by the Court.

## KCC's Qualifications

11.     KCC is a bankruptcy administrator that specializes in providing comprehensive chapter 11 administrative services including noticing, claims processing, solicitation, balloting, and other related services critical to the effective administration of chapter 11 cases.  Indeed, KCC has developed efficient and cost-effective methods to handle properly the voluminous mailings associated with the noticing, claims processing, solicitation, and balloting portions of chapter 11 cases to ensure the orderly and fair treatment of creditors, equity security holders, and all parties in interest.  Further, KCC will work with the Clerk's Office to ensure that such methodology conforms to all of the Court's procedures, the LBR, and the provisions of any Court orders.  Appointing KCC as claims and balloting agent in these chapter 11 cases will expedite the distribution of notices and the processing of claims, and relieve the Clerk's Office of the administrative burdens related thereto.

12.     KCC has substantial experience in matters of this size and complexity and has acted as the official claims and balloting agent in many large bankruptcy cases pending in districts in the First Circuit and other districts.[2]

**Compensation and Representation of Disinterestedness**

13.     GTAT respectfully requests that the undisputed fees and expenses incurred by KCC in the performance of the above services be treated as administrative expenses of the GTAT entities' estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code.  GTAT further requests the authority to pay such undisputed fees and expenses in the ordinary course of business without further application to or order of the Court. KCC agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on GTAT, the office of the U.S. Trustee, counsel to GTAT, counsel to any statutory creditors' committee appointed in these chapter 11 cases.  If any dispute arises relating to the Services Agreement or monthly invoices,

---

[2]     *See TelexFree, LLC, et al.*, Case No. 14-40987 (Bankr. D. Mass. Apr. 13, 2014); *Houghton Mifflin Harcourt Publishing Company, et al.*, Case No. 12-15610 (Bankr. D. Mass. May 21, 2012); *See, e.g., In re Brookstone Holdings Corp.*, No. 14-10752 (BLS) (Bankr. D. Del. Apr. 4, 2014); *In re Ablest Inc.*, No. 14-10717 (KJC) (Bankr. D. Del. Apr. 2, 2014); *In re The Dolan Co.*, No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014); *In re Sorenson Commc'ns, Inc.*, No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014); *In re Victor Oolitic Stone Co., d/b/a Ind. Limestone Co.*, No. 14-10311 (CSS) (Bankr. D. Del. Feb. 18, 2014); *In re Event Rentals, Inc.*, No. 14-10282 (PJW) (Bankr. D. Del. Feb. 18, 2014); *In re Global Aviation Holdings Inc.*, No. 13-12945 (MFW) (Bankr. D. Del. Nov. 14, 2013); *In re Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013); *In re Eagle Bulk Shipping Inc., et al.*, Case No. 14-12303 (Bankr. SDNY Aug. 6, 2014); *In re Momentive Performance Materials (MPM Silicones, LLC), et al.*, Case No. 14-22503 (Bankr. SDNY Apr. 13, 2014); *In re Metro Affiliates, Inc., et al.*, Case No. 13-13591 (Bankr. SDNY Nov. 11, 2013); *In re Residential Capital, LLC et al.*, Case No. 12-12020 (Bankr. SDNY May 14, 2012); *In re RIH Acquisitions NJ, LLC*, No. 13-34483 (GMB) (Bankr. D.N.J. Nov. 18, 2013); *In re Metro Affiliates, Inc.*, No. 13-13591 (SHL) (Bankr. S.D.N.Y. Nov. 7, 2013); *In re Groeb Farms, Inc.*, No. 13-58200 (WS) (Bankr. E.D. Mich. Oct. 4, 2013); *In re Global Axcess Corp.*, No. 13-51562 (MKN) (Bankr. D. Nev. Oct. 1, 2013); *In re Electric Transp. Eng'g Corp. (d/b/a ECOtality N. Am.)*, No. 13-16126 (RJH) (Bankr. D. Ariz. Sept. 19, 2013); *In re City of Detroit, Mich.*, No. 13-53846 (SWR) (Bankr. E.D. Mich. Aug. 6, 2013); *In re Lyon Workspace Prods., L.L.C.*, No. 13-02100 (JSB) (Bankr. N.D. Ill. Feb. 27, 2013); *In re Hartford Computer Hardware, Inc.*, No. 11-49744 (PSH) (Bankr. N.D. Ill. Dec. 15, 2011); *In re The Roman Catholic Bishop of Stockton*, No. 14-20371 (CMK) (Bankr. E.D. Ca. Apr. 8, 2014).  Because of the voluminous nature of the unreported orders cited herein, they are not annexed to the Motion.  Copies of these orders are available upon request of GTAT's proposed undersigned counsel.

the parties shall meet and confer in an attempt to resolve the dispute.  If a resolution is not

achieved, the parties may seek resolution of the matter from the Court.

14.     In connection with its retention as the claims and balloting agent, KCC represents

in the Gershbein Declaration, among other things, that:

       a.      KCC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the claims and balloting agent in these chapter 11 cases;

       b.      by accepting employment in these chapter 11 cases, KCC waives any right to receive compensation from the United States government in connection with these chapter 11 cases;

       c.      in its capacity as claims and balloting agent in these chapter 11 cases, KCC will not be an agent of the United States and will not act on behalf of the United States; and

       d.      KCC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged.

15.     To the extent that there is any inconsistency between this Application, the

Proposed Order, and the Services Agreement, GTAT respectfully submits that the Proposed

Order, once entered by the Court, shall govern.

<u>**Indemnification**</u>

16.     As part of the overall compensation payable to KCC under the terms of the

Services Agreement, GTAT has agreed to certain indemnification and contribution obligations as

specifically enumerated in the Services Agreement, to the extent permitted by applicable law and

as modified in the order attached hereto.

17.     The terms of the Services Agreement and indemnification provisions included

therein were negotiated at arms'-length between GTAT and KCC, and GTAT respectfully

submits that these provisions of the Services Agreement are reasonable and in the best interests

of GTAT and its estates and creditors.

