Case: 14-11916-CJP  Doc #: 92-3  Filed: 10/10/14  Desc: Exhibit C - Confidentiality Agreement  Page 1 of 4


# EXHIBIT C

## CONFIDENTIALITY AGREEMENT

*Confidentiality Agreement (Mutual)*
*Page 1 of 3*

# APPLE INC.
# CONFIDENTIALITY AGREEMENT (Mutual)

This Confidentiality Agreement (the "Agreement") is entered into and is effective as of August 24, 2012 (the "Effective Date") by and between Apple Inc., 1 Infinite Loop, Cupertino, California 95014 ("Apple") and GTAT Corporation, d/b/a GT Advanced Technologies, located at 20 Trafalgar Square, Nashua, NH 03063 ("Company"), on behalf of themselves and their respective wholly-owned subsidiaries.

1. **DEFINITION OF CONFIDENTIAL INFORMATION.** For their mutual benefit, the parties plan to discuss certain confidential information regarding Apple's evaluation and use of Company's goods, services and technologies in connection with Apple products (the "Project"). The parties agree that the terms and conditions of this Agreement, the nature of their business relationship, including, if applicable, the fact that one party provides or may provide goods or services to the other, and the parties' discussions concerning the Project will be considered confidential information covered by this Agreement ("Confidential Information"). In addition, any other nonpublic information which one party ("Discloser") discloses to the other party ("Recipient") in the course of their communications regarding the Project will be considered Confidential Information, including but not limited to nonpublic product plans, designs, costs, prices, names, finances, marketing plans, business opportunities, forecasts, orders, personnel, customer information, research, development, know-how, third party confidential information or information learned by Recipient from Discloser's employees, agents or through inspection of Discloser's property; provided such information is clearly designated as "Confidential": (i) in writing, if communicated in writing, or (ii) at the time of disclosure, if disclosed orally or visually. Notwithstanding the foregoing, Confidential Information shall not include information that: (a) is now or subsequently becomes generally available to the public through no fault or breach on the part of Recipient; (b) Recipient can demonstrate to have had rightfully in its possession prior to disclosure to Recipient by Discloser; (c) is independently developed by Recipient without the use of any Confidential Information; or (d) Recipient rightfully obtains from a third party who has the right to transfer or disclose it to Recipient without limitation. Nothing in this Agreement will obligate either party to disclose any Confidential Information.

2. **NONDISCLOSURE AND NONUSE OF CONFIDENTIAL INFORMATION.** Recipient agrees to protect Discloser's Confidential Information, using at least the same degree of care that it uses to protect its own confidential and proprietary information of similar importance, but no less than a reasonable degree of care. Company agrees to use Apple's Confidential Information for the sole purpose of evaluation in connection with the Project and discussions with Apple related to the Project, or as otherwise agreed upon in writing by an authorized representative of Apple. Recipient will not disclose, publish, or disseminate Confidential Information to anyone other than those of its employees (or to employees of any of its wholly-owned subsidiaries) and consultants who have a need to know in order to accomplish such purpose and who are bound by a written agreement that prohibits unauthorized disclosure or use of Confidential Information. In the event of disclosure to an employee of a wholly-owned subsidiary, a copy of this Agreement should be provided at the time of such disclosure to ensure the employees and consultants of such wholly-owned subsidiary understand the terms of this Agreement. Recipient will be responsible for any violation of

*Confidentiality Agreement (Mutual)*
*Page 2 of 3*

the terms of this Agreement by its employees and consultants, and employees of its wholly owned subsidiaries. Company agrees not to use Confidential Information for any other purpose or for its own or any third party's benefit without the prior written consent of an authorized representative of Apple in each instance. Recipient may disclose Confidential Information to the extent required by law, provided Recipient makes reasonable efforts to give Discloser notice of such requirement prior to any such disclosure and takes reasonable steps to obtain protective treatment of the Confidential Information.

3. NO LICENSE TO CONFIDENTIAL INFORMATION. Except as expressly set forth herein, no license or other rights to Confidential Information are granted or implied hereby and the Discloser retains all of its rights therein.

