# EXHIBIT D

## EXCERPTS OF SOW

APPLE CONFIDENTIAL
#C56-13-02947

# APPLE INC.
# STATEMENT OF WORK #1
## to
## MASTER DEVELOPMENT AND SUPPLY AGREEMENT
## # C56-13-02947

Apple Inc. ("*Apple*") and GTAT Corporation ("*GTAT*") entered into Master Development and Supply Agreement #C56-13-02947 effective as of October 31, 2013 (the "*Agreement*" or "*MDSA*"). Apple may purchase the Goods described in this Statement of Work #1 ("*SOW*"), and GTAT and any GTAT affiliates authorized to provide such Goods agree to manufacture and deliver such Goods, all in accordance with the terms set forth in this SOW and the MDSA. This SOW is effective as of October 31, 2013 ("*Effective Date of the SOW*").

## PURPOSE

Apple and GTAT are entering into this SOW and the rest of the Collateral Agreements (as defined below) pursuant to which: (i) Apple will design and build the Mesa Facility that it will lease to GTAT; (ii) GTAT will grow and process sapphire boules into Goods which it will sell to Apple; (iii) Apple will make a prepayment to GTAT to fund the purchase of Furnaces (as defined in Section 1.6 below) and Equipment used to make the Goods and (iv) GTAT will grant Apple a security interest and provide Apple with other protective rights in recognition of Apple's investment in the Mesa Facility and Apple's prepayment to GTAT. In connection with the foregoing, Apple and GTAT, or Apple's or GTAT's Related Entities, as applicable, are entering or will enter into the following agreements (collectively, the "*Collateral Agreements*"):

(a) this SOW;

(b) MDSA;

(c) Intellectual Property Agreement among Apple, GTAT, GT Advanced Technologies Limited, GT Sapphire Systems Holding LLC and GT Sapphire Systems Group LLC;

(d) Prepayment Agreement between Apple and GTAT, dated as of the Effective Date of the SOW (the "*Prepayment Agreement*") and all exhibits and attachments thereto;

(e) Membership Interest Pledge Agreement between Apple and GTAT, dated as of the Effective Date of the SOW (the "*Pledge Agreement*") and all exhibits and attachments thereto; and

(f) Mesa Facility Lease Agreement between Platypus Development LLC and GTAT, dated as of the Effective Date of the SOW (the "*Mesa Facility Lease Agreement*") and all exhibits and attachments thereto.

## AGREEMENT

Any capitalized terms used in this SOW will have the meanings assigned them in this SOW, or, if not defined in this SOW, those assigned them in the MDSA. In the event of any conflicting terms, the order of precedence will be terms of (i) the Prepayment Agreement, (ii) the Pledge Agreement, (iii) the Intellectual Property Agreement, (iv) this SOW, (v) the MDSA and (vi) the Mesa Facility Lease Agreement.

For purposes of this SOW, "*Goods*" mean (i) sapphire Bricks meeting the Specification provided by Apple to GTAT, (ii) other goods specified by Apple that are capable of being produced using the

Apple -GTAT MDSA SOW#1    1

APPLE CONFIDENTIAL
#C56-13-02947

5.12 The Apple Equipment provided by Apple is provided to GTAT "as is" and Apple disclaims all warranties, express or implied, including the implied warranties of merchantability and fitness for a particular purpose.

5.13 GTAT is solely responsible for installing, testing, and maintaining Apple Equipment in its control in good working condition in compliance with applicable manufacturing specifications, for purchasing and maintaining spare parts to repair such Apple Equipment with a minimum of downtime, and for any risk of loss in connection with the Apple Equipment.

5.14 Apple reserves the right to inspect any Apple Equipment in GTAT's control at any time. Apple reserves all its rights and remedies under MDSA, this SOW, the Uniform Commercial Code and all other applicable laws, including, but not limited to, the right to lawfully enter the premises of GTAT and take possession as bailor of any and all Apple Equipment at any time without breach of the peace.

6. Liquidated Damages.

6.1 Without limiting the foregoing or any other remedies available to Apple: (i) on the fourth calendar day following the required delivery date for any Goods, GTAT will remit to Apple the applicable amount set forth in the table below for each quantity of Goods that has not been delivered prior to such fourth calendar day; and (ii) on the fifth calendar day following the required delivery date for any Goods, GTAT will remit to Apple the additional applicable amount set forth in the table below for each quantity of Goods that has not been delivered prior to such fifth calendar day. The foregoing remedy is non-exclusive and Apple will be entitled to pursue any other legal or equitable remedies.

| Good | 4th Day Late | 5th Day Late |
|---|---|---|
| Boule | $320,000 | $320,000 |
| Brick Good material | $77/mm | $77/mm |

6.2 Without limiting the foregoing or any other remedies available to Apple: If GTAT or any applicable GTAT Related Entities breaches the confidentiality obligations set forth in the MDSA, Apple Restricted Information Agreement or Apple Restricted Project Agreement, then GTAT will pay to Apple, as liquidated damages, an amount equal to $50 million per occurrence. The foregoing remedy is non-exclusive and Apple will be entitled to pursue any other legal or equitable remedies.

6.3 Without limiting the foregoing or any other remedies available to Apple: If GTAT, any of its affiliates, distributors or channel partners or customers violates the exclusivity obligations set forth in Section 9.1 herein, GTAT will pay to Apple, as liquidated damages, an amount equal to $640,000 for each sapphire boule produced and used in connection with a violation of the exclusivity obligations set forth in Section 9.1. In addition, if GTAT, or any GTAT Related Entities, supply (whether by sale, lease or otherwise) sapphire growth furnaces or sapphire growth or production services to any entity in breach of the restrictions set forth in Section 9.1, GTAT will pay, as additional liquidated damages, an amount equal to $650,000 per month per furnace until such furnace is permanently shut down. The foregoing remedies are non-exclusive and Apple will be entitled to pursue any other legal or equitable remedies.

6.4 Without limiting the foregoing or any other remedies available to Apple: If a Key Employee is not replaced by a suitably qualified individual in accordance with Section 11 below, then

Apple -GTAT MDSA SOW#1                              9