# EXHIBIT E

## EXCERPTS OF MASTER DEVELOPMENT AND SUPPLY AGREEMENT

Apple-GTAT MDSA
#C56-13-02947

# APPLE INC.
# MASTER DEVELOPMENT AND SUPPLY AGREEMENT

This Master Development and Supply Agreement #C56-13-02947 (the "*Agreement*") is entered into by and among **Apple Inc.**, a California corporation having its principal place of business at 1 Infinite Loop, Cupertino, California 95014, United States ("*Apple*") and **GTAT Corporation**, having its principal place of business at 243 Daniel Webster Highway, Merrimack, NH 03054 ("*GTAT*"), effective as of October 31, 2013 (the "*Effective Date*").

1. **Scope.** This Agreement relates to goods that GTAT will develop, manufacture, sell and deliver to Authorized Purchasers (as defined below) for use in connection with Apple's products (collectively, the "*Goods*"). The parties may enter into statements of work (each, a "*Statement of Work*" or "*SOW*") in the future to address additional details related to specific Goods.

2. **Forecast.** Apple will periodically provide written forecasts indicating Apple's projected demand for each Good (each such forecast, a "*Forecast*"). GTAT will accept each such Forecast upon receipt provided it is consistent with the applicable Flexibility Schedule, if any, in an SOW. GTAT will timely commence the manufacture of Goods in order to deliver the Goods by the dates indicated in each Forecast. "*Flexibility Schedule*" means a schedule that sets forth the maximum percentage increase in units forecasted or ordered, based on when notice of such increase is given.

3. **Pricing.** Apple and GTAT will mutually agree on pricing for Goods. In addition to any agreed upon prices, the per unit price for a Good will not exceed 95% of the lowest price GTAT offers to any other customer for similar Goods, net of rebates, discounts and other payments, and regardless of volume.

4. **Purchase Orders.**

    4.1. GTAT will accept and timely fulfill all Purchase Orders that Apple or any entity Apple authorizes to procure Goods under this Agreement (Apple and each of the foregoing entities, an "*Authorized Purchaser*") issues by the delivery date requested in such Purchase Order so long as the number of Goods indicated does not exceed the quantity specified in the applicable Forecast with respect to the relevant delivery period. "*Purchase Order*" means an Authorized Purchaser's written or electronically transmitted instruction to GTAT to deliver particular Goods pursuant to applicable delivery or performance dates and locations.

    4.2. Authorized Purchasers may, without charge, (i) cancel any Purchase Order, or any portion thereof; or (ii) reschedule the shipment date of undelivered Goods and/or redirect shipments of Goods to alternate locations.

    4.3. Unless mutually agreed in writing otherwise, all Purchase Orders will be governed by the terms and conditions of this Agreement and any applicable SOW. As between Apple, its Related Entities and GTAT, any different or additional terms in any proposal, acknowledgement form or any other document will be of no force or effect and will not become part of the agreement between the parties. GTAT will not enter into any agreement with any Authorized Purchaser in connection with the Goods on terms less favorable to such Authorized Purchaser than those in this Agreement. Further, if GTAT or an Authorized Purchaser seeks, but fails within 90 days, to enter into such an agreement, then GTAT will promptly notify Apple of the circumstances.

    4.4. GTAT may not invoice for Goods until after delivery. Payment terms are 45 days from the date an Authorized Purchaser receives an undisputed invoice. All amounts payable will be stated and paid in United States Dollars.

    4.5. Authorized Purchasers are not obligated to purchase any Goods except pursuant to a Purchase Order it issues. Except for amounts due pursuant to a Purchase Order or SOW, Authorized Purchasers will not be responsible for any costs in connection with the supply or purchase of any Goods.

Need to Know Confidential

Page 1 of 19

Apple-GTAT MDSA
#C56-13-02947

## ATTACHMENT 1

### General Terms and Conditions

1. **Confidentiality.** All disclosures of Confidential Information arising out of or related to this Agreement will be governed by the terms of the parties' existing Confidentiality Agreement, dated August 24, 2012.

