UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

---------------------------------------------------------------x
                                                               :
*In re:*                                                       :   **Chapter 11**
                                                               :
**GT ADVANCED TECHNOLOGIES INC.,** *et al.*,                   :   **Case No. 14-11916-HJB**
                                                               :
Debtors.[1]                                                    :
                                                               :   **Jointly Administered**
---------------------------------------------------------------x

## DEBTORS' EMERGENCY MOTION, PURSUANT TO BANKRUPTCY CODE SECTIONS 105(a) AND 365(a), FOR ENTRY OF ORDER AUTHORIZING DEBTORS TO REJECT CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES *NUNC PRO TUNC* TO PETITION DATE

GT Advanced Technologies Inc. ("GT") and its affiliated debtors as debtors in possession in the above-captioned cases (collectively, "GTAT" or the "Debtors") hereby submit this motion (the "Motion"), pursuant to sections 105(a) and 365(a) of title 11 of the United States Code (the "Bankruptcy Code"), for entry of an order, substantially in the form attached hereto as Exhibit A, authorizing GTAT to reject the executory contracts and unexpired leases listed on Schedule 1 to the attached proposed order, *nunc pro tunc* to the Petition Date (as defined herein). In support of this Motion, GTAT respectfully represents:

### JURISDICTION, VENUE AND STATUTORY BASIS

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The Debtors, along with the last four digits of each debtor's tax identification number, as applicable, are: GT Advanced Technologies Inc. (6749), GTAT Corporation (1760), GT Advanced Equipment Holding LLC (8329), GT Equipment Holdings, Inc. (0040), Lindbergh Acquisition Corp. (5073), GT Sapphire Systems Holding LLC (4417), GT Advanced Cz LLC (9815), GT Sapphire Systems Group LLC (5126), and GT Advanced Technologies Limited (1721). The Debtors' corporate headquarters are located at 243 Daniel Webster Highway, Merrimack, NH 03054.

2.  The statutory bases for the relief requested herein are sections 105(a) and 365(a) of the Bankruptcy Code.

## BACKGROUND

3.  On the date hereof (the "Petition Date"), GTAT commenced voluntary cases under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Hampshire (the "Court"). GTAT continues to operate its business and manage its properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases and no committees have been appointed or designated.

4.  GTAT has requested that these chapter 11 cases be consolidated for procedural purposes only and jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

5.  Information regarding GTAT's business, capital structure, and the circumstances leading to these chapter 11 cases is set forth in the *Declaration of Daniel W. Squiller in Support of Chapter 11 Petitions and First-Day Motions*, dated October 6, 2014 [Docket No. 14] (the "First Day Declaration") and the *Supplemental Declaration of Daniel W. Squiller in Support of Chapter 11 Petitions and First-Day Motions*, dated October 8, 2014 (the "Supplemental First Day Declaration"), which are incorporated herein by reference.

### GTAT's Business

6.  GTAT and its non-Debtor affiliates (collectively, the "GTAT Group") are leading manufacturers and suppliers of advanced materials and equipment for the global consumer electronics, power electronics, solar, and LED industries. The GTAT Group designs and sells high-quality sapphire production equipment and materials for a wide variety of domestic and international markets, including the consumer electronics market. In addition, the GTAT

Group's historical business is based in the solar industry, where it is a leading provider of key polysilicon and photovoltaic equipment, services, and technologies. The GTAT Group is also in the process of developing and commercializing additional equipment and products, including an ion implantation equipment tool and advanced solar cell metallization and interconnect technology. As of the Petition Date, the GTAT Group employs approximately 1,100 full-time employees in the United States and abroad, approximately 1,000 of whom work for the Debtors. The stock of GT is publicly traded under the symbol "GTAT".

7. As of June 28, 2014, the GTAT Group's unaudited and consolidated financial statements reflected assets totaling approximately $1.5 billion and liabilities totaling approximately $1.3 billion.

## RELIEF REQUESTED

8. By this Motion, GTAT requests the entry of an order authorizing and approving GTAT's rejection of certain executory contracts and unexpired leases with or for the benefit of Apple listed on Schedule 1 to the proposed order attached hereto as Exhibit A, including any amendments or modifications thereto, effective *nunc pro tunc* to the Petition Date.[2]

## BASIS FOR RELIEF REQUESTED

9. Before the Petition Date, on October 31, 2013, GTAT entered into several agreements with or for the benefit of Apple. The agreements shifted the GTAT Group's sapphire-related business model from being primarily an equipment manufacturer/supplier to also being a sapphire materials manufacturer. As discussed in detail in the Supplemental First Day Declaration, the agreements imposed oppressive and burdensome terms and obligations on GTAT. The contracts and leases listed on Schedule 1 to the attached proposed order (each an

---

[2] On the Petition Date, GTAT and Apple agreed that this Motion (a draft of which had previously been provided to Apple) would be deemed filed as of the Petition Date.

