UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re:<br><br>GT Advanced Technologies, Inc., et al,<br><br>Debtors[1] | Chapter 11<br><br>Case No. 14-11916-HJB<br>Jointly Administered<br><br>**Hearing: 10/21/14 at 10:00 a.m.** |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' EMERGENCY *EX PARTE* MOTION, PURSUANT TO BANKRUPTCY CODE SECTIONS 363(b), 503(b)(9), and 105(a) AND BANKRUPTCY RULES 6003 AND 6004, FOR ENTRY OF INTERIM AND FINAL ORDER AUTHORIZING (A) DEBTORS TO PAY THE PREPETITION CLAIMS OF CERTAIN CRITICAL DOMESTIC AND FOREIGN VENDORS, AND (B) FINANCIAL INSTITUTIONS TO HONOR AND PROCESS PREPETITION CHECKS AND TRANSFERS TO CERTAIN CRITICAL VENDORS [COURT DOCKET NO. 6]**

To the Honorable Henry J. Boroff, United States Bankruptcy Judge:

Pursuant to 28 U.S.C. § 586, 11 U.S.C. §§ 105(a), 363(b), and 503(b)(9), and Federal Rules of Bankruptcy Procedure ("**Bankruptcy Rules**") 6003 and 6004, William K. Harrington, the United States Trustee for Region 1 ("**United States Trustee**"), submits this objection to the *Debtors' Emergency Ex Parte Motion, Pursuant to Bankruptcy Code Sections 363(B), 503(B)(9), and 105(A) and Bankruptcy Rules 6003 and 6004, for Entry of Interim and Final Order Authorizing (A) Debtors to Pay the Prepetition Claims of Certain Critical Domestic and Foreign Vendors, and (B) Financial Institutions to Honor and Process Prepetition Checks and Transfers to Certain Critical Vendors* ("**Motion to Pay Critical Vendors**") as follows:

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's tax identification number, as applicable, are: GT Advanced Technologies Inc. (6749), GTAT Corporation (1760), GT Advanced Equipment Holding LLC (8329), GT Equipment Holdings, Inc. (0040), Lindbergh Acquisition Corp. (5073), GT Sapphire Systems Holding LLC (4417), GT Advanced Cz LLC (9815), GT Sapphire Systems Group LLC (5126), and GT Advanced Technologies Limited (1721).

## I. PRELIMINARY STATEMENT

1. Through the present Motion, the Debtors seek authority to pay "in [their] sole discretion" (Motion, p. 1) up to $25 million in prepetition claims held by certain domestic and foreign vendors, whom the Debtors have failed or refused to publicly identify. Nowhere in the Debtors' Motion or the declaration filed in support of the Motion do the Debtors identify the critical vendors they propose to pay, what goods or services were provided prepetition, or what specific circumstances justify the payment of the claims to unnamed critical vendors outside the payment priority established by the Bankruptcy Code. This lack of evidence precludes the Court from approving the proposed payments under the doctrine of necessity or 11 U.S.C. § 503(b)(9) and also prevents the Court from finding the immediate and irreparable harm required under Rule 6003(b) in order to permit the Court to enter an order for the payment of prepetition claims within 21 days of the Petition Date.

2. While the Debtors have styled their motion as a motion to pay critical vendors, at heart the Debtors seek the creation of a pool of funds to be used at will, free from oversight by the Court and other parties in interest. By keeping the "list" of intended critical vendors secret, the Debtors attempt to create leverage over a broad range of creditors, using the prospect of payment as a carrot and the lack of public information regarding proposed payment amounts as a stick to negotiate more favorable terms. The requested fund of $25 million is large enough in comparison to total trade debt to entice creditor compliance, but limited enough to enable the Debtors to negotiate discounts with vendors. The Debtors' attempt to mislead their creditors through the present Motion is an affront to the inherent fairness of the bankruptcy process and the equitable origins of the doctrine of necessity.

## II. PROCEDURAL STATUS

3. On October 6, 2014 ("**Petition Date**"), GT Advanced Technologies Inc., GTAT Corporation, GT Advanced Equipment Holding LLC, GT Equipment Holdings, Inc., Lindbergh Acquisition Corp., GT Sapphire Systems Holding LLC, GT Advanced Cz LLC, GT Sapphire Systems Group LLC, and GT Advanced Technologies Limited (collectively, "**Debtors**") filed skeletal voluntary chapter 11 petitions with the Court. The Debtors' cases have not been substantively consolidated, but are being jointly administered by the Court. *See* Court Order dated October 7, 2014; Docket No. 47.

