TAB 13

APPLE CONFIDENTIAL
#C56-13-03450

## SECURED GUARANTY

This **SECURED GUARANTY #C56-13-03450**, dated as of October 31, 2013 (this "**Guaranty**"), is made by **GT ADVANCED EQUIPMENT HOLDING LLC**, a Delaware limited liability company (the "**Guarantor**"), with offices at 243 Daniel Webster Highway, Merrimack, New Hampshire, for the benefit of **GTAT CORPORATION**, a Delaware corporation ("**Debtor**"), having its principal place of business at 243 Daniel Webster Highway, Merrimack, NH 03054, and in favor of **APPLE INC.**, a California corporation (Apple Inc., each affiliate of Apple Inc. as well as the successors and assigns of Apple Inc. and of each such affiliate, are hereinafter collectively referred to as "**Apple**").

### RECITALS:

**A.**    Debtor and Apple have entered into (i) that certain Master Development and Supply Agreement, #C56-13-02947, effective October 31, 2013 (as may be amended, modified and supplemented from time to time, the "**MDSA**"), (ii) that certain Statement of Work to MDSA, dated as of October 31, 2013 (as may be amended, modified and supplemented from time to time, the "**SOW**"), and (iii) that certain Prepayment Agreement, dated as of the date hereof (as may be amended, modified and supplemented from time to time, the "**Prepayment Agreement**"; and together with the MDSA and the SOW, the "**Agreements**").

**B.**    Guarantor acknowledges that because of its affiliation with Debtor, the aforementioned transactions will bestow benefits upon it, including but not limited to the ability to borrow US$578,000,000 from Debtor under that certain Loan Agreement dated as of October 31, 2013. Guarantor further acknowledges that Apple is unwilling to enter into any Agreement or transaction with Debtor unless the Guarantor agrees to guarantee to Apple the full payment and performance of each and all of the obligations that arise out of them.

For good and valuable consideration the receipt of which is acknowledged, the Guarantor agrees, for the benefit of Apple, as follows:

1.    Definitions.

1.1    U.C.C. Definitions.    Unless otherwise defined in this Guaranty or the context otherwise requires, terms for which meanings are provided in the Uniform Commercial Code as in effect in the State of California are used in this Guaranty, including its preamble and recitals, with such meanings.

2.    Guaranty Provisions.

2.1    Guaranteed Obligations.    The Guarantor hereby absolutely, unconditionally and irrevocably guarantees:

(a)    full and prompt payment when due (whether at the stated maturity, by acceleration or otherwise) of all obligations (including obligations which, but for the automatic stay under Section 362(a) of the Bankruptcy Code, would become due), and liabilities of Debtor, now existing or hereafter incurred under or arising out of or in connection with any Agreement and the due performance and compliance by Debtor with the terms of the Agreements;

1

APPLE CONFIDENTIAL
#C56-13-03450

(b)     full and prompt payment when due (whether at the stated maturity, by acceleration or otherwise) of all obligations (including obligations which, but for the automatic stay under Section 362(a) of the Bankruptcy Code, would become due) and liabilities of Debtor, now existing or hereafter incurred under or arising out of or in connection with (i) any renewal or extension of any Agreement, or (ii) any invoice, assignment, purchase order, bill of sale or other instrument or document issued or delivered pursuant to or in connection with an Agreement or any renewal or extension thereof.

All such debts, obligations and liabilities set forth in clauses (a) to (c) of this Section 2.1 are collectively called the **"Guaranteed Obligations"**, it is acknowledged and agreed by Guarantor that the "Guaranteed Obligations" shall include all debts, obligations and liabilities whether outstanding on the date of this Guaranty or arising from time to time after the date hereof.

All obligations under this Guaranty are immediately due and payable by Guarantor upon the occurrence of a Trigger Event (as defined in the Prepayment Agreement) or termination of the SOW by Apple for Cause (as defined in the SOW).

2.2     <u>Guaranty of Payment and Performance</u>.  This Guaranty constitutes a guaranty of payment and performance when due and not of collection, and the Guarantor specifically agrees that it shall not be necessary or required that Apple exercise any right, assert any claim or demand or enforce any remedy whatsoever against Debtor or any other legal entity, any individual, any government or political subdivision or any agency, department or instrumentality thereof (each of the foregoing a **"Person"**) before or as a condition to the obligations of the Guarantor under this Guaranty.

2.3     <u>Guaranty Absolute, etc</u>.  This Guaranty is in all respects a continuing, absolute, unconditional and irrevocable guaranty of payment and performance, and remains in full force and effect until payment of the Prepayment Balance and expiration or termination of the MDSA and SOW and payment of any Guaranteed Obligations thereunder.  The Guarantor guarantees that the Guaranteed Obligations will be paid in accordance with the terms of the respective agreements out of which they arise, regardless of any law, regulation or order now or hereafter in effect in any jurisdiction affecting any of such terms or the rights of Apple with respect thereto.  The Guarantor waives any and all rights of subrogation, reimbursement, indemnification and contribution and any and all other rights and defenses that are or may become available to the Guarantor by reason of Sections 2787 to 2856, Section 2899 and Section 3433 of the California Civil Code.  The liability of the Guarantor under this Guaranty is absolute, unconditional and irrevocable irrespective of:

(a)     the failure of Apple:

(i)     to assert any claim or demand or to enforce any right or remedy against Debtor or any other Person (including any other guarantor) in respect of the Guaranteed Obligations or any agreement that gives rise to a Guaranteed Obligation, or

(ii)     to exercise any right or remedy against any other guarantor of, or collateral securing, any Guaranteed Obligation;

APPLE CONFIDENTIAL
#C56-13-03450

(b)     any change in the time, manner or place of payment of, or in any other term of, all or any of the Guaranteed Obligations, or any other extension, compromise or renewal of any Guaranteed Obligation;

(c)     any reduction, limitation, impairment or termination of the Guaranteed Obligations for any reason, including any claim of waiver, release, surrender, alteration or compromise, and shall not be subject to (and the Guarantor hereby waives any right to or claim of) any defense or setoff, counterclaim, recoupment or termination whatsoever by reason of the invalidity, illegality, nongenuineness, irregularity, compromise, unenforceability of, or any other event or occurrence affecting, the Guaranteed Obligations;

(d)     any amendment to, rescission, waiver or other modification of, or any consent to departure from, any of the Guaranteed Obligations or any agreement that gives rise to a Guaranteed Obligation;

(e)     any addition, exchange, release, surrender or nonperfection of any collateral, or any amendment to or waiver or release or addition of, or consent to departure from, any other guaranty held by Apple securing any of the Guaranteed Obligations;

(f)     any other circumstance which might otherwise constitute a defense available to, or a legal or equitable discharge of, Debtor, any surety or any guarantor;

(g)     any change regarding the finances or corporate structure or organization of any one or more of the Debtor or the Guarantor, including any restructuring or dissolution of Debtor.

2.4.    Reinstatement, etc.   The Guarantor agrees that this Guaranty continues to be effective or shall be reinstated, as the case may be, if at any time any payment (in whole or in part) of any of the Guaranteed Obligations is rescinded, avoided, or must otherwise be restored by Apple, upon the insolvency, bankruptcy or reorganization of the Guarantor or otherwise, as though such payment had not been made.