## BASIS FOR RELIEF REQUESTED

18.    Section 156(c) of title 28 of the United States Code empowers the Court to utilize outside agents and facilities for notice and claims purposes, provided the GTAT entities' estates pay the cost of such services.[3]  In addition, LBR 3001-1(c) provides that a debtor may, "at the time of filing the petition or as soon as practicable thereafter, file an application to employ a claims agent . . . ."[4]  Therefore, for all of the foregoing reasons, GTAT believes that the retention of KCC as the notice and claims agent in these chapter 11 cases is necessary and in the best interests of GTAT, its estates, and its creditors.  Furthermore, GTAT respectfully submits that the fees and expenses that would be incurred by KCC under the proposed engagement would be administrative in nature and, therefore, should not be subject to standard fee application procedures of professionals.  Courts in this and other jurisdictions have approved similar relief in

---

[3]     Section 156(c) of title 28 of the United States Code provides:  "Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.  The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe."  28 U.S.C. § 156(c).

[4]     LBR 3001-1(c) reads in its entirety:  "All proofs of claim or interest shall be filed with the clerk; however, the debtor may, at the time of filing the petition or as soon as practicable thereafter, file an application to employ a claims agent who will assist the clerk with this function.  If said application is approved by the court, then all claims in that case will be filed with the claims agent.  The court may, at any time, order the debtor to employ a claims agent."

other chapter 11 cases.[5]

19.     At GTAT's request, KCC has acted as the claims and balloting agent since the

Petition Date with the understanding that GTAT would seek approval of its employment and

retention, effective *nunc pro tunc* to the Petition Date, so that KCC may be compensated for its

services prior to entry of an order approving KCC's retention.  GTAT believes that no party in

interest will be prejudiced by the granting of the *nunc pro tunc* employment, because KCC has

provided and will continue to provide valuable services to the GTAT entities' estates in the

interim period.

20.     Accordingly, GTAT respectfully requests entry of an order authorizing GTAT to

retain and employ KCC to act as claims and balloting agent for GTAT, effective *nunc pro tunc* to

the Petition Date.

---

[5]     *See, e.g., TelexFree, LLC, et al.,* Case No. 14-40987 (Bankr. D. Mass. Apr. 13, 2014); *Houghton Mifflin Harcourt Publishing Company, et al.,* Case No. 12-15610 (Bankr. D. Mass. May 21, 2012);  *In re Brookstone Holdings Corp.,* No. 14-10752 (BLS) (Bankr. D. Del. Apr. 4, 2014); *In re Ablest Inc.*, No. 14-10717 (KJC) (Bankr. D. Del. Apr. 2, 2014); *In re The Dolan Co.*, No. 14-10614 (BLS) (Bankr. D. Del. Mar. 25, 2014); *In re Sorenson Commc'ns, Inc.*, No. 14-10454 (BLS) (Bankr. D. Del. Mar. 4, 2014); *In re Victor Oolitic Stone Co., d/b/a Ind. Limestone Co.*, No. 14-10311 (CSS) (Bankr. D. Del. Feb. 18, 2014); *In re Event Rentals, Inc.*, No. 14-10282 (PJW) (Bankr. D. Del. Feb. 18, 2014); *In re Global Aviation Holdings Inc.*, No. 13-12945 (MFW) (Bankr. D. Del. Nov. 14, 2013); *In re Physiotherapy Holdings, Inc.*, No. 13-12965 (KG) (Bankr. D. Del. Nov. 14, 2013); *In re Eagle Bulk Shipping Inc., et al.*, Case No. 14-12303 (Bankr. SDNY Aug. 6, 2014); *In re Momentive Performance Materials (MPM Silicones, LLC), et al.*, Case No. 14-22503 (Bankr. SDNY Apr. 13, 2014); *In re Metro Affiliates, Inc., et al.*, Case No. 13-13591 (Bankr. SDNY Nov. 11, 2013); *In re Residential Capital, LLC et al.*, Case No. 12-12020 (Bankr. SDNY May 14, 2012); *In re RIH Acquisitions NJ, LLC*, No. 13-34483 (GMB) (Bankr. D.N.J. Nov. 18, 2013); *In re Metro Affiliates, Inc.*, No. 13-13591 (SHL) (Bankr. S.D.N.Y. Nov. 7, 2013); *In re Groeb Farms, Inc.*, No. 13-58200 (WS) (Bankr. E.D. Mich. Oct. 4, 2013); *In re Global Axcess Corp.*, No. 13-51562 (MKN) (Bankr. D. Nev. Oct. 1, 2013); *In re Electric Transp. Eng'g Corp. (d/b/a ECOtality N. Am.)*, No. 13-16126 (RJH) (Bankr. D. Ariz. Sept. 19, 2013); *In re City of Detroit, Mich.*, No. 13-53846 (SWR) (Bankr. E.D. Mich. Aug. 6, 2013); *In re Lyon Workspace Prods., L.L.C.*, No. 13-02100 (JSB) (Bankr. N.D. Ill. Feb. 27, 2013); *In re Hartford Computer Hardware, Inc.*, No. 11-49744 (PSH) (Bankr. N.D. Ill. Dec. 15, 2011); *In re The Roman Catholic Bishop of Stockton*, No. 14-20371 (CMK) (Bankr. E.D. Ca. Apr. 8, 2014).  Because of the voluminous nature of the unreported orders cited herein, they are not annexed to the Motion.  Copies of these orders are available upon request of GTAT's proposed undersigned counsel.

## NOTICE

21.     Notice of this Motion has been provided by email, facsimile, or overnight courier to: (a) the Office of the United States Trustee for Region 1, 1000 Elm Street, Suite 605 Manchester, NH 03101, Attn: Geraldine L. Karonis; (b) the creditors holding the 20 largest unsecured claims against the GTAT entities' estates (on a consolidated basis); (c) the indenture trustee for the Debtors' (i) 3.00% Convertible Senior Notes due 2017, and (ii) 3.00% Convertible Senior Notes due 2020, U.S. Bank National Association, 60 Livingston Avenue, St. Paul, MN 55107, Attn: Hazrat R. Haniff; (d) the Internal Revenue Service, 1000 Elm St., 9th Floor Manchester, NH 03101, Attn: District and Regional Directors; (e) U.S. Securities and Exchange Commission, 100 F Street, NE, Washington, DC 20549; (f) Apple Inc., 1 Infinite Loop, Cupertino, CA 95014, Attn: Jessica L. Fink, Senior Restructuring Counsel; and (g) those parties who have formally filed requests for notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

## NO PRIOR REQUEST

22.     No previous request for the relief sought herein has been made to the Court or any other court.

## WAIVER OF MEMORANDUM OF LAW

23.     GTAT requests that the Court waive and dispense with the requirement set forth in LBR 7102(b)(2) that any motion filed shall have an accompanying memorandum of law.  The legal authorities upon which GTAT relies are set forth in the Motion.  Accordingly, GTAT submits that a waiver of the LBR 7102(b)(2) requirement is appropriate under these circumstances.