4. FEEDBACK. Subject to Section 2, above, if Recipient provides any ideas, suggestions or recommendations to Discloser regarding Discloser's Confidential Information ("Feedback"), Discloser is free to use and incorporate such Feedback in Discloser's products, without payment of royalties or other consideration to Recipient, so long as Discloser does not infringe Recipient's patents, copyrights or trademark rights in the Feedback. Nothing in this Agreement is intended to grant a license or waive any rights in either party's patents, copyrights or trademarks.

5. INDEPENDENT DEVELOPMENT. Discloser understands that Recipient may currently or in the future be developing information internally, or receiving information from other parties that may be similar to Discloser's Confidential Information. Nothing in this Agreement will prohibit Recipient from developing products, or having products developed for it, that compete with Discloser's products, provided that in doing so, Recipient does not use or disclose Discloser's Confidential Information.

6. NO WARRANTY. Discloser warrants that it has the right to disclose the Confidential Information to Recipient. Otherwise, all information is provided "AS IS" and without any warranty, express, implied or otherwise, regarding its accuracy or performance.

7. RETURN OF DOCUMENTS. Within ten (10) business days of receipt of Discloser's written request, and at Discloser's option, Recipient will either return to Discloser all tangible Confidential Information, including but not limited to all electronic files, documentation, notes, plans, drawings, and copies thereof, or will provide Discloser with written certification that all such tangible Confidential Information of Discloser has been destroyed.

8. TERM AND TERMINATION. Recipient's duty to protect Discloser's Confidential Information expires five (5) years from the date on which that Confidential Information was disclosed to Recipient. Either party may terminate this Agreement upon ten (10) days written notice; however, any termination of this Agreement shall not relieve Recipient of its confidentiality and use obligations with respect to Confidential Information disclosed prior to the date of termination.

9. NO EXPORT. Recipient may not use or otherwise export or reexport any portion of the Confidential Information except as authorized by United States law and the laws of the jurisdiction in which the Confidential Information was obtained. In particular, but without

*Confidentiality Agreement (Mutual)*
*Page 3 of 3*

limitation, the Confidential Information may not be exported or re-exported (a) into any U.S. embargoed countries or (b) to anyone on the U.S. Treasury Department's list of Specially Designated Nationals or the U.S. Department of Commerce's Denied Persons List or Entity List. By using the Confidential Information, Recipient represents and warrants that Recipient is not located in any such country or on any such list. Recipient also agrees that Recipient will not use the Confidential Information for any purposes prohibited by United States law, including, without limitation, the development, design, manufacture or production of nuclear, missile, chemical or biological weapons.

10. **NO IMPLIED WAIVER.** Neither party's failure or delay in exercising any of its rights will constitute a waiver of such rights unless expressly waived in writing.

11. **NO ASSIGNMENT.** This Agreement may not be assigned by either party by any means, including without limitation, by operation of law or merger, without the prior, written consent of the other party. Any attempted assignment of this Agreement in violation of this section will be void.

12. **ENTIRE AGREEMENT AND GOVERNING LAW.** This Agreement constitutes the entire agreement with respect to the Confidential Information disclosed pursuant to this Agreement and supersedes all prior or contemporaneous oral or written agreements concerning such Confidential Information. This Agreement may not be amended except by written agreement signed by authorized representatives of both parties. This Agreement will be governed by and construed in accordance with the laws of the State of California, excluding that body of California law concerning conflicts of law. The parties further submit to and waive any objections to the exclusive jurisdiction of and venue in any of the following forums: U.S. District Court for the Northern District of California, California Superior Court for Santa Clara County, or any other forum in Santa Clara County, for any litigation arising out of this Agreement.

Understood and agreed to by the authorized representatives of the parties:

| Apple | Company |
|---|---|
| Apple Inc. | GTAT Corporation |
| By (Signature): [signed]       Date: 8/24/12 | By (Signature): [signed]       Date: 8/24/12 |
| Printed Name and Title: VASHIST VASANTHAKUMAR, GSM Manager, iPhone Operations | Printed Name and Title: Hoil Kim, Vice President and General Counsel |

COMPANY: RETURN TWO SIGNED ORIGINALS TO APPLE EMPLOYEE
APPLE EMPLOYEE: RETURN ONE SIGNED ORIGINAL TO APPLE LEGAL, M/S 36-4I