2. **Press Releases and Publicity.** Neither Apple nor GTAT will issue press releases or other publicity regarding the Agreement or its subject matter without the prior written approval of the other.

3. **Compliance with Laws.** GTAT agrees that it will fully comply with all applicable laws and regulations in performing its obligations under the Agreement. GTAT agrees that it will not export, re-export, sell, resell or transfer any customer data or any export-controlled commodity, technical data or software (i) in violation of any law, regulation, order, policy or other limitation imposed by the United States (including the United States Export Administration regulations) or any other government authority with jurisdiction; or (ii) to any country for which an export license or other governmental approval is required at the time of export, without first obtaining all necessary licenses or equivalent.

4. **Anti-Corruption.** GTAT has reviewed and understands Apple's policies with respect to ethical business conduct and agrees to fully comply with all such policies. GTAT will comply with all applicable laws and regulations enacted to combat bribery and corruption, including the United States Foreign Corrupt Practices Act, the UK Bribery Act, the principles of the OECD Convention on Combating Bribery of Foreign Public Officials and any corresponding laws of all countries where business or services will be conducted or performed pursuant to the Agreement (collectively, the "*Anti-Corruption Laws*"). GTAT and, to the best of GTAT's knowledge, its subsidiaries and affiliates, have conducted their businesses in compliance with the Anti-Corruption Laws. GTAT will not Knowingly, directly or indirectly pay, offer, promise, or give anything of value (including any amounts paid or credited by Apple to GTAT) to any person or party, to influence any act or decision by such person or party for the purpose of obtaining, retaining, or directing business to Apple. "*Knowingly*" means (i) the actual knowledge of GTAT's executive officers or employees, or (ii) the knowledge that GTAT's executive officers and employees should reasonably be expected to have or (iii) the existence of a reasonable belief of GTAT's executive officers or employees. Any amounts paid by Apple to GTAT under the Agreement will be for services actually rendered, or Goods sold, by GTAT (as applicable). Additionally, to the extent permitted by law, GTAT will notify Apple if an owner, partner, officer, director or employee of GTAT who is assigned to a current or prospective Apple account as an account representative or account manager (or any similar such position) has been, or will become, an official or employee of a governmental entity or political party or a candidate for political office. GTAT represents and warrants that all information provided to Apple in connection with Apple's selection and approval of GTAT as an Apple vendor, or at any other time during the term of the Agreement, is complete and true.

5. **Right to Offset.** Apple may, from time to time, set-off or recoup any amounts due from GTAT or any GTAT Related Entity to Apple or any Apple Related Entity, against any amounts due from Apple or any Apple Related Entity to GTAT or any GTAT Related Entity. If required by applicable law, Apple will give GTAT notice that Apple has effected a set-off or recoupment, within a reasonable time thereafter via email or any other reasonable means that Apple selects, and GTAT agrees that any such notice will be effective when given, even if a receiver, custodian, trustee, examiner, liquidator or similar official has been appointed for GTAT, the applicable GTAT Related Entity, or any substantial portion of the assets thereof. The rights described in this paragraph are in addition to any other rights and remedies available under this Agreement or applicable law, including, for example, the right to deduct damages from any amount payable to GTAT or any GTAT Related Entity. "*Related Entity*," as applied to both Apple and GTAT, includes any subsidiary or affiliate and further includes any corporation, partnership, limited liability company, joint venture, association, trust, unincorporated organization or other business entity that controls, is controlled by, or is under common control with an entity, where "control" means that the entity possesses, directly or indirectly, the power to direct or cause the direction of the management policies of the other entity, whether through ownership of voting securities, an interest in registered capital, by contract, or otherwise.

6. **Insurance and Loss Prevention.** GTAT will comply with the requirements specified in Attachment 4 hereto.