3

"Agreement" and, collectively, the "Agreements")[3] provide no benefit to GTAT's estates, and GTAT's continued performance under the Agreements is no longer a viable business option. Accordingly, in the exercise of GTAT's sound business judgment, GTAT believes that the rejection of the Agreements, *nunc pro tunc* to the Petition Date is in the best interests of GTAT, its estates, and its creditors.

### Agreements To Be Rejected

10. The Agreements govern the business relationship between Apple and GTAT. For the reasons set forth in greater detail in the Supplemental First Day Declaration, GTAT has determined in its business judgment that the costs of continuing to perform under the Agreements constitute an unnecessary drain on GTAT's resources and seeks to reject the Agreements under section 365(a) of the Bankruptcy Code.

### Rejection of the Agreements Reflects GTAT's Sound Business Judgment

11. Section 365(a) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."[4] Courts have interpreted section 365 as allowing "a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed."[5]

---

[3] To the extent the Court determines that any of the Agreements are not subject to rejection under section 365(a) of the Bankruptcy Code, this Motion shall be deemed not to apply to such Agreements, and the Debtors' and Apple's rights with respect thereto shall be fully preserved.

[4] *See Univ. Med. Ctr. v. Sullivan (In re University Med. Ctr.)*, 973 F.2d 1065, 1075 (3d Cir. 1992).

[5] *In re Rickel Home Centers, Inc.*, 209 F.3d 291, 298 (3d Cir. 2000) (quoting *Stewart Title Guar. Co. v. Old Republic Nat'l Title Co.*, 83 F.3d 735, 741 (5th Cir. 1996)).

12. The decision to assume or reject an executory contract or unexpired lease is a matter within the "business judgment" of the debtor.[6] Rejection of an executory contract or an unexpired lease is appropriate where such rejection would benefit the estate.[7] The business judgment standard mandates that a court approve a debtor's business decision, unless the decision "is the product of bad faith, or whim, or caprice."[8] Upon finding that a debtor has exercised its sound business judgment in determining that rejection of certain contracts or leases is in the best interests of its creditors and all parties in interest, a court should approve the rejection under section 365(a) of the Bankruptcy Code.[9]

13. GTAT believes that rejection of the Agreements effective as of the date hereof is well within GTAT's business judgment, in furtherance of their efforts to preserve and maximize

---

[6] *See, e.g., In re Malden Brooks Farm LLC*, 435 B.R. 81, 83 (Bankr. D. Mass. 2010) ("In this circuit the test governing motions to assume or reject . . . is the business judgment rule. . . . The rule accords a debtor's decision to assume or reject an executory contract or unexpired lease the defense mandated by the sound business judgment rule as generally applied by courts to discretionary actions or decisions of corporate directors." (citations omitted)); *In re Taylor*, 913 F.2d 102, 107 (3d Cir. 1990); *Nat'l Labor Relations Bd. v. Bildisco & Bildisco (In re Bildisco)*, 682 F.2d 72, 79 (3d Cir. 1982) ("The usual test for rejection of an executory contract is simply whether rejection would benefit the estate, the 'business judgment' test."); *see also In re Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003).

[7] *See In re Trans World Airlines*, 261 B.R. 103, 121 (Bankr. D. Del. 2003) ("A debtor's decision to reject an executory contract must be summarily affirmed unless it is the product of 'bad faith, or whim or caprice.'") (quoting *In re Wheeling-Pittsburgh Steel Corp.*, 72 B.R. 845, 849-50 (Bankr. W.D. Pa. 1987); *see also Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098-99 (2d Cir. 1993).

[8] *Moran v. City of Central Falls*, 475 B.R. 323, 333 (D.R.I. 2012) ("Once the debtor or trustee has established that the rejection benefits the estate, the non debtor party bears the burden of proving that the debtor's decision derives from bad faith, whim or caprice." (citations omitted)); *In re Trans World Airlines, Inc.*, 261 B.R. 103, 121 (Bankr. D. Del. 2001) (internal citations omitted); *see also Summit Land Co. v. Allen (In re Summit Land Co.)*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) ("In any event, court approval under Section 365(a), if required, except in extraordinary situations, should be granted as a matter of course.").