4. No bankruptcy schedules have yet been filed. Upon the Debtors' motion, the Court extended the deadline by which the Debtors must submit schedules and other required documents to November 20, 2014. *See* Court Docket No. 78.

5. The Debtors filed numerous first day pleadings ("**First Day Motions**") on the Petition Date, including the Motion to Pay Critical Vendors. *See* Court Docket No. 6.

6. In support of the First Day Motions, the Debtors filed the Declaration of Daniel W. Squiller in Support of Chapter 11 Petitions and First-Day Motions ("**Squiller Declaration**"). *See* Court Docket No. 14.

7. The Squiller Declaration indicated that as of the filing, the Debtors had $85 million in cash, approximately $84 million of which is unencumbered. Squiller Declaration, p. 3, ¶7. The Squiller Declaration does not specify the critical vendors the Debtors propose to pay, what goods or services were provided in the 20 days prior to the Petition Date, or what specific circumstances justify the payment of the claims outside the payment priority established by the Bankruptcy Code. The Declaration devotes just two paragraphs to the discussion of "Manufacturing and Suppliers," as follows:

3

19. The GTAT Group's manufacturing focuses on assembly operations and the production of limited proprietary components. Nearly all of the components of the GTAT Group's polysilicon products are shipped directly from qualified vendors to the customer installation site. As noted above, the majority of components for DSS furnaces and ASF systems are shipped to the GTAT Group's warehouse for ultimate shipment to the customer.

20. The GTAT Group purchases a range of materials and components for use in its equipment products from other manufacturers. Many component parts purchased by the GTAT Group are made to specification and under confidentiality arrangements. Purchased components represented approximately 85% of the costs of goods sold in the fiscal year ended December 31, 2013. **The GTAT Group secured multiple suppliers of component parts to reduce concentration risk and ensure adequate supply, but, in some cases, components and parts are obtained from a single vendor. In addition, the GTAT Group does not use any single supplier to produce all of the components for any single product in order to reduce the risk that a supplier could replicate the GTAT Group's products**. The GTAT Group has well-established relationships with various domestic and foreign suppliers of the components used in equipment products and the GTAT Group is generally required to make a series of **pre-payments to these vendors**, which is funded from working capital.

*Id.*, pp. 6-7 at ¶¶ 19- 20 (emphasis added).

8. A hearing on the Debtors' First Day Motions was scheduled for October 9, 2014.

9. At the First Day Motion hearing, the Court entered an order granting the Debtor interim relief under the Motion to Pay Critical Vendors. *See* Court Docket No. 84 ("**Interim Critical Vendor Order**"). The Interim Critical Vendor Order authorized the Debtor to pay claims in an amount not to exceed $10 million and required parties in interest to rely on the representations of the Debtors as to which payments are authorized by the Interim Critical Vendor Order. *Id.* at ¶¶ 2, 7.

10. The Court scheduled a final hearing to consider entry of an order granting the relief requested in the Motion to Pay Critical Vendors on a final basis on October 21, 2014.

11. On October 10, 2014, the Debtors filed an Emergency Motion to Wind Down Operations at Sapphire Manufacturing Facilities in Mesa, Arizona and Salem, Massachusetts,

4

indicating that as many as 890 employees would lose their jobs.[2]  *See* Court Docket No. 97. That motion was initially scheduled for hearing on October 15, 2014, but was continued by request of the Debtors to October 21, 2014.

12. On October 14, 2014, the United States Trustee appointed a seven (7) member Official Committee of Unsecured Creditors.  *See* Court Docket No. 127.  The Committee has just retained counsel.

13. Upon information and belief and based on discussions with the Debtors, as of October 14, 2014, the Debtors had not made payments to any creditors under the Interim Critical Vendor Order.  The Debtors also represented that, as of that date, they had no "list" specifically identifying critical vendor payees.

### III.  APPLICABLE LEGAL STANDARDS

A. **Bankruptcy Rule 6003**.

14. Bankruptcy Rule 6003 prohibits the entry of an order granting a motion for the payment of pre-petition creditors within 21 days of the filing of a bankruptcy case, absent a finding of immediate and irreparable harm:

> Except to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, issue an order granting the following:…
> (b) a motion to use, sell, lease or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition….