2.5     Rights and Remedies.  The Guarantor waives any and all rights under Section 2845 of the California Civil Code to require Apple to (a) proceed against Debtor; (b) proceed against or exhaust any security for the Guaranteed Obligations; or (c) pursue any other remedy in Apple's power whatsoever.  Apple may, at its election, exercise any right or remedy Apple may have against Debtor or any security now or hereafter held by or for the benefit of Apple including, without limitation, the right to foreclose upon any such security by judicial or nonjudicial sale, without affecting or impairing in any way the liability of the Guarantor hereunder except to the extent the Guaranteed Obligations may thereby be paid, even though any rights which the Guarantor may have or otherwise might obtain by subrogation against others might be diminished or destroyed.  The Guarantor acknowledges that any such exercise of a right or remedy with respect to any collateral security for the Guaranteed Obligations may result in a loss, in part or whole, of Apple's right to collect from Debtor any deficiency that may remain after any such exercise of such a right or remedy and that, where such a loss occurs, the Guarantor will also suffer a loss of any rights and remedies, arising in law or equity, which the Guarantor may have to collect any amount from Debtor; and the Guarantor agrees to remain bound notwithstanding any such loss.  Only the net proceeds from any such foreclosure, after

APPLE CONFIDENTIAL
#C56-13-03450

deduction of all costs and expenses authorized to be deducted pursuant to the documents under which such security is held or by law, shall be applied against the Guaranteed Obligations. Apple may, at its discretion, purchase all or any part of such security so sold or offered for sale for its own account and may apply against the amount bid therefor all or any part of the Guaranteed Obligations for which such security is held; and in such case, only that portion of the Guaranteed Obligations so applied, after deduction of all costs and expenses authorized to be deducted pursuant to the documents under which such security is held or by law, shall be applied against the Guaranteed Obligations. The Guarantor waives any defense arising out of the absence, impairment or loss of any right of reimbursement or subrogation or other right or remedy of the Guarantor against Debtor or any such security, whether resulting from the election by Apple to exercise any right or remedy Apple may have against Debtor, any defect in, failure of, or loss or absence of priority with respect to Apple's interest in such security, or otherwise. In the event that any foreclosure sale is deemed to be not commercially reasonable, the Guarantor waives any right that it may have to have any portion of the Guaranteed Obligations discharged except to the extent of the amount actually bid and received by Apple at any such sale. Apple shall not be required to institute or prosecute proceedings to recover any deficiency as a condition of payment hereunder or enforcement hereof.

   2.6   <u>Separate Guaranteed Obligations</u>.  The obligations of the Guarantor under this Guaranty are independent of the obligations of Debtor, and a separate action or actions may be brought and prosecuted against the Guarantor whether such action is brought against Debtor or whether Debtor is joined in any such action or actions; the Guarantor waives the benefit of any statute of limitations affecting its liability hereunder or the enforcement thereof, to the fullest extent permitted by law.

   2.7   <u>Waiver of Notices and Demands</u>.  The Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of default, and notices of acceptance of this Guaranty and of the existence, creation, extension or incurring of new or additional Guaranteed Obligations. At Apple's option, the Guarantor may be joined in any action or proceeding commenced by Apple against Debtor in connection with or based upon Guaranteed Obligations or any security therefor and recovery may be had against the Guarantor in such action or proceeding, without any requirement that Apple first assert, prosecute or exhaust any remedy or claim against Debtor. Without limiting the foregoing, the Guarantor acknowledges that repeated and successive demands may be made and payments or performance made hereunder in response to such demands as and when, from time to time, Debtor may default in the performance of Guaranteed Obligations. Notwithstanding any such performance hereunder, this Guaranty shall remain in full force and effect and shall apply to any and all subsequent defaults by Debtor in payment or performance of the Guaranteed Obligations.

   2.8   <u>Waiver of Defenses</u>. The Guarantor further waives (i) any and all rights under California Civil Code Sections 2848 and 2849; (ii) any defense or exception arising by reason of the lack of enforceability of the Guaranteed Obligations, (iii) all rights and defenses arising out of an election of remedies by Apple, even though that election of remedies, such as a nonjudicial foreclosure on security for the Guaranteed Obligations, has destroyed Guarantor's rights of subrogation and reimbursement against Debtor, (iv) any defense based upon Apple's election, in any proceeding instituted under the United States Bankruptcy Code, of the application of Section

APPLE CONFIDENTIAL
#C56-13-03450

1111(b)(2) of the United States Bankruptcy Code or any successor statute, and (v) any defense based upon any borrowing or any grant of a security interest under Section 364 of the United States Bankruptcy Code.

2.9    Right of Subrogation.  Notwithstanding any payment or payments made by the Guarantor under this Guaranty or any setoff or application of funds of the Guarantor by Apple, the Guarantor shall not be entitled to be subrogated to any of the rights of Apple against Debtor or any other Person or any collateral security or guaranty or right of offset held by Apple for the payment of the Guaranteed Obligations, nor shall the Guarantor, in its capacity as guarantor, seek or be entitled to seek any contribution or reimbursement from Debtor or any other Person in respect of payments made by the Guarantor hereunder, until all amounts owing to Apple by Debtor on account of the Guaranteed Obligations and all amounts owing hereunder are paid in full.

2.10    Guarantor to Keep Informed.   The Guarantor assumes sole, continuing responsibility for obtaining such information as the Guarantor may require concerning all matters bearing on the risk of nonpayment or nonperformance of the Guaranteed Obligations from sources other than Apple.  Apple has no duty to provide, and Guarantor waives any right to require Apple to provide, any information to the Guarantor unless Apple receives the Guarantor's written request for specific information in Apple's possession and Debtor has authorized Apple to disclose such information to the Guarantor.

2.11    Subordination.  All liabilities and obligations of Debtor to the Guarantor which presently or in the future may exist (the "**Guarantor's Claims**") are subordinated to the Guaranteed Obligations.  At Apple's request, the Guarantor's Claims will be enforced, and performance thereon received by the Guarantor only as a trustee for Apple, and the Guarantor will promptly pay over to Apple all proceeds recovered for application to the Guaranteed Obligations, without reducing or affecting the Guarantor's liability under other provisions of this Guaranty.

2.12    Successors, Transferees and Assigns; Transfers of Interests, etc.  This Guaranty shall:

(a)    be binding upon the Guarantor and its successors, transferees and assigns; and

(b)    inure to the benefit of and be enforceable by Apple.

Guarantor may not assign, delegate or transfer this Guaranty or any of its rights or obligations hereunder (whether voluntarily, by operation of law, or otherwise) without Apple's prior written consent.  Any attempted assignment, transfer, subcontracting or other delegation without such consent shall be void and shall constitute a breach of this Guaranty.

3.    Security Agreement.

3.1    Grant of Security Interest.  For valuable consideration, Guarantor hereby grants and transfers to Apple, a first-priority, subject only to Permitted Liens (as defined below), security interest in all of the property of Guarantor, now existing or hereafter arising, including but not limited to the following (collectively, the "**Collateral**"): (a) components (the "**Furnace**

5

APPLE CONFIDENTIAL
#C56-13-03450

Components") necessary for the manufacture of 2,036 sapphire growing furnaces (the "Mesa Furnaces") and related processing and manufacturing equipment (the Furnace Components, Mesa Furnaces and related processing and manufacturing equipment, the "**Equipment**"); (b) Supporting Obligations (as defined in the UCC) relating to any of the Equipment; (c) that certain Equipment Lease by and between Guarantor (as lessor) and Debtor (as lessee), dated as of October 31, 2013; and (d) to the extent not otherwise included above, all Proceeds (as defined in Section 3.3(a) below), products, accessions, rents and profits of or in respect of any of the foregoing.