WHEREFORE, GTAT respectfully requests that the Court enter an order, substantially in the form attached hereto, granting the relief requested herein and granting GTAT such other and further relief as is just and proper.

Dated: October 6, 2014
      Manchester, NH

/s/ Daniel W. Sklar
Daniel W. Sklar, Esq.
Holly J. Bancroft, Esq.
NIXON PEABODY LLP
900 Elm Street
Manchester, NH 03101-2031
Telephone: (603) 628-4000
Facsimile: (603) 628-4040

- and -

Luc A. Despins, Esq.
Andrew V. Tenzer, Esq.
James T. Grogan, Esq.
PAUL HASTINGS LLP
Park Avenue Tower
75 East 55th Street, First Floor
New York, New York 10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

*Proposed Co-Counsel for the Debtors and Debtors in Possession*

## EXHIBIT A

## PROPOSED ORDER

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE**

```
----------------------------------------------------------------x
                                          :
In re:                                    :   Chapter 11
                                          :
GT ADVANCED TECHNOLOGIES INC., et al.,:       Case No. 14-_____ (____)
                                          :
          Debtors.¹                       :
                                          :   Jointly Administered
                                          :
                                          :   RE: Docket No. __
----------------------------------------------------------------x
```

**ORDER GRANTING DEBTORS' APPLICATION, PURSUANT TO 28 U.S.C. § 156(C),
SECTIONS 105(A) AND 503(B) OF THE BANKRUPTCY CODE, BANKRUPTCY
RULE 2002, AND LBR 3001-1, FOR ENTRY OF ORDER AUTHORIZING
DEBTORS TO EMPLOY AND RETAIN KURTZMAN CARSON CONSULTANTS LLC
AS NOTICE, CLAIMS, AND BALLOTING AGENT TO DEBTORS,
EFFECTIVE *NUNC PRO TUNC* TO PETITION DATE**

Upon the application (the "Application")² of GT Advanced Technologies Inc. ("GT") and

its affiliated debtors as debtors in possession (collectively, "GTAT" or the "Debtors"), for entry

of an order, pursuant to 28 U.S.C. § 156(c), sections 105(a) and 503(b) of the Bankruptcy Code,

Bankruptcy Rule 2002, and LBR 3001-1, authorizing and approving GTAT's retention of

Kurtzman Carson Consultants LLC ("KCC") as notice, claims, and balloting agent to GTAT in

connection with these chapter 11 cases, effective *nunc pro tunc* to the Petition Date, as set forth

more fully in the Application; and upon consideration of the Gershbein Declaration and the First

Day Declaration; and this Court having jurisdiction to consider the Application and the relief

---

[1]     The Debtors, along with the last four digits of each debtor's tax identification number, as applicable, are:
        GT Advanced Technologies Inc. (6749), GTAT Corporation (1760), GT Advanced Equipment Holding
        LLC (8329), GT Equipment Holdings, Inc. (0040), Lindbergh Acquisition Corp. (5073), GT Sapphire
        Systems Holding LLC (4417), GT Advanced Cz LLC (9815), GT Sapphire Systems Group LLC (5126),
        and GT Advanced Technologies Limited (1721).  The Debtors' corporate headquarters is located at 243
        Daniel Webster Highway, Merrimack, NH 03054.

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the

Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157;

and venue being proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and

proper notice of the Application being adequate and appropriate under the particular

circumstances; and this Court having determined that the legal and factual bases set forth in the

Application establish just cause for the relief granted herein; and upon all of the proceedings had

before this Court; after due deliberation and sufficient cause appearing therefor, it is hereby

ORDERED THAT:

1.      The Application is GRANTED as set forth herein.

2.      GTAT is authorized to employ and retain KCC as notice, claims and balloting

agent in accordance with the terms and conditions set forth in the Application and the Services

Agreement attached hereto as <u>Schedule 1</u>, effective *nunc pro tunc* to the Petition Date.

3.      GTAT is authorized to pay KCC's fees and expenses as set forth in the Services

Agreement in the ordinary course of business and KCC shall not be required to file fee

applications with this Court.

4.      Without further order of this Court, pursuant to section 503(b)(1)(A) of the

Bankruptcy Code, KCC's fees and expenses shall be treated as an administrative expense of the

GTAT entities' estates and shall be paid by GTAT in accordance with the terms of the Services

Agreement upon receipt of each KCC invoice by GTAT, unless KCC is advised, within ten days

of receipt of the invoice, that the office of the United States Trustee for the District of New

Hampshire, counsel for GTAT, counsel to any statutory creditors' committee appointed in these

chapter 11 cases, if any, objects to the invoice, in which case GTAT will schedule a hearing

before the Court to consider the disputed invoice.  In the event of a disputed invoice, GTAT shall

remit to KCC only the undisputed portion of the invoice and, if applicable, shall pay the remainder to KCC upon the resolution of the disputed portion, as mandated by the Court.

5.      KCC is appointed as agent for the office of the Clerk of the Court (the "Clerk's Office") and, as such, is designated as the authorized repository for all proofs of claim filed in these chapter 11 cases and is authorized and directed to maintain an official claims register and to provide the Clerk's Office with a certified duplicate thereof as the Clerk's Office may direct.

6.      In the event KCC is unable to provide the services set out in this Order, KCC will immediately notify the Clerk of the Court and GTAT's counsel and cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk of the Court and GTAT's counsel.