[9] *In re Federal Mogul Global, Inc.*, 293 B.R. 124, 126 (D. Del. 2003); *In re Bradlees Stores, Inc.*, 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996), *appeal dismissed*, 210 B.R. 506 (S.D.N.Y. 1997); *In re Summit Land Co.*, 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course").

estate value, and in the best interests of their estates and creditors. GTAT has determined that the Agreements are no longer necessary for GTAT's business operations. The Agreements also are not a source of potential value for GTAT's future operations, creditors, or interest holders and constitute an unnecessary drain on GTAT's resources. GTAT believes that any continued expense in maintaining the Agreements and attempting to market the Agreements would likely outweigh, if not eclipse, any benefit in attempting to identify a potential acquirer of the Agreements, and these continuing expenses would unnecessarily deplete assets of GTAT's estates to the detriment of its creditors. Accordingly, the decision to reject the Agreements is a proper exercise of GTAT's business judgment, and rejection of the Agreements should therefore be approved pursuant to section 365(a) of the Bankruptcy Code.

### *Nunc Pro Tunc* Rejection Is Appropriate

14. GTAT also respectfully requests that the Court authorize the rejection of the Agreements, *nunc pro tunc* to the Petition Date. While section 365 of the Bankruptcy Code does not specifically address whether the Court may order rejection to be effective retroactively, many courts have held that bankruptcy courts may authorize rejection retroactive to a date prior to entry of the order authorizing rejection.[10] Indeed, the First Circuit has ruled "that a bankruptcy court, when principles of equity so dictate, may approve a rejection of a nonresidential lease

---

[10] *See In re Thinking Machines Corp.*, 67 F.3d 1021, 1028-29 (1st Cir. 1995) ("[R]ejection under § 365(a) does not take effect until judicial approval is secured, but the approving court has the equitable power, in suitable cases, to order a rejection to operate retroactively."); *Republic Underwriters Ins. Co. v. DBSI Republic, LLC (In re DBSI, Inc.)*, 409 B.R. 720, 734 (Bankr. D. Del. 2009) (providing that bankruptcy court may enter lease rejection order with an effective date earlier than the date the order is entered); *In re Chi-Chi's, Inc.*, 305 B.R. 396, 399 (Bankr. D. Del. 2004) (acknowledging that bankruptcy court may approve a rejection retroactive to the date the motion is filed after balancing equities in a particular case); *see also In re Phila. Newspapers, LLC*, 424 B.R. 178, 185 (Bankr. E.D. Pa. 2010) (permitting rejection of executory contract retroactive to motion filing date and finding "the decision to grant retroactive rejection of a lease or contract is dictated by equitable considerations"); *BP Energy Co. v. Bethlehem Steel Corp.*, Case No. 02-civ-6419, 2002 WL 31548723, at *2-3 (S.D.N.Y. Nov. 15, 2002) ("We cannot conclude . . . that a bankruptcy court's assignment of a retroactive rejection date falls outside of its authority when the balance of the equities favors this solution.").

6

pursuant to section 365(a) retroactive to the motion filing date."[11] Further, section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

15. Here, the balance of equities favors authorizing GTAT to reject the Agreements *nunc pro tunc* to the Petition Date. Any postponement of the effective date of rejection of the Agreements could cause GTAT to incur unnecessary administrative expenses under the Agreements without providing any accompanying tangible benefits to GTAT's estates. The relief requested herein has been granted in other large and complex chapter 11 cases, and GTAT submits that similar relief is warranted in these chapter 11 cases. *See, e.g., In re Eastman Kodak Co.*, Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. Feb. 15, 2012) (authorizing rejection of executory contracts *nunc pro tunc* to notice date); *In re AMR Corp.*, Case No. 11-15463 (Bankr. S.D.N.Y. Dec. 22, 2011) (authorizing retroactive rejection of unexpired leases); *In re Archbrook Laguna Holdings LLC*, Case No. 11-13292 (SCC) (Bankr. S.D.N.Y. Sept. 7, 2011) (authorizing rejection of contract *nunc pro tunc* to prior notice date); *In re TerreStar Networks Inc.*, Case No. 10-15446 (SHL) (Bankr. S.D.N.Y. Mar. 23, 2011) (authorizing rejection of executory contracts *nunc pro tunc* to prior notice date); *see also, e.g., In re Energy Future Holdings Corp*, Case No. 14-10979 (CSS) (Bankr. D. Del. Jun. 30, 2014) (authorizing rejection of leases *nunc pro tunc*); *In re Furniture Brands International, Inc.*, Case No. 13-12329 (CSS) (Bankr. D. Del. Oct. 2, 2013) (authorizing rejection of leases, subleases, and ancillary agreements effective *nunc pro tunc* to petition date); *In re Friendly Ice Cream Corp.*, Case No. 11-13167 (KG) (Bankr. D. Del. Oct. 24, 2011) (authorizing rejection of leases *nunc pro tunc* to date debtors vacated premises); *In re Harry & David Holdings, Inc.*, Case No. 11-10884 (MFW) (Bankr. D. Del. Apr. 27, 2011)

---

[11] *Thinking Machines*, 67 F.3d at 1028.