Fed. R. Bankr. Proc. 6003(b).

B. **Section 503(b)(9).**

15. Section 503(b)(9) grants a creditor an administrative expense claim for

---

[2] As of the date of the filing, the Debtors had 1100 full time employees in the United States and abroad.  *See* Court Dockets No. 6 at ¶ 6; No. 14 at ¶23.

the value of goods received within 20 days of the bankruptcy filing:

> (b) After notice and a hearing, there shall be allowed administrative expenses ... including—....
> (9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

11 U.S.C. § 503(b)(9).

16.     The movant bears the burden of establishing that a claim qualifies for administrative priority status. *In re NE Opco, Inc.*, 501 B.R. 233, 241 (Bankr. D. Del. 2013). *See also In re Momenta, Inc.*, 455 B.R. 353, 357–59 (Bankr. D. N.H. 2011), *aff'd Ningbo Chenglu Paper Products Mfg. Co., Ltd. v. Momenta, Inc*., 2012 WL 3765171 (D. N.H. 2012)(movant must demonstrate that debtor had actual or constructive possession of goods within 20 days of bankruptcy filing.).

C.    **The Doctrine of Necessity.**

17.     No provision of the Bankruptcy Code expressly authorizes the payment of pre-petition debts before the confirmation of a chapter 11 plan of reorganization, nor does the Bankruptcy Code define "critical vendor." *In re Jeans.com, Inc.*, 502 B.R. 250, 252 (Bankr. D. P.R. 2013).  The "judge-made rule that courts rely upon to justify permitting a debtor in possession in a Chapter 11 case, prior to the confirmation of a plan of reorganization, to pay certain creditors the full amount of their pre-bankruptcy [petition] unsecured claims" is referred to by courts as the "doctrine of necessity." *Id.* at 252-253 (citation omitted).

18.     Bankruptcy Courts that have allowed the payment of claims under the doctrine of necessity "have recognized that it should only be invoked 'under extraordinary circumstances' and … is 'a device to be used only in rare cases.'" *In re Zenus is Jewelry, Inc.*, 378 B.R. 432, 433 -434 (Bankr. D. N.H. 2007)(citing *In re CoServ, L.L.C.*, 273 B.R. 487, 491 (Bankr. N.D. Tex. 2002)).  The doctrine is "reserved for those vendors and other creditors who are critical to

6

the survival of the debtor because of the goods or services they provide." *In re Jeans.com, Inc.*, 502 B.R. at 252-253 (citations omitted).

19. There is no controlling First Circuit precedent articulating the standards governing the payment of critical vendor claims or even recognizing the doctrine of necessity outside the context of railroad reorganizations. *See In re Jeans.com, Inc.*, 520 B.R. at 256-257; and *In re Zenus Is Jewelry, Inc.*, 378 B.R. at 433. Bankruptcy courts applying the doctrine of necessity, however, have required debtors to satisfy multi-pronged tests establishing the extraordinary circumstances justifying the payment of prepetition claims. *See, e.g., In re Kmart Corp.*, 359 F.3d 866, 873 (7th Cir. 2004)(debtor must demonstrate that: (1) vendors would have ceased doing business with debtor if outstanding debts were not paid; (2) disfavored creditors would be better off, or at least not worse off, as a result of preference); *In re CoServ, L.L.C.*, 273 B.R. at 498 (debtor must show: (1) that it is critical that debtor deal with claimant; (2) that unless it deals with claimant, debtor risks probability of harm, or, alternatively, loss of economic advantage to estate or debtor's going concern value, disproportionate to amount of prepetition claim; (3) there is no practical or legal alternative by which debtor can deal with claimant other than by payment of claim); and *In re Jeans.com, Inc.*, 502 B.R. at 258-259 (debtor must show by evidentiary record (1) that payments are necessary to debtor's reorganization; (2) that sound business justification exists for these payments in that vendors will refuse to continue to do business with debtor unless they are afforded "critical vendor" status; and (3) that disfavored creditors are at least as well off as they would have been had "critical vendor" order not been entered).

20. The Debtors bear the burden of proving by a preponderance of the evidence that the elements of the doctrine have been met. *In re CoServ, L.L.C.*, 273 B.R. at 498.