    3.2    Guaranteed Obligations Secured.    The obligations secured hereby are the Guaranteed Obligations.

    3.3    Covenants of Guarantor.

    (a) Guarantor agrees in general: (i)  to execute and deliver such documents as Apple deems reasonably necessary to create, perfect and continue the security interests contemplated hereby; (ii) not to change its name, and as applicable, its chief executive office, its principal residence or the jurisdiction in which it is organized and/or registered without giving Apple prior written notice thereof; (iii) not to change the places where Guarantor keeps any Collateral or Guarantor's records concerning the Collateral and Proceeds without giving Apple prior written notice of the address to which Guarantor is moving same; and (iv) to cooperate with Apple in perfecting all security interests granted herein. "Proceeds" means the following property: (A) whatever is acquired upon the sale, lease, license, exchange, or other disposition of the Collateral; (B) whatever is collected on, or distributed on account of, the Collateral; (C) rights arising out of Collateral; (D) to the extent of the value of Collateral, claims arising out of the loss, nonconformity, or interference with the use of, defects or infringement of rights in, or damage to, the Collateral; or (E) to the extent of the value of Collateral and to the extent payable to the Guarantor or the Apple, insurance payable by reason of the loss or nonconformity of, defects or infringement of rights in, or damage to, the Collateral. Apple Inc. shall be named as loss payee under all applicable property and casualty insurance policies.

    (b) Guarantor agrees with regard to the Collateral and Proceeds, unless Apple agrees otherwise in writing: (i) that Apple is authorized to file financing statements naming the Guarantor as "debtor" and Apple as "secured party" and describing the Collateral and Proceeds; (ii) not to permit any lien on the Collateral or Proceeds (other than liens (x) for taxes or governmental charges not yet due or which are being contested in good faith and by appropriate proceedings diligently conducted and (y) in favor of a banking institution or securities intermediary arising as a matter of law encumbering deposits (including the right of set-off) and which are within the general parameters customary in the banking industry (each of the above, a "**Permitted Lien**")); (iii) not to sell, hypothecate or dispose of, nor permit the transfer by operation of law of, any of the Collateral or Proceeds or any interest therein; (iv) to permit Apple to inspect the Collateral at any time; (v) to keep, in accordance with generally accepted accounting principles, complete and accurate records regarding all Collateral and Proceeds, and to permit Apple to inspect the same and make copies thereof at any reasonable time; (vi) from time to time, when requested by Apple, to prepare and deliver a schedule of all Collateral and Proceeds subject to this Agreement; and (viii) to do any other acts which may be reasonably necessary to maintain, preserve and protect all Collateral and, as appropriate and applicable

APPLE CONFIDENTIAL
#C56-13-03450

(ordinary wear and tear excepted), to deal with the Collateral in accordance with the standards and practices adhered to generally by users and owners of like property, and to keep all Collateral and Proceeds free and clear of all defenses, rights of offset and counterclaims.

3.4     Powers of Apple.  Without any action or approval from Guarantor, upon a Trigger Event (as defined in the Prepayment Agreement), Guarantor appoints Apple its true attorney-in-fact to perform any of the following powers, which are coupled with an interest, are irrevocable until termination of this Agreement and may be exercised from time to time by Apple's officers and employees, or any of them: (a) to perform any obligation of Guarantor hereunder in Guarantor's name or otherwise; (b) to resort to security in any order; (c) to prepare, execute, file, record or deliver notes, assignments, schedules, designation statements, financing statements, continuation statements, termination statements, statements of assignment, applications for registration or like papers to perfect, preserve or release Apple's interest in the Collateral and Proceeds; (d) to endorse, collect, deliver and receive payment under instruments for the payment of money constituting Proceeds; (e) to exercise all rights, powers and remedies which Guarantor would have, but for this Agreement, with respect to all Collateral and Proceeds subject hereto; (f) to enter onto Guarantor's premises in inspecting the Collateral; and (g) to do all acts and things and execute all documents in the name of Guarantor or otherwise, reasonably deemed by Apple as necessary, proper and convenient in connection with the preservation, perfection or enforcement of its rights hereunder.

3.5     Payment of Premiums, Taxes, Charges, Liens and Assessments.  Guarantor agrees to pay, prior to delinquency, all taxes, charges, liens and assessments against the Collateral and Proceeds, and upon the failure of Guarantor to do so, Apple at its option may pay any of them and shall be the sole judge of the legality or validity thereof and the amount necessary to discharge the same. Any such payments made by Apple shall be obligations of Guarantor to Apple, due and payable immediately upon demand, together with interest at a rate determined in accordance with the provisions of this Agreement, and shall be secured by the Collateral and Proceeds, subject to all terms and conditions of this Agreement.

3.6     Remedies.  Upon the occurrence of any Trigger Event (as defined in the Prepayment Agreement), or termination of the SOW by Apple for Cause (as defined therein), Apple shall have the right to declare immediately due and payable all or any Guaranteed Obligations secured hereby. Apple shall have all other rights, powers, privileges and remedies granted to a secured party upon default under the Uniform Commercial Code or the equivalent body of law in the applicable jurisdiction or otherwise provided by law, including without limitation, the right to sell, lease, license or otherwise dispose of any or all Collateral. All rights, powers, privileges and remedies of Apple shall be cumulative. No delay, failure or discontinuance of Apple in exercising any right, power, privilege or remedy hereunder shall affect or operate as a waiver of such right, power, privilege or remedy; nor shall any single or partial exercise of any such right, power, privilege or remedy preclude, waive or otherwise affect any other or further exercise thereof or the exercise of any other right, power, privilege or remedy. Any waiver, permit, consent or approval of any kind by Apple of any default hereunder, or any such waiver of any provisions or conditions hereof, must be in writing and shall be effective only to the extent set forth in writing. It is agreed that public or private sales or other disposition, for cash or on credit, to a wholesaler or retailer or investor, or user of property of the types subject to this Agreement, or public auctions, are all commercially reasonable since

APPLE CONFIDENTIAL
#C56-13-03450

differences in the prices generally realized in the different kinds of dispositions are ordinarily offset by the differences in the costs and credit risks of such dispositions. While Apple is entitled to exercise its remedies under this Section 3.6: (a) Guarantor will deliver to Apple from time to time, as requested by Apple, current lists of all Collateral and Proceeds; (b) Guarantor will not dispose of any Collateral or Proceeds except on terms approved by Apple; (c) at Apple's request, Guarantor will assemble and deliver all Collateral and Proceeds, and books and records pertaining thereto, to Apple at a reasonably convenient place designated by Apple; and (d) Apple may, without notice to Guarantor, enter onto Guarantor's premises and take possession of the Collateral. With respect to any sale or other disposition by Apple of any Collateral subject to this Agreement, Guarantor hereby expressly grants to Apple the right to sell such Collateral using any or all of Guarantor's trademarks, trade names, trade name rights and/or proprietary labels or marks. Guarantor further agrees that Apple shall have no obligation to process or prepare any Collateral for sale or other disposition.