7.      The indemnification provisions in the Services Agreement are approved, subject to the following clarifications:

a.      KCC shall not be entitled to indemnification, contribution, or reimbursement for services other than the services to be provided under the Services Agreement, the Application, and this Order, unless such additional services and the indemnification, contribution, or reimbursement therefore are approved by this Court;

b.      Notwithstanding anything to the contrary in the Services Agreement, GTAT shall have no obligation to indemnify any person, or provide contribution or reimbursement to any person, for any claim or expense that is either: (i) judicially determined (the determination having become final and no longer subject to appeal) to have arisen from KCC's gross negligence or willful misconduct; (ii) for a contractual dispute in which GTAT alleges breach of KCC's contractual obligations under the Services Agreement unless the Court determines that indemnification, contribution, or reimbursement would be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination as to the exclusions set forth in clauses (i) and (ii) above, but determined by this Court, after notice and a hearing, to be a claim or expense for which that person should not receive indemnity, contribution, or reimbursement under the terms of the Services Agreement as modified by the Application and Order; and

3

     c.      If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in these cases (that order having become a final order no longer subject to appeal) and (ii) the entry of an order closing these chapter 11 cases, KCC believes that it is entitled to the payment of any amounts by GTAT on account of GTAT's indemnification, contribution, and/or reimbursement obligations under the Services Agreement (as modified by this Order), including without limitation the advancement of defense costs, KCC must file an application before this Court, and GTAT may not pay any such amounts before the entry of an order by this Court approving the payment. This subparagraph (c) is intended only to specify the period of time under which this Court shall have jurisdiction over any request for payment related to indemnification, contribution, or reimbursement, and not a provision limiting the duration of GTAT's obligation to indemnify KCC.

8.      Except as ordered by this Court pursuant to section 107(b) of the Bankruptcy Code, all papers, dockets, or other material filed in this case with KCC shall be deemed public records open to examination by any entity at reasonable times without charge. KCC may charge a fee for copying requested material, but the fee shall not exceed that charged pursuant to the Bankruptcy Court Fee Schedule issued by the Judicial Conference of the United States in accordance with section 1930(b) of title 28 of the United States Code.

9.      In the event of any inconsistency between the Application, the Services Agreement, and this Order, this Order shall govern.

10.     The requirement set forth in LBR 7102(b)(2) that any motion filed shall have an accompanying memorandum of law is waived.

11.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

12.     GTAT is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

13.     This Court retains jurisdiction with respect to all matters arising from or related to the interpretation, implementation or enforcement of this Order.

Dated: _____, 2014
        Manchester, NH

_____
CHIEF UNITED STATES BANKRUPTCY JUDGE

**<u>SCHEDULE 1 TO ORDER</u>**

**SERVICES AGREEMENT**



# KCC AGREEMENT FOR SERVICES

This Agreement is entered into as of the 6th day of October, 2014, between GTAT Corporation (together with its affiliates and subsidiaries, the "Company"),[1] and Kurtzman Carson Consultants LLC (together with its affiliates and subcontractors, "KCC").

In consideration of the premises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## Terms and Conditions

I.    SERVICES

A.    KCC agrees to provide the Company with consulting services regarding noticing, claims management and reconciliation, plan solicitation, balloting, disbursements and any other services agreed upon by the parties or otherwise required by applicable law, government regulations or court rules or orders.

B.    KCC further agrees to provide (i) computer software support and training in the use of the support software, (ii) KCC's standard reports as well as consulting and programming support for the Company requested reports, (iii) program modifications, (iv) data base modifications, and/or (v) other features and services in accordance with the fees outlined in a pricing schedule provided to the Company (the "KCC Fee Structure").

C.    Without limiting the generality of the foregoing, KCC may, upon request by the Company, (i) provide a communications plan including, but not limited to, preparation of communications materials, dissemination of information and a call center staffed by KCC and/or (ii) provide confidential on-line workspaces or virtual data rooms and publish documents to such workspaces or data rooms (which publication shall not be deemed to violate the confidentiality provisions of this Agreement).

D.    The price listed for each service in the KCC Fee Structure represents a bona fide proposal for such services, which may be accepted in whole or in part.  Services will be provided when requested by the Company or required by applicable law, government regulations or court rules or orders.  Services are mutually exclusive and are deemed delivered and accepted by the Company when provided by KCC.

E.    The Company acknowledges and agrees that KCC will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "Company Parties") with respect to the services being provided under this Agreement.  The parties agree that KCC may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.  The Company agrees and understands that KCC shall not provide the Company or any other party with any legal advice.

---

[1] The term Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in its chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.



# KCC AGREEMENT FOR SERVICES

## II.   PRICES, CHARGES AND PAYMENT

A.      KCC agrees to charge and the Company agrees to pay KCC for its services, expenses and supplies at the rates or prices set by KCC and in effect as of the date of this Agreement in accordance with the KCC Fee Structure.  KCC's prices are generally adjusted periodically to reflect changes in the business and economic environment.  KCC reserves the right to reasonably increase its prices, charges and rates annually.  If any price increases exceed 10%, KCC will give thirty (30) days written notice to the Company.

B.      The Company agrees to pay the reasonable out of pocket expenses incurred by KCC in connection with services provided under this Agreement, including but not limited to, transportation, lodging, and meals.

C.      In addition to all fees for services and expenses hereunder, the Company shall pay to KCC all taxes that are applicable to this Agreement or that are measured by payments made under this Agreement and are required to be collected by KCC or paid by KCC to a taxing authority.

D.      Where the Company requires services that are unusual or beyond the normal business practices of KCC, or are otherwise not provided for in the KCC Fee Structure, the cost of such services shall be charged to the Company at a competitive rate, as may be mutually agreed to by the Company and KCC.

E.      Unless otherwise ordered by a court of competent jurisdiction, KCC agrees to submit its invoices to the Company monthly and the Company agrees that the amount invoiced is due and payable upon the Company's receipt of the invoice.  In the case of a dispute in the invoice amount, the Company shall give written notice to KCC within ten (10) days of receipt of the invoice by the Company.  The undisputed portion of the invoice will remain due and payable immediately upon receipt of the invoice.  Late charges shall not accrue on any amounts in dispute.  Unless otherwise agreed to in writing, the fees for print notice and media publication (including commissions) as well as certain expenses must be paid at least three (3) days in advance of those fees and expenses being incurred.

F.      In the event that the Company files for protection pursuant to chapter 11 of the United States Bankruptcy Code (a "Chapter 11 Filing"), the parties intend that KCC shall be employed pursuant to 28 U.S.C. § 156(c) ("Section 156(c)") and that all fees and expenses due under this Agreement shall be paid as administrative expenses of the Company's chapter 11 estate.  As soon as practicable following a Chapter 11 Filing (and otherwise in accordance with applicable law and rules and orders of the Bankruptcy Court), the Company shall cause a motion to be filed with the Bankruptcy Court seeking entry of an order pursuant to Section 156(c) approving this Agreement in its entirety (the "Section 156(c) Order").  The form and substance of the motion and the Section 156(c) Order shall be reasonably acceptable to KCC.  If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, KCC will continue to be paid for its services in accordance with Section 156(c) and under the terms of this Agreement.