(authorizing rejection of "dark store" leases *nunc pro tunc* to petition date); *In re CB Holding Corp.*, Case No. 10-13683 (MFW) (Bankr. D. Del. Dec. 13, 2010) (entering omnibus order authorizing rejection of certain unexpired leases for closed restaurants *nunc pro tunc* to petition date); *In re Visteon Corp.*, Case No. 09-11786 (CSS) (Bankr. D. Del. June 23, 2009) (authorizing rejection of leases *nunc pro tunc* to petition date); *In re Sun-Times Media Grp., Inc.*, Case No. 09-11092 (CSS) (Bankr. D. Del. Apr. 28, 2009) (same); *In re Buffets Holdings, Inc.*, Case No. 08-10141 (MFW) (Bankr. D. Del. Feb. 13, 2008) (authorizing rejection of leases *nunc pro tunc* to petition date).[12]

## RESERVATION OF RIGHTS

16. GTAT believes that it has many claims against Apple arising out of its business relationship with Apple. A number of these claims would allow GTAT to avoid the Agreements or allow GTAT to terminate the Agreements. These claims, however, cannot be tried by the Court at the outset of these chapter 11 cases. To protect GTAT and its estates, it is imperative that the order approving the relief requested in the Motion preserve GTAT's claims. Therefore, out of an abundance of caution and in an effort to protect GTAT and its estate assets, GTAT seeks authority and approval to reject the Agreements *nunc pro tunc* to the Petition Date, without prejudice to its ability to assert further claims against Apple, which would establish that GTAT could have avoided or terminated the Agreements.

17. Nothing contained herein is intended or should be construed as an admission of the validity of any claim against GTAT, a waiver of GTAT's rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy

---

[12] Because of the voluminous nature of the unreported orders cited herein, they are not annexed to the Motion. Copies of these orders are available upon request of GTAT's proposed undersigned counsel.

Code. GTAT expressly reserves its rights to contest any claim related to the relief requested herein in accordance with applicable law.

## NOTICE

18. Notice of this Motion has been provided by email, facsimile or overnight courier to: (a) the Office of the United States Trustee for Region 1, 1000 Elm Street, Suite 605 Manchester, NH 03101, Attn: Geraldine L. Karonis; (b) the creditors holding the 30 largest unsecured claims against GTAT's estates (on a consolidated basis); (c) the indenture trustee for the Debtors' (i) 3.00% Convertible Senior Notes due 2017, and (ii) 3.00% Convertible Senior Notes due 2020, U.S. Bank National Association, 60 Livingston Avenue, St. Paul, MN 55107, Attn: Hazrat R. Haniff; (d) the Internal Revenue Service, 1000 Elm St., 9th Floor Manchester, NH 03101, Attn: District and Regional Directors; (e) U.S. Securities and Exchange Commission, 100 F Street, NE, Washington, DC 20549; (f) Apple Inc., 1 Infinite Loop, Cupertino, CA 95014, Attn: Jessica L. Fink, Senior Restructuring Counsel; and (g) those parties who have formally filed requests for notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

## NO PRIOR REQUEST

19. No previous request for the relief sought herein has been made to the Court or any other court.

## WAIVER OF MEMORANDUM OF LAW

20. GTAT requests that the Court waive and dispense with the requirement set forth in Rule 7102(b)(2) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of New Hampshire ("LBR") that any motion filed shall have an accompanying memorandum of law. The legal authorities upon which GTAT relies are set forth in the Motion. Accordingly, GTAT submits that a waiver of the LBR 7102(b)(2) requirement is appropriate under these circumstances.

**WHEREFORE**, GTAT respectfully requests that the Court enter an order, substantially in the form attached hereto, granting the relief requested herein and granting GTAT such other and further relief as is just and proper.

Dated: October 10, 2014
Manchester, NH

/s/ Daniel W. Sklar
Daniel W. Sklar, Esq.
Holly J. Barcroft, Esq.
NIXON PEABODY LLP
900 Elm Street
Manchester, NH 03101-2031
Telephone: (603) 628-4000
Facsimile: (603) 628-4040

- and -

Luc A. Despins, Esq.
Andrew V. Tenzer, Esq.
James T. Grogan, Esq.
PAUL HASTINGS LLP
Park Avenue Tower
75 East 55th Street, First Floor
New York, New York 10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090

*Proposed Co-Counsel to the Debtors and Debtors in Possession*