## IV.  ARGUMENT

**A.  The Debtors Have Failed to Satisfy Their Burden of Demonstrating That the Elements of the Doctrine of Necessity Have Been Met, That Administrative Priority Payments Are Appropriate under 11 U.S.C. § 503(b)(9) or That the Proposed Payments Are Necessary to Avoid Immediate and Irreparable Harm under Rule 6003(b).**

21.  The Debtors' refusal to disclose the identities of the intended critical vendors or to specify what goods were provided by them in the 20 days preceding the Petition Date precludes the Court from making the findings required to permit the payment of prepetition claims under the doctrine of necessity, 11 U.S.C. § 503(b)(9) or Bankruptcy Rule 6003(b).  What limited information the Debtors provide on the record fails to establish the extraordinary circumstances required to justify the payment of prepetition claims outside the priority established by the Bankruptcy Code.

22.  While there is no controlling First Circuit precedent articulating the standards governing the payment of critical vendor claims or even recognizing the doctrine of necessity outside the context of railroad reorganizations[3], the Debtors have failed to produce sufficient record evidence to satisfy the showings required under the existing case law from any jurisdiction.  *See, e.g., In re Kmart Corp.*, 359 F.3d at 873; *In re CoServ, L.L.C.*, 273 B.R. at 498; *In re Jeans.com, Inc.*, 502 B.R. at 258-259.  The Debtors cite 11 U.S.C. § 503(b)(9) as alternative statutory authority for the relief requested, but the record is equally devoid of the evidence required to establish administrative priority claims under that Code provision.

23.  Rather than justifying the extraordinary relief requested through the present Motion, the Squiller Declaration contradicts the Debtors' assertions that the immediate payment of prepetition claims is necessary to the Debtors' survival.  The Declaration indicates that the

---

[3] *See In re Jeans.com, Inc.*, 520 B.R. at 256-257; and *In re Zenus Is Jewelry, Inc.*, 378 B.R. at 433.

8

Debtors have few true sole source providers and that vendors have generally required pre-payment rather than extending credit terms to the Debtors.  The Declaration suggests that, while "in some cases, components and parts are obtained from a single vendor," as a general rule, "[the Debtors] secured multiple suppliers of component parts to reduce concentration risk and ensure adequate supply…In addition, [the Debtors do] not use any single supplier to produce all of the components for any single product in order to reduce the risk that a supplier could replicate the [Debtors'] products."  Court Docket No. 14, Squiller Declaration, pp. 6-7 at ¶ 20.  The Debtors state that they have "well-established relationships with various domestic and foreign suppliers of the components used in equipment products" and that they are "generally required to make a series of pre-payments to these vendors, which is funded from working capital."  *Id.*

24. The critical nature of the proposed payments is further belied by the fact that, as of the date of the creditor committee formation meeting on October 14, 2014, the Debtors had not made any payments under the Interim Critical Vendor Order.  The Debtors also represented that, as of that date, they had no "list" specifically identifying critical vendor payees.   Moreover, the Debtors' stated intention to wind down their sapphire manufacturing facilities with the loss of as much as 80% of their employees calls into question whether the payment of $25 million to unnamed vendors is truly critical.

25. While the Debtors have styled their motion as a motion to pay critical vendors, at heart the Debtors seek the creation of a pool of funds to be used at will, free from oversight by the Court and other parties in interest.  By keeping the identity of the purported critical vendors secret, the Debtors attempt to create leverage over a broad range of creditors, using the prospect of payment as a carrot and the lack of public information regarding proposed payment amounts as a stick to negotiate more favorable terms.  The requested fund of $25 million is large enough

9

in comparison to total trade debt to entice creditor compliance, but limited enough to enable the Debtors to negotiate discounts with vendors. The Debtors' attempt to mislead their creditors through the present Motion is an affront to the inherent fairness of the bankruptcy process and the equitable origins of the doctrine of necessity.

26. Because the Debtors have failed to establish the facts and circumstances required to justify the payment of prepetition claims outside the priority established by the Bankruptcy Code or to demonstrate the irreparable harm required by Bankruptcy Rule 6003(b), the Motion to Pay Critical Vendors must be denied.