   3.7   Disposition of Collateral and Proceeds; Transfer of Guaranteed Obligations. In disposing of Collateral hereunder, Apple may disclaim all warranties of title, possession, quiet enjoyment and the like. Any proceeds of any disposition of any Collateral or Proceeds, or any part thereof, may be applied by Apple to the payment of expenses incurred by Apple in connection with undertaking any action pursuant to Section 3.6 above, including reasonable attorneys' fees, and the balance of such proceeds may be applied by Apple toward the payment of the Guaranteed Obligations in such order of application as Apple may from time to time elect. Upon the transfer of all or any part of the Guaranteed Obligations, Apple may transfer all or any part of the Collateral or Proceeds and shall be fully discharged thereafter from all liability and responsibility with respect to any of the foregoing so transferred, and the transferee shall be vested with all rights and powers of Apple hereunder with respect to any of the foregoing so transferred; but with respect to any Collateral or Proceeds not so transferred, Apple shall retain all rights, powers, privileges and remedies herein given.

   3.8   Statute of Limitations. Until all Guaranteed Obligations shall have been paid in full, the power of sale or other disposition and all other rights, powers, privileges and remedies granted to Apple hereunder shall continue to exist and may be exercised by Apple at any time and from time to time irrespective of the fact that the Guaranteed Obligations or any part thereof may have become barred by any statute of limitations, or that the personal liability of Guarantor may have ceased, unless such liability shall have ceased due to the payment in full of all Guaranteed Obligations secured hereunder.

   4.   Representations and Warranties.

   The Guarantor hereby represents, warrants and covenants to Apple that:

   (a)   the Guarantor is a limited liability company duly organized, validly existing and in good standing under the laws of the jurisdiction in which it was formed, and is qualified or in the process of being qualified to do business and is in good standing as a foreign corporation in each other state or jurisdiction where the character of the property owned or the nature of its business requires it to be so qualified;

APPLE CONFIDENTIAL
#C56-13-03450

(b)  neither the execution or delivery of this Guaranty or any of the other documents related hereto nor the performance of or compliance with the terms and provisions hereof or thereof will conflict with or result in a breach of any law, statute, code, rule, ordinance, order, judgment, decree, injunction, rule, regulation, permit, license or authorization of any governmental department, commission, board, court, authority or agency, or any other agreement or instrument binding upon the Guarantor or any of its property, or conflict with or result in a breach of any provision of the charter documents or bylaws of the Guarantor. No authorization, consent or approval or other action by, and no notice to or filing with, any governmental authority is required to be obtained or made by the Guarantor for the due execution, delivery and performance by the Guarantor of this Guaranty;

(c)  the Guarantor has the requisite power to enter into and deliver this Guaranty and has taken all necessary corporate or other action required to authorize the execution, delivery and performance of this Guaranty. The undersigned representative of Guarantor has all powers and authority necessary to execute this Guaranty on behalf of Guarantor and to bind Guarantor in accordance with the terms hereof;

(d)  this Guaranty constitutes legal, valid and binding obligations enforceable against the Guarantor in accordance with its terms, and its execution and performance will not cause a breach, or constitute an act which with the passage of time or the giving of notice or both would become a breach, of any other agreement to which the Guarantor is a party or to which any of its properties is subject;

(e)  the Guarantor is now solvent;

(f)  the principal place of business of the Guarantor is located at the address set forth on the signature page;

(g)  there is no action, suit or proceeding at law or in equity or by or before any governmental instrumentality or other agency, domestic or foreign, now pending or, to the knowledge of the Guarantor, threatened against the Guarantor or any property or rights of the Guarantor, the effect of which would result in a material adverse change to the Guarantor's business, operations or financial statements. The Guarantor is not in default with respect to any judgment, writ, injunction, decree, rule or regulation applicable to the Guarantor of any court or governmental instrumentality or other agency, domestic or foreign, which would result in a material adverse change to the Guarantor's business, operations or financial statements; and

(h)  to the best of Guarantor's current knowledge, neither this Guaranty nor any of the other certificates, statements or information furnished to Apple by or on behalf of the Guarantor in connection with this Guaranty or the transactions contemplated hereby contains or will contain any untrue statement of a material fact or omits or will omit to state a material fact necessary to make the statement therein, in light of the circumstances under which they were made, not misleading; and

(i)  the Guarantor has received the assistance of its legal counsel in connection with the review, negotiation and execution of this Guaranty.

9

APPLE CONFIDENTIAL
#C56-13-03450

5.    Miscellaneous Provisions.

5.1    Costs, Expenses and Attorneys' Fees.  Following the occurrence of a Trigger Event or other event in which the Secured Obligations are owed, Guarantor shall pay to Apple immediately upon demand the full amount of all payments, advances, charges, costs and expenses, including reasonable attorneys' fees of outside counsel, expended or incurred by Apple in connection with (a) the perfection and preservation of the Collateral or Apple's interest therein; and (b) the realization, enforcement and exercise of any right, power, privilege or remedy conferred by this Agreement, whether incurred at the trial or appellate level, in an arbitration proceeding or otherwise, and including any of the foregoing incurred in connection with any bankruptcy proceeding (including without limitation, any adversary proceeding, contested matter or motion brought by Apple or any other person) relating to Guarantor or in any way affecting any of the Collateral or Apple's ability to exercise any of its rights or remedies with respect thereto.

5.2    Location of Performance: Payment Terms.  Performance of this Guaranty shall be carried out in Santa Clara County in the State of California.  All payments made to Apple pursuant to this Guaranty shall be made in Dollars, the legal tender of the United States of America, and shall be sent to Apple at the address indicated in this Section 5.2, or made by deposit or by electronic transfer of immediately available funds to the bank account indicated by Apple for such purpose. In addition, in the event any payment effected pursuant to this Guaranty is subject to the withholding or deduction of taxes or to any other charge, Guarantor agrees and obligates itself to pay to Apple an additional amount, such that the net amount received by Apple after giving effect to the applicable retention or deduction is equal to the amount Apple would have received if such retention or deduction had not been made.  For all purposes relative to this Guaranty, the address for Apple is as follows:

Apple Inc.
1 Infinite Loop
Cupertino, California 95014
Attn: MS: 38-3TR Credit Department

provided that, additional copies of any notices or communications to be given under this Guaranty to Apple shall also be sent at the same time, and in the same manner, to the following address:

Apple Inc.
1 Infinite Loop
Cupertino, California 95014
Attn: General Counsel

with an additional copy provided at such time via facsimile to Apple's General Counsel at +1 408-974-8530.

5.3    Amendments, etc.  No amendment to or waiver of any provision of this Guaranty, nor consent to any departure by the Guarantor from this Guaranty is effective unless the same is in writing and signed by Apple and the Guarantor.

APPLE CONFIDENTIAL
#C56-13-03450

5.4     Addresses for Notices to Guarantor.  All notices, demands, requests, consents, approvals and other communications under this Guaranty will be in writing and directed to Guarantor's principal place of business at the address set forth on the signature page of this Guaranty.

5.5     No Waiver; Remedies.  In addition to and not in limitation of Sections 2.3 and 2.5, no failure on the part of Apple to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof; nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.  The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

5.6     Section Captions.  Section captions used in this Guaranty are for convenience of reference only, and shall not affect the construction of this Guaranty.

5.7     Severability.  Wherever possible, each provision of this Guaranty shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Guaranty is prohibited by or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of the Guaranty.

5.8     Termination of Guaranty.  This Guaranty shall terminate upon payment of the Prepayment Balance (as defined in the Prepayment Agreement) and expiration or termination of the MDSA and SOW and payment of any Guaranteed Obligations thereunder.  Upon termination of this Guaranty, Apple shall take such actions as Guarantor may reasonably request to release Collateral.  Guarantor acknowledges that there is a continuing consideration to Guarantor for this Guaranty and therefore Guarantor waives and relinquishes the right to revoke or terminate this Guaranty as provided in California Civil Code Section 2815.