# KCC AGREEMENT FOR SERVICES

III.    RIGHTS OF OWNERSHIP

A.      The parties understand that the software programs and other materials furnished by KCC pursuant to this Agreement and/or developed during the course of this Agreement by KCC are the sole property of KCC.  The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation.  The Company agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished pursuant to this Agreement.

B.      The Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or KCC's performance of its services developed or utilized during the term of this Agreement by KCC shall be the exclusive property of KCC.  Fees and expenses paid by the Company do not vest in the Company any rights in such property, it being understood that such property is only being made available for the Company's use during and in connection with the services provided by KCC under this Agreement.

IV.    NON-SOLICITATION

The Company agrees that neither it nor its subsidiaries or other affiliated companies shall directly or indirectly solicit for employment, employ or otherwise retain employees of KCC during the term of this Agreement and for a period of twelve (12) months after termination of this Agreement unless KCC provides prior written consent to such solicitation or retention.

V.    CONFIDENTIALITY

Each of KCC and the Company, on behalf of themselves and their respective employees, agents, professionals and representatives, agrees to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the services provided under this Agreement; provided, however, that if either party reasonably believes that it is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.

VI.    SUSPENSION OF SERVICE AND TERMINATION

A.      This Agreement shall remain in force until terminated or suspended by either party (i) upon thirty (30) days' written notice to the other party or (ii) immediately upon written notice for Cause (defined herein).  As used herein, the term "Cause" means (i) gross negligence or willful misconduct of KCC that causes serious and material harm to the Company's reorganization under chapter 11 of the Bankruptcy Code or (ii) the failure of the Company to pay KCC invoices for more than sixty (60) days from the date of invoice, unless otherwise ordered by a court of competent jurisdiction.

B.      In the event that this contract is terminated, regardless of the reason for such termination, KCC shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions and KCC shall provide all necessary staff, services and assistance required for an orderly transfer.  The Company agrees to pay for such services in accordance with KCC's then existing prices for such services.  If such

3



# KCC AGREEMENT FOR SERVICES

termination occurs following entry of the Section 156(c) Order, the Company shall immediately seek entry of an order (in form and substance reasonably acceptable to KCC) that discharges KCC from service and responsibility under Section 156(c) and this Agreement.

C.      Any data, programs, storage media or other materials furnished by the Company to KCC or received by KCC in connection with the services provided under the terms of this Agreement may be retained by KCC until the services provided are paid for, or until this Agreement is terminated with the services paid in full.  The Company shall remain liable for all fees and expenses imposed under this Agreement as a result of data or physical media maintained or stored by KCC.  KCC shall dispose of the data and media in the manner requested by the Company. The Company agrees to pay KCC for reasonable expenses incurred as a result of the disposition of data or media.  If the Company has not utilized KCC's services under this Agreement for a period of at least ninety (90) days,  KCC may dispose of the data or media, and be reimbursed by the Company for the expense of such disposition, after giving the Company thirty (30) days' notice.  Notwithstanding any term herein to the contrary, following entry of the Section 156(c) Order, the disposition of any data or media by KCC shall be in accordance with any applicable instructions from the clerk of the Bankruptcy Court, local Bankruptcy Court rules and orders of the Bankruptcy Court.

## VII.    SYSTEM IMPROVEMENTS

KCC strives to provide continuous improvements in the quality of service to its clients.  KCC, therefore, reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the KCC data center serving the Company, so long as any such changes do not materially interfere with ongoing services provided to the Company in connection with the Company's chapter 11 case.

## VIII.    BANK ACCOUNTS

At the Company's request, KCC shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company.  To the extent that certain financial products are provided to the Company pursuant to KCC's agreement with financial institutions, KCC may receive compensation from such financial institutions for the services KCC provides pursuant to such agreement.



# KCC AGREEMENT FOR SERVICES

### IX.    LIMITATIONS OF LIABILITY AND INDEMNIFICATION

A.    The Company shall indemnify and hold KCC, its affiliates, members, directors, officers, employees, consultants, subcontractors and agents (collectively, the "Indemnified Parties") harmless, to the fullest extent permitted by applicable law, from and against any and all losses, claims, damages, judgments, liabilities and expenses (including reasonable counsel fees and expenses) (collectively, "Losses") resulting from, arising out of or related to KCC's performance under this Agreement. Such indemnification shall exclude Losses resulting from KCC's gross negligence or willful misconduct. Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third-parties against an Indemnified Party. The Company shall notify KCC in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that the Company becomes aware of with respect to the services provided by KCC under this Agreement.  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

B.    Except as provided herein, KCC's liability to the Company or any person making a claim through or under the Company for any Losses of any kind, even if KCC has been advised of the possibility of such Losses, whether direct or indirect and unless due to gross negligence or willful misconduct of KCC, shall be limited to the total amount billed or billable to the Company for the portion of the particular work which gave rise to the alleged Loss.  In no event shall KCC's liability to the Company for any Losses, whether direct or indirect, arising out of this Agreement exceed the total amount billed to the Company and actually paid to KCC for the services contemplated under the Agreement.  In no event shall KCC be liable for any indirect, special or consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.

C.    The Company is responsible for the accuracy of the programs, data and information it or any Company Party submits for processing to KCC and for the output of such information.  KCC does not verify information provided by the Company and, with respect to the preparation of schedules and statements, all decisions are at the sole discretion and direction of the Company. The Company reviews and approves all schedules and statements filed on behalf of, or by, the Company; KCC bears no responsibility for the accuracy or contents therein.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs and data submitted by the Company to KCC.

D.    The Company agrees that except as expressly set forth herein, KCC makes no representations or warranties, express or implied, including, but not limited to, any implied or express warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

### X.    FORCE MAJEURE

Whenever performance by KCC of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, strike, lock-out or other industrial or transportation disturbance, fire, lack of materials, law, regulation or ordinance, war or war condition, or by reason of any other matter beyond KCC's reasonable control, then such performance shall be excused and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.



# KCC AGREEMENT FOR SERVICES

### XI.    INDEPENDENT CONTRACTORS

The Company and KCC are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this Agreement.