WHEREFORE, the United States Trustee respectfully requests that the Court deny the *Debtors' Emergency Ex Parte Motion, Pursuant to Bankruptcy Code Sections 363(B), 503(B)(9), and 105(A) and Bankruptcy Rules 6003 and 6004, for Entry of Interim and Final Order Authorizing (A) Debtors to Pay the Prepetition Claims of Certain Critical Domestic and Foreign Vendors, and (B) Financial Institutions to Honor and Process Prepetition Checks and Transfers to Certain Critical Vendors*, and grant such further relief as may be just.

        Respectfully submitted,

        WILLIAM K. HARRINGTON,
        UNITED STATES TRUSTEE

By:   /s/ Geraldine Karonis
       Geraldine Karonis BNH #01853
       Assistant United States Trustee
       Ann Marie Dirsa BNH# 06121
       Trial Attorney
       Office of the United States Trustee
       1000 Elm Street, Suite 605
       Manchester, NH 03101
       (603) 666-7908

Dated: October 19, 2014

## CERTIFICATE OF SERVICE

I hereby certify that on this date a copy of the foregoing was forwarded to all parties on the attached list via CM/ECF unless as otherwise indicated:

Christopher J. Allwarden on behalf of Creditor Public Service Company of New Hampshire
nhlegal@nu.com

Holly Barcroft on behalf of Debtors
hbarcroft@nixonpeabody.com,
dsklar@nixonpeabody.com;man.managing.clerk@nixonpeabody.com;cbuonopane@nixonpeabody.com;bcollier@nixonpeabody.com;cgrijalva@nixonpeabody.com;ccarlin@nixonpeabody.com

James S. Carr on behalf of Creditor Committee Official Committee of Unsecured Creditors
jcarr@kelleydrye.com, KDWbankruptcydepartment@kelleydrye.com

Christopher M. Candon on behalf of Creditor Airgas USA, LLC
ccandon@sheehan.com, ntoli@sheehan.com

Edmond J. Ford on behalf of Creditor Midland Precision Machining, Inc.
eford@fordlaw.com

William S. Gannon on behalf of Creditor Turner Tooling Co., Inc.
bgannon@gannonlawfirm.com,
jarquette@gannonlawfirm.com;mjoyce@gannonlawfirm.com;bvenuti@gannonlawfirm.com

Steven E. Grill on behalf of Creditor PC Connection Sales Corp. and on behalf of Creditor Committee Official Committee of Unsecured Creditors
sgrill@devinemillimet.com, dmutz@devinemillimet.com

Honor S. Heath on behalf of Creditor Public Service Company of New Hampshire
heathhs@nu.com

Camden B. Hillas on behalf of Creditor Apple, Inc.
chillas@preti.com, kpatten@preti.com

Matthew R. Johnson on behalf of Creditor Committee Official Committee of Unsecured Creditors
mjohnson@devinemillimet.com, dprovencher@devinemillimet.com

Colin P. Maher on behalf of Creditor Committee Official Committee of Unsecured Creditors
cmaher@devinemillimet.com

Gregory A. Moffett on behalf of Creditor Apple, Inc.
gmoffett@preti.com, sbarrington@preti.com

Jennifer Rood on behalf of Creditor Sumitomo (SHI) Cryogenics of America Inc and Creditor Sumitomo Cryogenics of America, Inc.
jrood@bernsteinshur.com, mamurphy@bernsteinshur.com

Peter C.L. Roth on behalf of Interested Party State of New Hampshire
peter.roth@doj.nh.gov, laura.maynard@doj.nh.gov

Daniel W. Sklar on behalf of Debtors
dsklar@nixonpeabody.com,
hkilibarda@nixonpeabody.com;cbuonopane@nixonpeabody.com;man.managing.clerk@nixonpeabody.com;ccarlin@nixonpeabody.com

John M. Sullivan on behalf of Creditor Apple, Inc.
nhbankruptcyfilings@preti.com

Peter N. Tamposi on behalf of Creditor Green Leaf Construction, LLC
peter@thetamposilawgroup.com, kdesisto@thetamposilawgroup.com

Lisa Snow Wade on behalf of Interested Party Dow Jones & Company, Inc.
lwade@orr-reno.com, bankruptcy@orr-reno.com;jlawrie@orr-reno.com;GVanBeaver@orr-reno.com

                                              /s/ Geraldine Karonis
                                              Geraldine Karonis

Dated: October 19, 2014