5.9     GOVERNING LAW; VENUE.  THE VALIDITY, CONSTRUCTION AND EFFECT OF THIS GUARANTY SHALL BE GOVERNED BY THE LAWS OF THE STATE OF CALIFORNIA, WITHOUT REGARD TO ITS LAWS REGARDING CHOICE OF APPLICABLE LAW.  ALL JUDICIAL ACTIONS OR PROCEEDINGS BROUGHT AGAINST GUARANTOR WITH RESPECT TO THIS GUARANTY SHALL BE BROUGHT IN ANY COMPETENT STATE OR FEDERAL COURT IN SANTA CLARA COUNTY, STATE OF CALIFORNIA, AND GUARANTOR ACCEPTS FOR ITSELF AND ITS ASSETS AND PROPERTIES, GENERALLY AND UNCONDITIONALLY, THE EXCLUSIVE JURISDICTION OF THE AFORESAID COURTS.  GUARANTOR WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY OBJECTION (INCLUDING ANY OBJECTION TO THE LAYING OF VENUE OR BASED ON THE GROUNDS OF FORUM NON CONVENIENS) WHICH IT MAY NOW OR HEREAFTER HAVE TO THE BRINGING OF ANY SUCH ACTION OR PROCEEDING IN ANY SUCH JURISDICTION. GUARANTOR HEREBY ACKNOWLEDGES THAT SECTION 410.40 OF THE CALIFORNIA CODE OF CIVIL PROCEDURE SHALL BE APPLICABLE TO ANY SUCH ACTION OR PROCEEDING.  GUARANTOR WAIVES ITS RIGHT TO A JURY TRIAL, HEREBY CONSENTING IRREVOCABLY TO A TRIAL BY THE COURT. GUARANTOR FURTHER WAIVES ALL REQUIREMENTS FOR SERVICE OF PROCESS UNDER THE LAWS OF ANY JURISDICTION, HEREBY CONSENTING TO SERVICE OF

APPLE CONFIDENTIAL
#C56-13-03450

PROCESS BY USPS CERTIFIED MAIL TO THE ADDRESS OF THE PARTY TO BE SERVED INDICATED IN SECTION 5.2 HEREOF.

[SIGNATURE PAGE FOLLOWS]

12

APPLE CONFIDENTIAL
#C56-13-03450

**IN WITNESS WHEREOF**, the Guarantor has caused this Guaranty to be duly executed and delivered by its officer thereunto duly authorized as of the date first above written.

**"GUARANTOR"**

By: _____

Name: _____

Title: _____

Principal Place of Business Address:

_____

_____

Acknowledged and Agreed:

**APPLE INC.**

By: Peter Oppenheimer

Title:  Senior Vice President, Chief Financial Officer

13

TAB 14

#C56-13-03452

# LOAN AGREEMENT

This **LOAN AGREEMENT #C56-13-03452**, dated as of October 31, 2013 (this **"Agreement"**), is entered into by and between **GT ADVANCED EQUIPMENT HOLDING LLC**, a Delaware limited liability company (the **"Borrower"**), and **GTAT CORPORATION**, a Delaware corporation d/b/a GT Advanced Technologies (the **"Lender"**).

## RECITALS:

**WHEREAS**, the Lender and Apple Inc. (**"Apple"**) have entered into that certain Prepayment Agreement pursuant to which Apple agrees to advance funds to the Lender, in several installments, in an aggregate amount of Five Hundred Seventy Eight Million U.S. Dollars (US $578,000,000) (**"Prepayment Agreement"**); and

**WHEREAS**, the Lender has agreed to advance funds to the Borrower, in certain installments, in an aggregate principal amount of Five Hundred Seventy Eight Million U.S. Dollars (US $578,000,000) (the **"Loan"**);

**WHEREAS**, the proceeds of the Loan will be used to (i) fund the purchase of components (the **"Furnace Components"**) necessary for the manufacture of 2,036 sapphire growing furnaces (the **"Mesa Furnaces"**) and related processing and manufacturing equipment and the installation of all of the Mesa Furnaces and such related equipment at the manufacturing facility to be located in Mesa, AZ that Apple is purchasing and developing (the **"Mesa Facility"**), and (ii) retrofit and qualify the committed 54 sapphire growing furnaces currently located in Lender's Salem, Massachusetts facility (the **"Salem Furnaces"** and, together with the Mesa Furnaces, the **"Furnaces"**) (the Furnace Components, Furnaces and related equipment, collectively, the **"Equipment"**);

**WHEREAS**, Apple and Lender are party to that Master Development and Supply Agreement, #C56-13-02947, effective October 31, 2013 (as may be amended, modified and supplemented from time to time, the **"MDSA"**) and a Statement of Work to MDSA, effective as of October 31, 2013 (as may be amended, modified and supplemented from time to time, the **"SOW"**), which together provide the certain terms and conditions for Apple's purchase of goods that Lender will develop, manufacture, sell and deliver to Apple using the Equipment;

**WHEREAS**, Borrower is concurrently entering into that certain Secured Guaranty (the **"Secured Guaranty"**), in favor of Apple, pursuant to which Borrower guarantees Lender's obligations to Apple under the MDSA, SOW and the Prepayment Agreement, secured by a first-priority lien on all assets of Lender, including the Equipment and Lender's interests under the Equipment Lease; and

**WHEREAS**, Lender is concurrently making that certain Conditional Assignment (the **"Conditional Assignment"**), in favor of Apple, pursuant to which Lender assigns its rights and interests in and under this Agreement to Apple to secure Lender's obligations to Apple under the MDSA, SOW and the Prepayment Agreement; and

#C56-13-03452

WHEREAS, the Lender and Borrower are concurrently entering into that certain Equipment Lease pursuant to which Borrower leases to Lender the Equipment ("**Equipment Lease**");

NOW, **THEREFORE,** in consideration of the premises and the agreements, provisions and covenants herein contained, the parties hereto agree as follows:

## SECTION 1  LOAN

### 1.1  Loan.

(a)  Loan.  Subject to the terms and conditions hereof, the Lender agrees to make the Loan to the Borrower in an aggregate amount up to, but not exceeding $578,000,000.00.

(b)  Funding.  Subject to Section 2 hereof (and the receipt of funds by Lender from Apple pursuant to the Prepayment Agreement), the Lender shall make the Loan to the Borrower in the amounts and on the dates set forth in the following schedule:

- o  Lender will transfer $130.0 million within 2 Business Days of receipt by Lender of the first Milestone Payment (as defined in the Prepayment Agreement);
- o  Lender will transfer $111.0 million within 2 Business Days of receipt of the second Milestone Payment;
- o  Lender will transfer $198.0 million within 2 Business Days of receipt of the third Milestone Payment;
- o  Lender will transfer $139.0 million within 2 Business Days of receipt of the fourth Milestone Payment.

"**Business Day**" is a day other than a Saturday, Sunday or day on which banks in San Francisco, California, U.S.A. are authorized or required to be closed for business.

1.2  Use of Proceeds.  The proceeds of the Loan shall be used by the Borrower to fund the purchase of Furnace Components and related processing and manufacturing equipment, and to qualify the Salem Furnaces.

1.3  Evidence of Debt; Notes.  The Lender shall maintain on its internal records an account or accounts evidencing the Indebtedness of the Borrower to the Lender, including the amounts of the Loan and each repayment in respect thereof.