### XII.    NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or electronic mail or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:

| | |
|---|---|
| Kurtzman Carson Consultants LLC | Company |
| 2335 Alaska Ave. | Address |
| El Segundo, CA 90245 | City, ST Zip |
| Attn: Drake D. Foster | Attn: |
| Tel: (310) 823-9000 | Tel: |
| Fax: (310) 823-9133 | Fax: |
| E-Mail: dfoster@kccllc.com | |

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

### XIII.    APPLICABLE LAW

The validity, enforceability, and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of California.

### XIV.    ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, other agreements, and communications oral and written between the parties relating to the subject matter of this Agreement. The Company represents that it has the authority to enter into this Agreement, and the Agreement is non-dischargeable under any applicable statute or law. If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby. This Agreement may be modified only by a written instrument duly executed by an authorized representative of the Company and an officer of KCC.



# KCC AGREEMENT FOR SERVICES

**XV.    COUNTERPARTS; EFFECTIVENESS**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other parties, which delivery may be made by exchange of copies of the signature page by facsimile or electronic mail.

**XVI.    ASSIGNMENT**

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned without written consent by KCC to a wholly-owned subsidiary or affiliate of KCC.

**XVII.    ARBITRATION**

Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) shall be entered in any court having jurisdiction thereof. For that purpose, the parties hereto consent to the jurisdiction and venue of an appropriate court located in Los Angeles County, State of California.

**XVIII.    ATTORNEYS' FEES**

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance or interpret the provisions of this Agreement, the parties agree to reimburse the prevailing party's reasonable attorneys' fees, court costs, and all other related expenses, which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which the prevailing party may be entitled.

[SIGNATURE PAGE FOLLOWS]

# KCC AGREEMENT FOR SERVICES

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC

BY:                                                    DATE:
TITLE:

Company

BY:                Nob Kim      DATE:   October 6, 2014
TITLE:      VP, General Counsel



# KCC AGREEMENT FOR SERVICES

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC

_____    DATE: 10/6/14

BY:  Evan Gershbein

TITLE:  SVP, Corporate Restructuring Services

Company

_____    DATE:

BY:

TITLE:

**<u>EXHIBIT B</u>**

**PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW HAMPSHIRE**

```
-------------------------------------------------------x
                                        :
In re:                                  :    Chapter 11
                                        :
GT ADVANCED TECHNOLOGIES INC., et al ,: Case No. 14-_____  ____)
                                        :
         Debtors.¹                      :
                                        :    Jointly Administered
                                        :
                                        :
-------------------------------------------------------x
```

**DECLARATION OF EVAN GERSHBEIN IN SUPPORT OF DEBTORS' APPLICATION, PURSUANT TO 28 U.S.C. § 156 C), SECTIONS 105 A) AND 503 B) OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 2002, AND LBR 3001-1, FOR ENTRY OF ORDER AUTHORIZING DEBTORS TO EMPLOY AND RETAIN KURTZMAN CARSON CONSULTANTS LLC AS NOTICE, CLAIMS, AND BALLOTING AGENT TO DEBTORS, EFFECTIVE <u>*NUNC PRO TUNC* TO PETITION DATE</u>**

I, Evan Gershbein, being duly sworn, state the following under penalty of perjury:

1.      I am the Senior Vice President of Corporate Restructuring Services at Kurtzman

Carson Consultants LLC  "KCC")², a company specializing in the administration of large

bankruptcy cases.

2.      I submit this Declaration in support of the *Debtors' Emergency Ex Parte Application,*

*Pursuant to 28 U.S.C. § 156 c), Sections 105 a) and 503 b) of the Bankruptcy Code, Bankruptcy*

*Rule 2002, and LBR 3001-1, for Entry of Order Authorizing Debtors To Employ and Retain*

---

¹       The Debtors, along with the last four digits of each debtor's tax identification number, as applicable, are: GT Advanced Technologies Inc.  6749), GTAT Corporation  1760), GT Advanced Equipment Holding LLC  8329), GT Equipment Holdings, Inc.  0040), Lindbergh Acquisition Corp.  5073), GT Sapphire Systems Holding LLC  4417), GT Advanced Cz LLC  9815), GT Sapphire Systems Group LLC  5126), and GT Advanced Technologies Limited  1721).  The Debtors' corporate headquarters is located at 243 Daniel Webster Highway, Merrimack, NH 03054.

²       Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Application.

*Kurtzman Carson Consultants LLC As Notice, Claims, and Balloting Agent to Debtors, Effective Nunc Pro Tunc to Petition Date*  the "<u>Application</u>") of the above-captioned debtors and debtors in possession  collectively, "<u>GTAT</u>" or the "<u>Debtors</u>").  Except as otherwise noted, I have personal knowledge of the matters set forth herein.

<strong><u>Services to be Provided</u></strong>

3.      GTAT proposes to employ KCC as the authorized notice, claims and balloting agent to, among other things, undertake mailings as directed by GTAT, the Court, or the U.S. Trustee and as required by the Bankruptcy Code, the Bankruptcy Rules, or the LBR, all in accordance with the Services Agreement, a copy of which is attached as <u>Schedule 1</u> to <u>Exhibit A</u> to the Application.  The proposed terms and conditions of KCC's engagement as set forth in the Services Agreement are consistent with, and typical of, other notice, claims and balloting agent engagements in chapter 11 cases approved in districts in the First Circuit and other districts nationwide.

4.      This retention is the most effective and efficient manner of noticing the many creditors and parties in interest of the commencement of these chapter 11 cases and other developments in these chapter 11 cases.  Specifically, KCC will perform, to the extent GTAT requests, the following services in its role as claims and balloting agent, as well as any quality control related thereto:

      a.    preparing and serving required notices and documents in these chapter 11 cases in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by GTAT and/or the Court, including, if applicable,  i) the notice of the commencement of these chapter 11 cases and the initial meeting of creditors under section 341 a) of the Bankruptcy Code,  ii) notice of the claims bar date,  iii) notices of objections to claims and objections to transfers of claims,  iv) notices of hearings on motions filed by the U.S. Trustee,  v) notices of transfers of claims,  vi) notices of any hearings on a disclosure statement and confirmation of GTAT's plan or plans of reorganization, and  vii) all other notices, orders, pleadings, publications, and other documents as