1.4  Repayment of Loan

(a)  Subject to subsection (b) below, the Loan shall be repaid within the term of five (5) years from the date hereof, in 58 equal monthly installments of US$9,965,517.24 (each, an "**Installment**"), payable on the first of every month, beginning on January 1, 2014 and continuing until the Loan is fully repaid.  Borrower shall setoff its obligation to pay the Installments against Lender's obligation to pay rent to Borrower under the Equipment Lease

2

(b)     The entire unpaid balance of the Loan shall become immediately due and payable to Lender or Lender's designee, in immediately available funds to an account designated by Lender or Lender's designee, without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived by the Borrower, if (1) the Prepayment Balance (as defined in the Prepayment Agreement) becomes immediately due and payable under the Prepayment Agreement, or (2) Apple terminates the SOW for Cause (as defined in therein).

## SECTION 2   CONDITIONS PRECEDENT

2.1     <u>Conditions Precedent</u>.  The obligation of the Lender to make any portion of the Loan is subject to the satisfaction of the following conditions precedent:

(a)     <u>Secretary's Certificate and Attachments</u>.  The Lender shall have received an originally executed certificate from the secretary or assistant secretary of the Borrower, together with all applicable attachments, certifying as to the following:

(i)     <u>Organizational Documents</u>. Attached thereto is a copy of each organizational document of the Borrower originally executed and delivered by each party thereto and, to the extent applicable, certified as of a recent date by the appropriate governmental official.

(ii)     <u>Signature and Incumbency</u>. Set forth therein are the signature and incumbency of the officers or other authorized representatives of the Borrower executing the Agreement to which it is a party.

(iii)     <u>Resolutions</u>. Attached thereto are copies of resolutions of the board of managers of the Borrower approving and authorizing the execution, delivery and performance of this Agreement, to which it is a party or by which it or its assets may be bound, certified as being in full force and effect without modification or amendment.

(iv)     <u>Good Standing Certificates</u>. Attached thereto is a good standing certificate from the applicable Governmental Authority of the Borrower's jurisdiction of organization or formation and in each jurisdiction in which it is qualified as a foreign entity to do business.

(b)     <u>Representations and Warranties</u>. The representations and warranties contained herein shall be true and correct in all material respects on and as of the date of the Agreement to the same extent as though made on and as of that date, except to the extent such representations and warranties specifically relate to an earlier date, in which case such representations and warranties shall have been true and correct in all material respects on and as of such earlier date; and

(c)     <u>No Event of Default</u>. No event shall have occurred and be continuing or would result from the consummation of the Loan that would constitute an Event of Default.

(d)     <u>Lender Receipt of Funds</u>.  Lender has received advances of funds under the Prepayment Agreement and, under the terms of the Prepayment Agreement, is required to make loans to Borrower hereunder.

#C56-13-03452

## SECTION 3   REPRESENTATIONS AND WARRANTIES

In order to induce the Lender to enter into this Agreement and to make the Loan, the Borrower represents and warrants to the Lender that the following statements are true and correct:

**3.1     Organization; Required Power and Authority; Qualification.** The Borrower (a) is duly organized, validly existing and in good standing under the laws of its jurisdiction of organization, (b) has all requisite power and authority to own the Equipment, to lease the Equipment, to carry on its business as now conducted and as proposed to be conducted, to enter into this Agreement and to carry out the transactions contemplated thereby, and (c) is qualified to do business and in good standing in every jurisdiction where its assets are located and wherever necessary to carry out its business and operations.

**3.2     Due Authorization.** The execution, delivery and performance of this Agreement has been duly authorized by all necessary action on the part of the Borrower that is a party thereto.

**3.3     No Conflict.** The execution, delivery and performance by the Borrower of this Agreement and the consummation of the transactions contemplated hereby do not and will not (a) violate any of the organizational documents of the Borrower or otherwise require any approval of any member of the Borrower, except for such approvals or consents which will be obtained on or before the date of this Agreement; (b) violate any provision of any law applicable to or otherwise binding on the Borrower (other than any law the violation of which would not have a material adverse effect on the Borrower or its ability to perform its obligations hereunder); (c) result in or require the creation or imposition of any lien upon any of the properties or assets of the Borrower; or (d) conflict with, result in a breach of or constitute a default under, or otherwise require any approval or consent of any person under, any material contractual obligation of the Borrower.

**3.4     Binding Obligation.** Each Loan Document to which the Borrower is a party has been duly executed and delivered by the Borrower and is the legally valid and binding obligation of the Borrower, enforceable against the Borrower in accordance with its respective terms.

**3.5     Title.** The Borrower has good title to (or a valid and enforceable right to use) all of its properties and assets, and such assets and properties are free and clear of liens except those under the related to the Secured Guaranty.

**3.6     Disclosure.** No representation or warranty of the Borrower contained in any Loan Document or in any other documents, certificates or written statements furnished to the Lender by or on behalf of the Borrower for use in connection with the transactions contemplated hereby, taken as a whole, contains any untrue statement of a material fact or omits to state a material fact (known to the Borrower) necessary in order to make the statements contained herein or therein, taken as a whole, not materially misleading in light of the circumstances in which the same were made.

4

#C56-13-03452

## SECTION 4  AFFIRMATIVE COVENANTS

The Borrower covenants and agrees that so long as any portion of the Loan is outstanding and until payment in full of the Loan, the Borrower shall perform all covenants in this Section 4.

### 4.1    Notice of Default

(a)    Notice of Default.  Promptly upon any officer of the Borrower obtaining knowledge of any Event of Default or that notice has been given to the Borrower with respect thereto, Borrower shall provide Lender a certificate of its authorized officer specifying the nature and period of existence of such Event of Default, the nature of such claimed Event of Default, and what action the Borrower has taken, is taking and proposes to take with respect thereto.

### 4.2    Books and Records.
The Borrower will keep proper books of record and accounts in which full, true and correct entries in conformity in all material respects with Generally Accepted Accounting Principles shall be made of all dealings and transactions in relation to its business and activities.

### 4.3    Further Assurances.
At any time or from time to time upon the request of the Lender, the Borrower will, at its expense, promptly execute, acknowledge and deliver such further documents and do such other acts and things as the Lender may reasonably request in order to effect fully the purposes of this Agreement.

## SECTION 5  NEGATIVE COVENANTS

The Borrower covenants and agrees that, so long as the Loan is in effect and until the Loan is paid in full, the Borrower shall perform all covenants in this Section 5.

### 5.1    Indebtedness.
The Borrower shall not directly or indirectly, create, incur, assume or guaranty, or otherwise become or remain directly or indirectly liable with respect to any indebtedness, except the Loan and the Secured Guaranty.

### 5.2    Liens.
The Borrower shall not directly or indirectly, create, incur, assume or permit to exist any lien on or with respect to any asset, including but not limited to, the Equipment, whether now owned or hereafter acquired, or file or permit the filing of, or permit to remain in effect, any financing statement or other similar notice of any lien with respect to any asset, including but not limited to the Equipment, under the Uniform Commercial Code of any state or under any similar recording or notice statute, except the first-priority liens in favor of Apple granted pursuant to the Secured Guaranty, and any assignment thereof made by Apple.

### 5.3    No Further Negative Pledges.
The Borrower shall not enter into any agreement prohibiting the creation or assumption of any lien upon any of its properties or assets, whether now owned or hereafter acquired, to secure the Loan.