2

GTAT and/or the Court may deem necessary or appropriate for an orderly administration of these chapter 11 cases;

b.    maintaining and updating the master mailing lists of creditors;

c.    within seven days after the mailing of a particular notice, filing with the Court a copy of the notice served with a certificate of service attached indicating the name and complete address of each party served;

d.    receiving, examining, and maintaining copies of all proofs of claim and proofs of interest filed in these chapter 11 cases;

e.    maintaining the official claims register  the "Claims Register") in these chapter 11 cases by docketing all proofs of claim and proofs of interest in a claims database that includes the following information for each such claim or interest asserted:  i) the name and address of the claimant or interest holder and any agent thereof, if the proof of claim or proof of interest was filed by an agent,  ii) the date the proof of claim or proof of interest was received by KCC and/or the Court,  iii) the claim number assigned to the proof of claim or proof of interest,  iv) the asserted amount and classification of the claim, and  v) the applicable GTAT entity against which the claim or interest is asserted;

f.    recording all transfers of claims pursuant to Bankruptcy Rule 3001 e);

g.    revising the creditor matrix after the objection period expires;

h.    recording any order entered by the Court which may affect a claim by making a notation on the Claims Register;

i.    monitoring the Court's docket for any claims-related pleading filed and making necessary notations on the Claims Register;

j.    maintaining a separate Claims Register for each GTAT entity if these chapter 11 cases are jointly administered, each of which shall be open to the public for examination without charge during regular business hours and on a case-specific website maintained by KCC;

k.    filing a quarterly updated Claims Register with the Court in alphabetical and numerical order.  If there was no claims activity, a certification of no claim activity may be filed;

l.    maintaining an up-to-date mailing list of all creditors and all entities who have filed proofs of claim or proofs of interest and/or request for notices in the case and providing such list to the Court or any interested party upon request  within 48 hours);

m.    providing access to the public for examination of claims and the Claims Register at no charge;

n.    forwarding all claims, an updated Claims Register, and an updated mailing list to the Court within ten days of entry of an order converting any of these chapter 11 cases or within 30 days of entry of a final decree.  The Claims Register and mailing list will be provided in both paper and on

3

disc and in alphabetical and numerical order.  The mailing list disc will be in .txt format;

o.      implementing necessary security measures to ensure the completeness and integrity of the Claims Register;

p.      complying with applicable federal, state, municipal, and local statutes, ordinances, rules, regulations, orders, and other requirements;

q.      providing temporary employees to process claims as necessary;

r.      promptly complying with such further conditions and requirements as the office of the Clerk of the Court  the "Clerk's Office") or the Court may at any time prescribe;

s.      providing such other claims processing, noticing, and related administrative services as may be requested from time to time by GTAT;

t.      to the extent necessary, gathering data in conjunction with the preparation of the GTAT entities' schedules of assets and liabilities and statements of financial affairs;

u.      assisting in the dissemination of information to the public and responding to requests for administrative information regarding the case as directed by GTAT or the Court, including through the use of a case website and/or call center; and

v.      performing other administrative tasks pertaining to the administration of these chapter 11 cases, as may be requested by GTAT or the Clerk's Office.

5.      In connection with these activities, KCC will follow the notice and claims procedures that conform to the guidelines promulgated by the Clerk's Office and the Judicial Conference of the United States, and as may be ordered by the Court.

## KCC's Qualifications

6.      KCC is a bankruptcy administrator that specializes in providing comprehensive chapter 11 administrative services including noticing, claims processing, solicitation, balloting, and other related services critical to the effective administration of chapter 11 cases.  Indeed, KCC has developed efficient and cost-effective methods to properly handle the voluminous mailings associated with the noticing, claims processing, solicitation, and balloting portions of chapter 11 cases to ensure the orderly and fair treatment of creditors, equity security holders, and all parties in interest.  Further, KCC will work with the Clerk's Office to ensure that such

methodology conforms to all of the Court's procedures, the LBR, and the provisions of any Court orders.  Appointing KCC as claims and balloting agent in these chapter 11 cases will expedite the distribution of notices and the processing of claims, and relieve the Clerk's Office of the administrative burdens related thereto.

7.     The GTAT entities' estates and their creditors will benefit from KCC's retention because KCC has developed efficient and cost-effective methods in this area of expertise.  KCC is fully equipped to handle the volume of mailing involved in properly sending the required notices to and processing the claims of creditors in these chapter 11 cases.  KCC is one of the country's leading chapter 11 administrators, with experience in noticing, claims administration, solicitation, balloting, and facilitating other administrative aspects of chapter 11 cases.

8.     KCC has substantial experience in matters of this size and complexity and has acted as the official claims and balloting agent in many large bankruptcy cases pending in this and other districts.[3]

---

[3]     See *TelexFree, LLC, et al.*, Case No. 14-40987  Bankr. D. Mass. Apr. 13, 2014); *Houghton Mifflin Harcourt Publishing Company, et al.*, Case No. 12-15610  Bankr. D. Mass. May 21, 2012); *In re Brookstone Holdings Corp.*, No. 14-10752  BLS)  Bankr. D. Del. Apr. 4, 2014); *In re Ablest Inc.*, No. 14-10717  KJC)  Bankr. D. Del. Apr. 2, 2014); *In re The Dolan Co.*, No. 14-10614  BLS)  Bankr. D. Del. Mar. 25, 2014); *In re Sorenson Commc'ns, Inc.*, No. 14-10454  BLS)  Bankr. D. Del. Mar. 4, 2014); *In re Victor Oolitic Stone Co., d/b/a Ind. Limestone Co.*, No. 14-10311  CSS)  Bankr. D. Del. Feb. 18, 2014); *In re Event Rentals, Inc.*, No. 14-10282  PJW)  Bankr. D. Del. Feb. 18, 2014); *In re Global Aviation Holdings Inc.*, No. 13-12945  MFW)  Bankr. D. Del. Nov. 14, 2013); *In re Physiotherapy Holdings, Inc.*, No. 13-12965  KG)  Bankr. D. Del. Nov. 14, 2013); *In re Eagle Bulk Shipping Inc., et al.*, Case No. 14-12303  Bankr. SDNY Aug. 6, 2014); *In re Momentive Performance Materials  MPM Silicones, LLC), et al.*, Case No. 14-22503  Bankr. SDNY Apr. 13, 2014); *In re Metro Affiliates, Inc., et al.*, Case No. 13-13591  Bankr. SDNY Nov. 11, 2013); *In re Residential Capital, LLC et al.*, Case No. 12-12020  Bankr. SDNY May 14, 2012)*In re RIH Acquisitions NJ, LLC*, No. 13-34483  GMB)  Bankr. D.N.J. Nov. 18, 2013); *In re Metro Affiliates, Inc.*, No. 13-13591  SHL)  Bankr. S.D.N.Y. Nov. 7, 2013); *In re Groeb Farms, Inc.*, No. 13-58200  WS)  Bankr. E.D. Mich. Oct. 4, 2013); *In re Global Axcess Corp.*, No. 13-51562  MKN)  Bankr. D. Nev. Oct. 1, 2013); *In re Electric Transp. Eng'g Corp.  d/b/a ECOtality N. Am.)*, No. 13-16126  RJH)  Bankr. D. Ariz. Sept. 19, 2013); *In re City of Detroit, Mich.*, No. 13-53846  SWR)  Bankr. E.D. Mich. Aug. 6, 2013); *In re Lyon Workspace Prods., L.L.C.*, No. 13-02100  JSB)  Bankr. N.D. Ill. Feb. 27, 2013); *In re Hartford Computer Hardware, Inc.*, No. 11-49744  PSH)  Bankr. N.D. Ill. Dec. 15, 2011); *In re The Roman Catholic Bishop of Stockton*, No. 14-20371  CMK)  Bankr. E.D. Ca. Apr. 8, 2014).  Because of the voluminous nature of the unreported orders cited herein, they are not annexed to the Motion.  Copies of these orders are available upon request of GTAT's proposed undersigned counsel.