For the sake of clarity, nothing herein shall restrict, prohibit or otherwise require the consent of Borrower in order for the Lender to create, incur, assume or guaranty, or otherwise become or remain directly or indirectly liable with respect to any indebtedness or to create, incur,

#C56-13-03452

assume or permit to exist any lien on or with respect to any asset of the Lender (other than Lender's interest in the Borrower or the Equipment).

## SECTION 6  EVENTS OF DEFAULT

    **6.1**    <u>Events of Default</u>. The occurrence of any one or more of the following conditions or events shall constitute an **"Event of Default"** immediately upon Lender giving Borrower notice of the occurrence thereof, which notice may consist of any written notice to Borrower, including by electronic mail:

        (a)    <u>Failure to Perform When Due</u>.   Failure by the Borrower to perform pursuant to Section 1 hereof; or

        (b)    <u>Breach of Covenants</u>. Failure of the Borrower to perform or comply with any term or condition contained in Sections 4 or 5; or

        (c)    <u>Breach of Representations</u>.  Any representation, warranty or certification made or deemed made by the Borrower in any Loan Document or in any statement or certificate at any time given by the Borrower in writing pursuant hereto or thereto or in connection herewith or therewith shall be incorrect or misleading in any material respect as of the date made or deemed made; or

        (d)    <u>Other Defaults</u>.  The Borrower shall default in the performance of or compliance with any other term contained herein and such default shall not be remedied within five (5) Business Days of notice from the Lender; or

        (e)    <u>Judgments and Attachments</u>.  Any money judgment, writ or warrant of attachment or similar process shall be entered or filed at any time against the Borrower or any of its assets, in any individual or aggregate amount in excess of $1,000,000 (in each case, to the extent not adequately covered by insurance as to which a solvent and unaffiliated insurance company has acknowledged coverage), and shall remain undischarged, unvacated, unbonded or unstayed for a period of 60 days (or in any event later than five days prior to the date of any proposed sale thereunder); or

        (f)    <u>Validity of Loan Agreement</u>. At any time after the execution and delivery thereof, the Borrower shall contest the validity or enforceability of this Loan Agreement in writing or deny in writing that it has any further liability, including with respect to future advances by the Lender, under this Loan Agreement.

    **6.2**    <u>Acceleration and Remedies</u>. Without limiting the effect of Section 1.4(b) above, upon the occurrence of any Event of Default and after notice to the Borrower by the Lender:

        (a)    Any obligations of the Lender to fund the Loan under Section 1.1(b) shall immediately terminate;

        (b)    the aggregate principal amount of the Loan then outstanding shall become due and payable immediately, without presentment, demand, protest or further notice of any kind, all of which are hereby expressly waived by the Borrower; and

(c)     the Lender may exercise any and all of its other rights and remedies under applicable Law or at equity, hereunder.

## SECTION 7  MISCELLANEOUS

**7.1     Notices.** Other than as provided in Section 6.1, all notices and other communications provided for herein shall be in writing and shall be delivered by hand or overnight courier service, mailed by certified or registered mail or sent by facsimile, if to the Lender or the Borrower, to it at its respective address (or facsimile number) set forth on the execution page of this Agreement.  Any party hereto may change its address or facsimile number for notices and other communications hereunder by notice to the other parties hereto.

**7.2     Amendments and Waivers.** No amendment, modification, termination or waiver of any term or condition of any Loan Document, or consent to any departure by the Borrower therefrom, shall be effective without the written concurrence of the Lender.

**7.3     Successors and Assigns.** The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and its successors and assigns permitted hereby, except that the Borrower may not assign or otherwise transfer any of its rights or obligations hereunder without the prior written consent of the Lender and Apple. Nothing in this Agreement, expressed or implied, shall be construed to confer upon any person any legal or equitable right, remedy or claim under or by reason of this Agreement. The Lender may not assign or transfer any of its rights  or obligations under this Agreement, except pursuant to the Conditional Assignment, without the prior written consent of Apple.

**7.4     Headings.** Section headings herein are included herein for convenience of reference only and shall not constitute a part hereof for any other purpose or be given any substantive effect.

**7.5     Governing Law.** This Agreement and any claims, controversy, dispute or cause of action (whether in contract or tort or otherwise) based upon, arising out of or relating to this Agreement and the transactions contemplated hereby and thereby shall be governed by, and construed in accordance with, the law of the State of California.

**7.6     Counterparts; Effectiveness.** This Agreement may be executed in counterparts (and by different parties hereto in different counterparts), each of which shall constitute an original, but all of which when taken together shall constitute a single contract. This Agreement shall become effective when it shall have been executed by the Lender and when the Lender shall have received counterparts hereof that, when taken together, bear the signatures of each of the other parties hereto. Delivery of an executed counterpart of a signature page of this Agreement by facsimile or in electronic (i.e., "pdf" or "tif") format shall be effective as delivery of a manually executed counterpart of this Agreement.

**7.7     Termination.** This Agreement shall terminate at the time the Loan is repaid in its entirety.

#C56-13-03452

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed and delivered by its officers thereunto duly authorized as of the date first written above.

**GT Advanced Equipment Holding LLC**, as Borrower

By: _____
    Name:
    Title:

Principal Place of Business Address:

_____

_____

_____

_____

**GTAT CORPORATION**, as Lender

By: _____
Name: Hoil Kim
Title:   Vice President, Chief Administrative Officer and General Counsel

Principal Place of Business Address:

_____

_____

_____

_____

8

TAB 15

#C56-13-03454

# EQUIPMENT LEASE

This Equipment Lease #C56-13-03454 (**"Lease"**) is made and effective this 31st day of October, 2013, by and between **GT Advanced Equipment Holding LLC** (**"Lessor"**), a Delaware limited liability company with offices at 243 Daniel Webster Highway, Merrimack, New Hampshire, and **GTAT Corporation**, a Delaware corporation having its principal place of business at 243 Daniel Webster Highway, Merrimack, NH 03054 (**"Lessee"**), with reference to the following facts:

A.   Lessor owns or will own components (the **"Furnace Components"**) necessary for the manufacture of 2,036 sapphire growing furnaces (the **"Mesa Furnaces"**) and related processing and manufacturing equipment (the Furnace Components, Mesa Furnaces and related processing and manufacturing equipment, the **"Equipment"**).

B.   Lessor desires to lease to Lessee and Lessee desires to rent from Lessor the Equipment by the terms and conditions contained herein.

C.   Lessor and Lessee have entered into that certain Loan Agreement dated October 31, 2013 (the **"Loan Agreement"**) pursuant to which Lessee agreed to loan Lessor up to Five Hundred Seventy Eight Million U.S. Dollars (US$578,000,000) (the **"Loan"**) for the purchase of, *inter alia*, the Equipment.

D.   Lessee has assigned the Loan Agreement to Apple Inc. (**"Apple"**) pursuant to that certain Conditional Assignment dated as of October 31, 2013 (the **"Conditional Assignment"**).

E.   Apple and Lessee are parties to that certain Master Development and Supply Agreement, #C56-13-02947, effective October 31, 2013 (as may be amended, modified and supplemented from time to time, the **"MDSA"**), and that certain Statement of Work to MDSA dated as of October 31, 2013 (as may be amended, modified and supplemented from time to time, the **"SOW"**). Apple and Lessee also are parties to that certain Prepayment Agreement, dated as of the date hereof (the **"Prepayment Agreement"**).