**Professional Compensation**

9.      Subject to the Court's approval, GTAT has agreed to compensate KCC for professional services rendered in connection with these chapter 11 cases pursuant to the Services Agreement.  KCC believes that the rates for its claims and balloting services are comparable to the rates charged by its competitors for similar services.

10.      KCC respectfully submits that the fees and expenses incurred by KCC are administrative in nature and should not be subject to the standard fee application procedures for professionals.  Specifically, KCC requests authorization to be compensated on a monthly basis in the ordinary course of business and in accordance with the terms and conditions set forth in the Services Agreement).  KCC agrees to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on GTAT, the office the U.S. Trustee, and counsel to any statutory creditors' committee appointed in these chapter 11 cases, if any.

11.      If any dispute arises relating to the Services Agreement or KCC's monthly invoices, KCC and GTAT will meet in an attempt to resolve the dispute.  If a resolution is not achieved, KCC and GTAT will seek resolution of the matter from the Court.

**Disinterestedness**

12.      KCC is a "disinterested person," as that term is defined in section 101 14) of the Bankruptcy Code, in that KCC and its professional personnel:

  a.      are not creditors, equity security holders, or insiders of GTAT;

  b.      are not and were not, within two years before the date of the filing of these cases, directors, officers, or employees of GTAT; and

     c.      do not have an interest materially adverse to the interests of GTAT's estate or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, GTAT.[4]

13.     Further, KCC Represents that:

     a.      it will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as claims and balloting agent;

     b.      by accepting employment in these chapter 11 cases, KCC waives any right to receive compensation from the United States government in its capacity as claims and balloting agent;

     c.      in its capacity as claims and balloting agent, KCC will not be an agent of the United States and will not act on behalf of the United States; and

     d.      KCC will not employ any past or present employees of GTAT in connection with its work as the claims and balloting agent in these chapter 11 cases.

14.     To the best of my knowledge, neither KCC, nor any of its professional personnel, has any relationship with GTAT that would impair KCC's ability to serve as notice, claims and balloting agent.  KCC may have relationships with some of GTAT's creditors, but they are in matters completely unrelated to these chapter 11 cases, either as vendors or in cases where KCC serves in a neutral capacity as a class action settlement claims administrator.  KCC's assistance in the cases where KCC acts as a class action settlement claims administrator has been primarily related to the design and dissemination of legal notice and other administrative functions in class actions.  KCC has working relationships with certain of the professionals retained by GTAT and other parties herein, but such relationships are completely unrelated to these chapter 11 cases.  In addition, KCC personnel may have relationships with some of GTAT's creditors; however, such relationships are of a personal financial nature and completely unrelated to these chapter 11 cases.  KCC has represented and will continue to represent clients in matters unrelated to these chapter 11 cases and has had and will continue to have relationships in the ordinary course of its

---

[4] *See* 11 U.S.C. § 101 14).

business with certain vendors and professionals in connection with matters unrelated to these cases.

15.     KCC is an indirect subsidiary of Computershare Limited  "Computershare"). Computershare is a financial services and technologies provider for the global securities industry.  Within the Computershare corporate structure, KCC operates as a separate, segregated business unit.  As such, any relationships that Computershare and its affiliates maintain do not create an interest of KCC that would be materially adverse to GTAT's estates or any class of creditors or equity security holders.

16.     To the best of my knowledge and except as disclosed herein, I respectfully represent that although the elements of section 327 of the Bankruptcy Code and Bankruptcy Rule 2014 are not necessary or relevant in connection with KCC's employment and retention, which is being sought under section 156 c) of title 28 of the United States Code, nevertheless, KCC neither holds nor represents any interest materially adverse to GTAT's estates in connection with any matter on which it would be employed and is a "disinterested person" within the meaning of section 101 14) of the Bankruptcy Code.  KCC will supplement its disclosure to the Court if any facts or circumstances are discovered that would require disclosure.

17.     Further, KCC will comply with all requests of or by the Clerk's Office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of section 156 c) of title 28 of the United States Code.

18.     Should KCC discover any relevant facts or relationships bearing on the matters described herein, KCC will use reasonable efforts to promptly file a supplemental declaration with the Court.

## <u>Indemnification</u>

19.    As part of the overall compensation payable to KCC under the terms of the Services Agreement, KCC is entitled to certain indemnification obligations, which are described in detail in the Services Agreement.  Specifically, the Services Agreement provides that GTAT will indemnify and hold harmless KCC, its affiliates, members, directors, officers, employees, and agents under certain circumstances specified in the Services Agreement, but not in circumstances of losses resulting from KCC's bad faith, gross negligence, or willful misconduct.

20.    The terms of the Services Agreement and indemnification provisions were negotiated between KCC and GTAT at arms'-length and I believe that these indemnification provisions and the Services Agreement are customary and reasonable for claims and balloting agents retained in chapter 11 cases.

[*remainder of page intentionally left blank*]

21.    Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct to the best of my knowledge, information, and belief.

Executed on: October 6, 2014

By: _____

Evan Gershbein
Senior Vice President
Corporate Restructuring Services
Kurtzman Carson Consultants LLC