F.   Lessor has made that certain Secured Guaranty dated October 31, 2013 (the **"Secured Guaranty"**), in favor of Apple, to guarantee the obligations of Lessee under the MDSA, SOW and the Prepayment Agreement, secured by a first-priority lien on all assets of Lessor, including the Equipment and Lessor's interests hereunder.

G.   Lessor desires to lease to Lessee and Lessee desires to rent from Lessor the Equipment by the terms and conditions contained herein.

THEREFORE, for valuable consideration, the parties hereto agree as follows:

#C56-13-03454

1. **Lease and Lease Period.**

   a.     Lessor leases to Lessee and Lessee rents from Lessor the Equipment.

   b.     This Lease shall commence on the date of the purchase of the Equipment (or any portion thereof) by Lessor.  The term of this Lease (the **"Term"**) shall continue from commencement until automatic termination upon the earliest to occur of: (i) the fourteenth (14th) anniversary of the date of execution of this Lease; (ii) occurrence of a Trigger Event (as defined in the Prepayment Agreement); or (iii) the termination by Apple of the SOW for Cause (as defined in the SOW).

   c.     While the Loan is outstanding, the rent owed hereunder by Lessee (**"Rent"**) shall be equal to the amounts owed by Lessor under the Loan Agreement.  Payments of Rent shall be due periodically, on the same schedule set forth in the Loan Agreement for repayments of the Loan.  Lessee may setoff its obligation to pay such Rent against Lessor's obligation to repay the Loan.  After the Loan has been paid in full, the Rent shall be as negotiated at that time by Lessor and Lessee, in good faith, to reflect fair market rental value, under the circumstances.

2. **Ownership and Taxes.**

   a.     The Equipment shall at all times remain the property of Lessor.

   b.     Lessee will at all times protect and defend, at its own cost and expense, the ownership of Lessor against all claims, liens, encumbrances, levies and legal processes of creditors of Lessee and other persons, and keep the Equipment free and clear from all such claims, liens, encumbrances, levies and processes, with the exception of security interests related to the Secured Guaranty.  Lessee acknowledges and agrees that this Lease and all of Lessee's rights hereunder or with respect hereto under any applicable law are subject and subordinate to the rights of Apple under the Collateral Assignment, Secured Guaranty and related documents.

   c.     Lessee shall pay, when due, all charges and taxes local, state, and federal, which may now or hereafter be imposed upon the ownership, leasing, rental, sale, purchase, possession, or use of the Equipment.

3. **Use and Maintenance.**

   a.     Lessee at its expense, during the Term, shall: (i) properly maintain the Equipment and use it in a careful manner; (ii) comply with government statutes, ordinances, regulations, and all laws relating to its installation, possession, use or maintenance and obtain all permits and licenses; and (iii) keep the Equipment in good repair and furnish all parts, mechanisms and devices required therefor.  Lessee shall be liable for all costs and losses to Lessor arising out of Lessee's failure to maintain the Equipment in good condition or make such repairs or replace such parts as may be necessary to maintain the Equipment in good condition.

   b.     Lessee shall bear the entire risk of loss, theft, damage or destruction of the Equipment from any cause whatsoever, during the Term. No loss, theft, damage or destruction of

#C56-13-03454

the Equipment or delay, deficiency or absence of insurance proceeds, and no unavailability, delay or failure of supplies, parts, mechanisms, devices or services for the Equipment or failure of the Equipment to function for any cause shall relieve Lessee of the obligation to pay Rent or of any other obligation hereunder.

c. In the event of damage to any item of Equipment, Lessee shall immediately place the same in good repair.

4. **Insurance.**

a. Lessee shall, during the Term, purchase and maintain insurance covering loss, theft, damage or destruction of the Equipment in an amount equal to the cost of replacement of all Equipment and with a suitably financially rated and reputable insurance company approved by Lessor. The proceeds under this insurance shall be payable upon loss to Lessor under the terms and provisions of Lessor's Loss Payable Endorsement, in a form acceptable to Lessor. Apple shall be named as additional insured and loss payee.

b. Upon the signing of this Lease, Lessee shall instruct its insurance agent, broker or company to confirm to Lessor in writing that the necessary insurance has been bound, and inform Lessor of the name of the insurance company binding this insurance, the amount of insurance and the full description of the coverage; and, within thirty (30) days after the date of this Lease, forward to Lessor a copy of the endorsement naming Lessor as additional insured and loss payee. Lessor may apply the proceeds of said insurance to replace or repair the equipment and/or to satisfy Lessee's obligation hereunder.

5. **Assignment.**

a. Without Lessor's prior written consent, Lessee shall not (i) assign, transfer, pledge, hypothecate or otherwise dispose of this Lease or any interest therein, or (ii) sublease or loan the Equipment or permit it to be used by anyone other than Lessee or Lessee's qualified employees or agents.

b. Subject to the foregoing, this Lease inures to the benefit of and is binding upon the successors and assigns of the parties hereto.

6. **General Indemnity**

Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, proceedings, expenses, damages or liabilities, including attorneys' fees, arising in connection with the Equipment, including, without limitation, its manufacture, selection, purchase, delivery, possession, use, operation or return and the recovery of claims under insurance policies thereon.

#C56-13-03454

### 7.  Assignment of Manufacturers' Warranties, etc.

a.   Lessor hereby assigns, transfers and conveys to Lessee all of Lessor's right, title and interest, if any, in and to all claims now or hereafter arising in respect of the Equipment against any manufacturer, vendor or supplier thereof, including all claims from time to time arising under any warranty or indemnity provision of any contract with any such manufacturer, vendor or supplier relating to the manufacture or sale of the Equipment; provided that the foregoing assignment shall terminate upon the end of the Term.

b.   Lessor hereby agrees to do all such acts and things, including the giving of any required notices to manufacturers, vendors or suppliers, as may be reasonably requested by the Lessee, in order to give effect to the foregoing assignment, transfer and conveyance to Lessee.

### 8.  Governing Law.

This Lease is made in and shall be governed by and construed in accordance with the laws of the State of California as applied to contracts entered into in 2013.

### 9.  Subordination.

a.   Lessee hereby acknowledges and agrees that (i) it is not a "lessee in the ordinary course of business" under Section 9321 of the California Uniform Commercial Code (or of the Uniform Commercial Code as in effect in such jurisdiction as Lessee's leasehold interest in and under this Lease is governed by reason of mandatory provisions of law), and (ii) its leasehold interest in and under this Lease is and shall remain junior, subordinated and inferior in every respect to the security interests granted to Apple pursuant to the Secured Guaranty.

b.   Lessee hereby acknowledges and agrees that, for purposes of any party obtaining relief from the automatic stay under section 362 of title 11 of the United States Code (11 U.S.C. § 362 (2012), as may be amended), "adequate protection" shall consist exclusively of the continued performance of Lessee's obligations under the MDSA, SOW and the Prepayment Agreement.

-4-

#C56-13-03454

10. **Miscellaneous.**

a.  This Lease, together with the repayment schedule set forth in the Loan Agreement, constitutes the entire agreement between Lessor and Lessee with respect to the subject matter hereof.

b.  The Lease shall not be amended, altered or changed except by written agreement signed by the parties hereto, with the prior written consent of Apple, which shall be a third party beneficiary of this Lease.

c.  Waiver by Lessor of any provision hereof in one instance shall not constitute a waiver as to any other instance.

The parties hereto have executed this Lease effective as of the date first stated above.

**GT Advanced Equipment Holding LLC**

By: _____

Title: _____

Date: _____

**GTAT Corporation**

By: _____

Title: _____

Date: _____

-5-