Confidential
#C56-13-03458

6.9 Do you propose to operate any of the following types of equipment, or any other equipment requiring an air emissions permit? Existing tenants should specify any such equipment being operated in, on or about the Premises.

_____ Spray booth(s) _____ Incinerator(s)

_____ Dip tank(s) _____ Other (Please describe)

_____ Drying oven(s) _____ No Equipment Requiring Air Permits

If yes, please describe: ______________________________

6.10 Please describe (and submit copies of with this Hazardous Materials Disclosure Certificate) any reports you have filed in the past thirty-six months with any governmental or quasi-governmental agencies or authorities related to air discharges or clean air requirements and any such reports which have been issued during such period by any such agencies or authorities with respect to you or your business operations.

7. HAZARDOUS MATERIALS DISCLOSURES

7.11 Has your company prepared or will it be required to prepare a Hazardous Materials management plan ("**Management Plan**") or Hazardous Materials Business Plan and Inventory ("**Business Plan**") pursuant to Fire Department or other governmental or regulatory agencies' requirements? Existing tenants should indicate whether or not a Management Plan is required and has been prepared.

Yes ☐ No ☐

If yes, attach a copy of the Management Plan or Business Plan. Existing tenants should attach a copy of any required updates to the Management Plan or Business Plan.

8. ENFORCEMENT ACTIONS AND COMPLAINTS

8.12 With respect to Hazardous Materials or Environmental Laws, has your company ever been subject to any agency enforcement actions, administrative orders, or consent decrees or has your company received requests for information, notice or demand letters, or any other inquiries regarding its operations? Existing tenants should indicate whether or not any such actions, orders or decrees have been, or are in the process of being, undertaken or if any such requests have been received.

Yes ☐ No ☐

If yes, describe the actions, orders or decrees and any continuing compliance obligations imposed as a result of these actions, orders or decrees and also describe any requests, notices or demands, and attach a copy of all such documents. Existing tenants should describe and attach a copy of any new actions, orders, decrees, requests, notices or demands not already delivered to Landlord pursuant to the provisions of Article 5 of the Lease.

Confidential
#C56-13-03458

8.13 Have there ever been, or are there now pending, any lawsuits against your company regarding any environmental or health and safety concerns?

Yes ☐ No ☐

If yes, describe any such lawsuits and attach copies of the complaint(s), cross-complaint(s), pleadings and other documents related thereto as requested by Landlord. Existing tenants should describe and attach a copy of any new complaint(s), cross-complaint(s), pleadings and other related documents not already delivered to Landlord pursuant to the provisions of Article 5 of the Lease.

8.14 Have there been any problems or complaints from adjacent tenants, owners or other neighbors at your company's current facility with regard to environmental or health and safety concerns? Existing tenants should indicate whether or not there have been any such problems or complaints from adjacent tenants, owners or other neighbors at, about or near the Premises and the current status of any such problems or complaints.

Yes ☐ No ☐

If yes, please describe. Existing tenants should describe any such problems or complaints not already disclosed to Landlord under the provisions of the signed Lease Agreement and the current status of any such problems or complaints.

9. PERMITS AND LICENSES

9.15 Attach copies of all permits and licenses issued to your company with respect to its proposed operations in, on or about the Premises, including, without limitation, any Hazardous Materials permits, wastewater discharge permits, air emissions permits, and use permits or approvals. Existing tenants should attach copies of any new permits and licenses as well as any renewals of permits or licenses previously issued.

As used herein, "**Hazardous Materials**" shall mean and include any substance that is or contains (a) any "hazardous substance" as now or hereafter defined in § 101(14) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("**CERCLA**") (42 U.S.C. § 9601 *et seq.*) or any regulations promulgated under CERCLA; (b) any "hazardous waste" as now or hereafter defined in the Resource Conservation and Recovery Act, as amended ("**RCRA**") (42 U.S.C. § 6901 *et seq.*) or any regulations promulgated under RCRA; (c) any substance now or hereafter regulated by the Toxic Substances Control Act, as amended ("**TSCA**") (15 U.S.C. § 2601 *et seq.*) or any regulations promulgated under TSCA; (d) petroleum, petroleum by-products, gasoline, diesel fuel, or other petroleum hydrocarbons; (e) asbestos and asbestos-containing material, in any form, whether friable or non-friable; (f) polychlorinated biphenyls; (g) lead and lead-containing materials; or (h) any additional substance,

material or waste (i) the presence of which on or about the Premises (A) requires reporting, investigation or remediation under any Environmental Laws (as hereinafter defined), (B) causes or threatens to cause a nuisance on the Premises or any adjacent property or poses or threatens to pose a hazard to the health or safety of persons on the Premises or any adjacent property, or (C) which, if it emanated or migrated from the Premises, could constitute a trespass, or (ii) which is now or is hereafter classified or considered to be hazardous or toxic under any Environmental Laws; and "**Environmental Laws**" shall mean and include (a) CERCLA, RCRA and TSCA; and (b) any other federal, state or local laws, ordinances, statutes, codes, rules, regulations, orders or decrees now or hereinafter in effect relating to (i) pollution, (ii) the protection or regulation of human health, natural resources or the environment, (iii) the treatment, storage or disposal of Hazardous Materials, or (iv) the emission, discharge, release or threatened release of Hazardous Materials into the environment.

The undersigned hereby acknowledges and agrees that this Hazardous Materials Disclosure Certificate is being delivered to Landlord in connection with the evaluation of a Lease Agreement and, if such Lease Agreement is executed, will be attached thereto as an exhibit. The undersigned further acknowledges and agrees that if such Lease Agreement is executed, this Hazardous Materials Disclosure Certificate will be updated from time to time in accordance with Section 5.1 of the Lease. The undersigned further acknowledges and agrees that Landlord and its partners, lenders and representatives may, and will, rely upon the statements, representations, warranties, and certifications made herein and the truthfulness thereof in entering into the Lease Agreement and the continuance thereof throughout the term, and any renewals thereof, of the Lease Agreement. I [print name] _______________, acting with full authority to bind the (proposed) Tenant and on behalf of the (proposed) Tenant, certify, represent and warrant that the information contained in this certificate is true and correct.

(PROSPECTIVE) TENANT:

______________________________,
a ______________________________

By: ______________________________

Title: ______________________________

Date: ______________________________

## EXHIBIT F-1

### Minimum Tenant Insurance Requirements

1. Tenant shall obtain and maintain in full force and effect, at its own cost and expense, during the term of the Lease and after termination as may be specified below, the following minimum types and limits of insurance and any other insurance required by law, regulation or orders in the State. Such insurance shall be maintained with reputable and solvent insurance companies having, where available, an A.M. Best's insurance rating of A-VII or better or a comparable financial rating from a reputable rating bureau, and lawfully authorized to do business in the State, and will comply with all those requirements as stated herein. In no way do these minimum insurance requirements limit the liability assumed elsewhere in this Lease, including but not limited to Tenant's defense and indemnity obligations.

2. Minimum Insurance Requirements.

(i) Commercial General Liability insurance, including coverage for bodily injury, property damage, personal and advertising injury, products liability, completed operations liability, premises and operations liability (including explosion, collapse, and underground hazard) and contractual liability and including severability of interests provisions. Such insurance must have limits of not less than $1,000,000 per occurrence and $2,000,000 in the annual aggregate. Such insurance must include Landlord Parties as additional insureds for liabilities falling within Tenant's indemnity obligations pursuant to the Lease.

(ii) Workers' Compensation insurance with statutory limits, as required by any state, territory, province or nation having jurisdiction over Tenant's employees, and Employer's Liability insurance with limits not less than $1,000,000.

(iii) Automobile Liability insurance covering any owned, non-owned or hired vehicles used by Tenant in connection with the Premises, in compliance with all statutory requirements and with limits of not less than $1,000,000 for bodily injury and property damage.

(vi) Umbrella/Excess Liability insurance, on a follow form basis, providing coverage excess of the Commercial General Liability, Employer's Liability and Automobile Liability insurance, with limits of not less than $20,000,000 per occurrence and in the annual aggregate. Such insurance must include Landlord Parties as additional insureds for liabilities falling within Tenant's indemnity obligations pursuant to the Lease.

(v) Crime/Employee Dishonesty/Fidelity insurance covering the dishonest acts of Tenant's employees and agents, acting alone or in collusion with others, and including third party coverage, with Landlord, its subsidiaries and affiliates included as a loss payees, with limits of not less than $1,000,000.

(vi) Property Insurance providing coverage on a full replacement cost basis on all property owned by Tenant or for which Tenant is legally liable, or which is installed by or on behalf of Tenant, and which is located within the Premises, including, without limitation, fittings, installations, alterations, additions, partitions, fixtures, Furnaces and anything in the nature of a leasehold improvement with respect to all risks of physical loss. Landlord, its subsidiaries and affiliates shall be included on such coverage as loss payees, as their interests may appear.

3. All insurance to be provided by Tenant shall be designated as primary to and non-contributory with any and all insurance maintained by or otherwise afforded to Landlord Parties. Except to the extent prohibited by law, and except with respect to Tenant's crime/employee dishonesty/fidelity and property insurance, Tenant shall require its insurers to waive all rights of recovery from or subrogation against Landlord Parties and their respective insurers, but only to the extent of liabilities falling within Tenant's

indemnity obligations pursuant to the terms of this Lease. Tenant, by endorsement or otherwise, shall ensure that its property insurance policy contains a waiver of subrogation against Landlord in accordance with the terms of Section 10.3 of this Lease.

4. At the time this Lease is executed, or within a reasonable time thereafter, and within a reasonable time after coverage is renewed or replaced, Tenant will deliver to Landlord evidence that the foregoing coverages required from Tenant are in place, at the Landlord Notice Address.

Landlord's receipt or acceptance of evidence of coverage that does not comply with these requirements, or Tenant's failure to provide evidence of coverage, shall not constitute a waiver or modification of the insurance requirements as set forth herein. In the event of cancellation of coverage, Tenant shall promptly replace coverage so that no lapse in insurance occurs. All deductibles and self-insured retentions are to be paid by Tenant, except as otherwise specifically provided in this Lease.

Confidential
#C56-13-03458

EXHIBIT F-2

Landlord Insurance Requirements

1. Landlord shall obtain and maintain in full force and effect, at its own cost and expense, during the term of the Lease, the following minimum types and limits of insurance and any other insurance required by law, regulation or orders in the State. Such insurance shall be maintained with reputable and solvent insurance companies having, where available, an A.M. Best's insurance rating of A-VII or better or a comparable financial rating from a reputable rating bureau, and lawfully authorized to do business in the State, and will comply with all those requirements as stated herein; provided, however, that nothing contained herein shall prohibit Landlord from providing any or all of the insurance on a self-insured basis. In no way do these minimum insurance requirements limit the liability assumed elsewhere in this Lease, including but not limited to Landlord's defense and indemnity obligations.

2. Minimum Insurance Requirements.

(i) Commercial General Liability insurance, including coverage for bodily injury, property damage, personal and advertising injury, and contractual liability and including severability of interests provisions. Such insurance must have limits of not less than $1,000,000 per occurrence and $2,000,000 in the annual aggregate.

(ii) Workers' Compensation insurance with statutory limits, as required by any state, territory, province or nation having jurisdiction over Landlord's employees, and Employer's Liability insurance with limits not less than $1,000,000.

(iii) Automobile Liability insurance covering any owned, non-owned or hired vehicles used by Landlord in connection with the Premises, in compliance with all statutory requirements and with limits of not less than $1,000,000 for bodily injury and property damage.

(iv) Property Insurance providing coverage on a full replacement cost basis on the Building and the machinery, boilers and equipment contained within the Building (but excluding the property that Tenant is required to insure pursuant to Exhibit F-1), on an extended perils basis, including fire, lighting, vandalism, and malicious mischief.

(v) Such other insurance as Landlord deems reasonable and appropriate given the intended use of the Premises and its location.

Landlord, by endorsement or otherwise, shall ensure that its property insurance policy contains a waiver of subrogation against Tenant in accordance with the terms of Section 10.3 of this Lease.

BLANK PAGE

LIMITED LIABILITY COMPANY AGREEMENT
OF
GT ADVANCED EQUIPMENT HOLDING LLC

This Limited Liability Company Agreement (together with the schedules attached hereto, this "Agreement") of GT Advanced Equipment Holding LLC (the "Company"), is entered into by GTAT Corporation, a Delaware corporation, as the sole equity member (the "Member"), and Michelle A. Dreyer and Julia A. McCullough, as the Independent Managers (as defined on Schedule A hereto). Capitalized terms used and not otherwise defined herein have the meanings set forth on Schedule A hereto.

The Member, by execution of this Agreement, hereby forms the Company as a limited liability company pursuant to and in accordance with the Delaware Limited Liability Company Act (6 Del. C. § 18-101 et seq.), as amended from time to time (the "Act"), and this Agreement, and the Member and the Independent Managers hereby agree as follows:

Section 1. Name.

The name of the limited liability company formed hereby is GT Advanced Equipment Holding LLC.

Section 2. Principal Business Office.

The principal business office of the Company shall be located at 243 Daniel Webster Highway, Merrimack, New Hampshire or such other location as may hereafter be determined by the Member.

Section 3. Registered Office.

The address of the registered office of the Company in the State of Delaware is c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

Section 4. Registered Agent.

The name and address of the registered agent of the Company for service of process on the Company in the State of Delaware are The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

Section 5. Members.

(a) The mailing address of the Member is set forth on Schedule B attached hereto. The Member was admitted to the Company as a member of the Company upon its execution of a counterpart signature page to this Agreement.

(b) Subject to Section 9(j), the Member may act by written consent.

(c) Upon the occurrence of any event that causes the Member to cease to be a member of the Company (other than upon continuation of the Company without dissolution upon (i) an assignment by the Member of all of its limited liability company interest in the Company and the admission of the transferee pursuant to Sections 21 and 23, or (ii) the resignation of the Member and the admission of an additional member of the Company pursuant to Sections 22 and 23, or (iii) the execution by any pledgee of the membership interests in the Company and such pledgee becoming Member), each Person acting as an Independent Manager pursuant to Section 10 shall, without any action of any Person and simultaneously with the Member ceasing to be a member of the Company, automatically be admitted to the Company as a Special Member and shall continue the Company without dissolution. No Special Member may resign from the Company or transfer its rights as Special Member unless (i) a successor Special Member has been admitted to the Company as Special Member by executing a counterpart to this Agreement, and (ii) such successor has also accepted its appointment as Independent Manager pursuant to Section 10; provided, however, the Special Members shall automatically cease to be members of the Company upon the admission to the Company of a substitute Member. Each Special Member shall be a member of the Company that has no interest in the profits, losses and capital of the Company and has no right to receive any distributions of Company assets. Pursuant to Section 18-301 of the Act, a Special Member shall not be required to make any capital contributions to the Company and shall not receive a limited liability company interest in the Company. A Special Member, in its capacity as Special Member, may not bind the Company. Except as required by any mandatory provision of the Act, each Special Member, in its capacity as Special Member, shall have no right to vote on, approve or otherwise consent to any action by, or matter relating to, the Company, including, without limitation, the merger, consolidation or conversion of the Company. In order to implement the admission to the Company of each Special Member, each Person acting as an Independent Manager pursuant to Section 10 shall execute a counterpart to this Agreement. Prior to its admission to the Company as Special Member, each Person acting as an Independent Manager pursuant to Section 10 shall not be a member of the Company.

Section 6. Certificates.

(a) Certificate of Formation. Hoil Kim is hereby designated as an "authorized person" within the meaning of the Act, and has executed, delivered and filed the Certificate of Formation of the Company with the Secretary of State of the State of Delaware. Upon the filing of the Certificate of Formation with the Secretary of State of the State of Delaware, his powers as an "authorized person" ceased, and the Member thereupon became the designated "authorized person" and shall continue as the designated "authorized person" within the meaning of the Act. The Member or an Officer shall execute, deliver and file any other certificates (and any amendments and/or restatements thereof) necessary for the Company to qualify to do business in Arizona and in any other jurisdiction in which the Company may wish to conduct business. The existence of the Company as a separate legal entity shall continue until cancellation of the Certificate of Formation as provided in the Act.

(b) Certificates of Membership Interests; Article 8. The membership interests in the Company shall be securities governed by Article 8 of the Delaware Uniform Commercial Code, and represented by certificates in the form of Exhibit A hereto. The Member shall have a certificate of its membership interests in the Company.

Section 7. Purpose.

(a) The purpose to be conducted or promoted by the Company is to engage in the following activities:

(i) to engage in the business of owning the Equipment;

(ii) to enter into, perform and comply with the Loan Agreement;

(iii) to enter into, perform and comply with the Equipment Lease;

(iv) to enter into, perform and comply with the Security Agreement;

(v) to distribute to its members any income, revenues, or other cash flow arising from or relating to the Company's assets; and

(vi) to engage in any lawful act or activity and to exercise any powers permitted to limited liability companies organized under the laws of the State of Delaware that are related or incidental to and necessary, convenient or advisable for the accomplishment of the above-mentioned purposes.

(b) The Company is hereby authorized to execute, deliver and perform, and the Member or any Manager or Officer on behalf of the Company are hereby authorized to execute and deliver, the Basic Documents and all documents, agreements, certificates, or financing statements contemplated thereby or related thereto, all without any further act, vote or approval of any Member, Manager, Officer or other Person notwithstanding any other provision of this Agreement. The foregoing authorization shall not be deemed a restriction on the powers of the Member or any Manager or Officer to enter into other agreements on behalf of the Company.

Section 8. Powers.

Subject to Section 9(j), the Company, and the Board of Managers and the Officers of the Company on behalf of the Company, (i) shall have and exercise all powers necessary, convenient or incidental to accomplish its purposes as set forth in Section 7 and (ii) shall have and exercise all of the powers and rights conferred upon limited liability companies formed pursuant to the Act.

Section 9. Management.

(a) Board of Managers. Subject to Section 9(j), the business and affairs of the Company shall be managed by or under the direction of a Board of one or more Managers designated by the Member. Subject to Section 10, the Member may determine at any time in its sole and absolute discretion the number of Managers to constitute the Board. The authorized number of Managers may be increased or decreased by the Member at any time in its sole and absolute discretion, upon notice to all Managers, and subject in all cases to Section 10. The initial number of Managers shall be five, two of which shall be Independent Managers pursuant to Section 10. Each Manager elected, designated or appointed by the Member shall hold office until a successor is elected and qualified or until such Manager's earlier death, resignation, expulsion or removal. Each Manager shall execute and deliver the Management Agreement. Managers need not be a Member. The initial Managers designated by the Member are listed on Schedule D hereto.

(b) Powers. Subject to Section 9(j), the Board of Managers shall have the power to do any and all acts necessary, convenient or incidental to or for the furtherance of the purposes described herein, including all powers, statutory or otherwise. Subject to Section 7 and the other subsections of this Section 9, the Board of Managers has the authority to bind the Company.

(c) Meeting of the Board of Managers. The Board of Managers of the Company may hold meetings, both regular and special, within or outside the State of Delaware. Regular meetings of the Board may be held without notice at such time and at such place as shall from time to time be determined by the Board. Special meetings of the Board may be called by the President on not less than one day's notice to each Manager by telephone, facsimile, mail, telegram or any other means of communication, and special meetings shall be called by the President or Secretary in like manner and with like notice upon the written request of any one or more of the Managers.

(d) Quorum Acts of the Board. At all meetings of the Board, a majority of the Managers shall constitute a quorum for the transaction of business and, except as otherwise provided in any other provision of this Agreement, the act of a majority of the Managers present at any meeting at which there is a quorum shall be the act of the Board. If a quorum shall not be present at any meeting of the Board, the Managers present at such meeting may adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present. Any action required or permitted to be taken at any meeting of the Board or of any committee thereof may be taken without a meeting if all members of the Board or committee, as the case may be, consent thereto in writing, and the writing or writings are filed with the minutes of proceedings of the Board or committee, as the case may be; provided, however, that no such written consent of any Independent Managers shall be required for the validity of such action by the Board unless, pursuant to the provisions of 9(j)(ii) and (9)(j)(iii) such action would be invalid in the absence of the affirmative vote or consent of such Independent Managers.

(e) Electronic Communications. Members of the Board, or any committee designated by the Board, may participate in meetings of the Board, or any committee, by means of telephone conference or similar communications equipment that allows all Persons participating in the meeting to hear each other, and such participation in a meeting shall constitute presence in Person at the meeting. If all the participants are participating by telephone conference or similar communications equipment, the meeting shall be deemed to be held at the principal place of business of the Company.

(f) Committees of Managers.

(i) The Board may, by resolution passed by a majority of the whole Board, designate one or more committees, each committee to consist of one or more of the Managers of the Company. The Board may designate one or more Managers as alternate members of any committee, who may replace any absent or disqualified member at any meeting of the committee.

(ii) In the absence or disqualification of a member of a committee, the member or members thereof present at any meeting and not disqualified from voting, whether or not such members constitute a quorum, may unanimously appoint another member of the Board to act at the meeting in the place of any such absent or disqualified member.

(iii) Any such committee, to the extent provided in the resolution of the Board, and subject to, in all cases, Sections 9(j) and 10, shall have and may exercise all the powers and authority of the Board in the management of the business and affairs of the Company. Such committee or committees shall have such name or names as may be determined from time to time by resolution adopted by the Board. Each committee shall keep regular minutes of its meetings and report the same to the Board when required.

(g) Compensation of Managers; Expenses. The Board shall have the authority to fix the compensation of Managers. The Managers may be paid their expenses, if any, of attendance at meetings of the Board, which may be a fixed sum for attendance at each meeting of the Board or a stated salary as Manager. No such payment shall preclude any Manager from serving the Company in any other capacity and receiving compensation therefor. Members of special or standing committees may be allowed like compensation for attending committee meetings.

(h) Removal of Managers. Unless otherwise restricted by law, any Manager or the entire Board of Managers may be removed or expelled, with or without cause, at any time by the Member, and, subject to Section 10, any vacancy caused by any such removal or expulsion may be filled by action of the Member.

(i) Managers as Agents. To the extent of their powers set forth in this Agreement and subject to Section 9(j), the Managers are agents of the Company for the purpose of the Company's business, and the actions of the Managers taken in accordance with such powers set

forth in this Agreement shall bind the Company. Notwithstanding the last sentence of Section 18-402 of the Act, except as provided in this Agreement or in a resolution of the Managers, a Manager may not bind the Company.

(j) Limitations on the Company's Activities.

(i) This Section 9(j) is being adopted in order to qualify the Company as a "special purpose" entity.

(ii) The Member shall not amend, alter, change or repeal the definition of "Independent Manager" or Sections 5(c), 6(b), 7, 8, 9, 10, 16, 20, 21, 22, 23, 24, 25, 26 or 31 or Schedule A of this Agreement without the unanimous written consent of the Board (including all Independent Managers). Subject to this Section 9(j), the Member reserves the right to amend, alter, change or repeal any provisions contained in this Agreement in accordance with Section 31.

(iii) Notwithstanding any other provision of this Agreement and any provision of law that otherwise so empowers the Company, the Member, the Board, any Officer or any other Person, so long as any Obligation is outstanding, neither the Member nor the Board nor any Officer nor any other Person shall be authorized or empowered on behalf of the Company to, nor shall they permit the Company to, and the Company shall not, without the prior unanimous written consent of the Member and the Board (including all Independent Managers), take any Material Action; provided, however, that, so long as any Obligation is outstanding, the Board may not vote on, or authorize the taking of, any Material Action, unless there are at least two Independent Managers then serving in such capacity.

(iv) The Board and the Member shall cause the Company to do or cause to be done all things necessary to preserve and keep in full force and effect its existence, rights (charter and statutory) and franchises. The Board also shall cause the Company to:

(A) at all times maintain, preserve and protect all of its assets and properties used or useful in the conduct of its business, including all licenses, permits, charters and registrations;

(B) transact business only in the name of GT Advanced Equipment Holding LLC;

(C) pay, perform and discharge or cause to be paid, performed and discharged promptly all charges and claims payable by it, including (i) all federal, state, provincial, county, city, municipal, local, foreign or other governmental taxes; (ii) all levies,

assessments, charges, or claims of any governmental entity or any claims of statutory lienholders, the nonpayment of which could give rise by operation of law to a lien on the assets or property of the Company; and (iii) lawful claims for labor, materials, supplies and services or otherwise before any thereof shall become past due;

(D) maintain adequate capital for the normal obligations reasonably foreseeable for a business of the Company's size and character in light of the Company's contemplated business operations;

(E) maintain its own deposit account or accounts, separate from those of the Member and its other subsidiaries, with commercial banking institutions and ensure that its funds will not be used for other than its Company uses, nor will such funds be commingled with the funds of the Member and its other subsidiaries;

(F) maintain a separate address from the address of the Member and its other subsidiaries, or to the extent the Company may have offices in the same location as the Member or its other subsidiaries, maintain a fair and appropriate allocation of additional, incremental overhead costs among them, with each such entity bearing its fair share of such expense;

(G) maintain the Company's assets as well as the Company's books and records, operating statements and other Company documents separate from those of the Member and its other subsidiaries and ensure that the Company's assets will not be listed as assets on the financial statements of any other person except as required by generally accepted accounting principles, consistently applied;

(H) maintain the Company's assets in such a manner that such assets, without undue burden, may be segregated, ascertained or identified separately from the assets of any other person;

(I) maintain and issue separate financial statements prepared not less frequently than quarterly and prepared in accordance with generally accepted accounting principles, consistently applied (except for the omission of certain footnotes and other presentation items required by the generally accepted accounting principles, consistently applied, with respect to audited financial statements), which financial statements need not be separately audited or reviewed by an independent accounting firm;

(J) file and pay all federal, state, provincial, county, city, municipal, local, foreign or other governmental taxes separately from those of the Member and its other subsidiaries, which such tax returns need not be separately prepared or reviewed;

(K) maintain a sufficient number of employees to conduct the Company's contemplated business operations (which may be none), subject to any outsourcing by the Company of such business operations to third parties;

(L) observe all necessary, appropriate and customary limited liability company formalities, including, but not limited to, holding all regular meetings appropriate to authorize all limited liability company action, keeping separate and accurate minutes of its meetings, passing all resolutions or consents necessary to authorize actions taken or to be taken, and maintaining accurate and separate books, records and accounts, including, but not limited to, payroll and intercompany transaction accounts, to the extent applicable;

(M) refrain from using the stationery of any of the Member and its other subsidiaries and shall instead make all written communications in its own name; *provided* that in the event that any Affiliate of the Member conducts business on behalf of the Company, such agency relationships shall be fully disclosed to applicable third parties when acting in such capacity;

(N) require all common officers of the Company and the Member (or any other Affiliate of the Company or the Member) to expressly identify whether such officer is acting on behalf of the Company or the Member; and

(O) conduct all its business in its own name and use its best efforts to avoid the appearance that it is conducting business on behalf of any other Affiliate of the Member.

Failure of the Company, or the Member or Board on behalf of the Company, to comply with any of the foregoing covenants or any other covenants contained in this Agreement shall not affect the status of the Company as a separate legal entity or the limited liability of the Member or the Managers.

(v) The Board shall not cause or permit the Company to:

(A) except as permitted by the Basic Documents, (i) engage in any business other than as provided in this Agreement, (ii) acquire or maintain any material assets other than the Equipment and those

assets otherwise related to the Equipment, (iii) make any change in its capital structure, (iv) amend, waive or modify any term or provision of this Agreement, (v) make any change to its name indicated on the records of the Secretary of State of the State of Delaware, or (vi) change its jurisdiction of organization;

(B) fail to correct any known misunderstanding regarding the Company's separate identity from the Member or any other person;

(C) identify the Member, or any Affiliate of the Member, as a division or segment of the Company, or identify the Company as a division of any other person;

(D) sell, transfer, convey, assign, or otherwise dispose of, any right to receive income in respect of, any of its properties or other assets or any of its limited liability company interests (whether in a public or a private offering or otherwise), or under any other agreement except as otherwise expressly permitted by the Basic Documents;

(E) create, incur, assume or permit to exist any claim of ownership or lien on or with respect to its properties or assets (whether now owned or hereafter acquired) except as permitted by the Basic Documents;

(F) become a party to any material agreement, note, indenture or instrument other than (i) the Basic Documents and any other documents permitted by the Basic Documents, (ii) any agreements necessary to establish a bank account in its own name, and (iii) any new agreements or amendments permitted by, or in furtherance of, the Basic Documents;

(G) except as permitted by the Basic Documents, directly or indirectly, by operation of law or otherwise, (i) acquire any equity interests in any partnership, joint venture, unincorporated organization, trust, association, corporation (including a business trust), limited liability company, institution, public benefit corporation, joint stock company, or any other entity of whatever nature, or (ii) merge with, consolidate with, acquire all or substantially all of the assets or capital stock of, or otherwise combine with or acquire, any partnership, corporation, limited liability company, or any other entity of whatever nature;

(H) except as permitted by the Basic Documents, make any investment in, or make or accrue loans or advances of money to, any Person,

including any manager or officer or employee of the Company, the Member or any other subsidiary of the Member, through the direct or indirect lending of money, holding of securities or otherwise;

(I) except as permitted by the Basic Documents, at any time declare any distributions, repurchase any limited liability company interest, return any capital, or make any other payment or distribution of cash or other property or assets in respect of a limited liability company interest (for the purposes of clarification, the Company may distribute, promptly after receipt, $7,200,000 received under the Loan Agreement as contemplated by the Basic Documents to the Member); and

(J) except as permitted by the Basic Documents, create, incur, assume or permit to exist any indebtedness or liabilities, except for taxes and trade payables incurred in the ordinary course of business.

Section 10. Independent Managers.

As long as any Obligation is outstanding, the Member shall cause the Company at all times to have at least two Independent Managers who will be appointed by the Member. To the fullest extent permitted by law, including Section 18-1101(c) of the Act, and notwithstanding any duty otherwise existing at law or in equity, the Independent Managers shall consider only the interests of the Company, including its respective creditors, in acting or otherwise voting on the matters referred to in Section 9(j)(iii). Except as provided in the immediately preceding sentence of this Section 10, the Independent Managers shall not have any fiduciary duties to the Member or any other Person bound by this Agreement; provided, however, the foregoing shall not eliminate the implied contractual covenant of good faith and fair dealing. To the fullest extent permitted by law, including Section 18-1101(e) of the Act, an Independent Manager shall not be liable to the Company, the Member or any other Person bound by this Agreement for breach of contract or breach of duties (including fiduciary duties), unless the Independent Manager acted in bad faith or engaged in willful misconduct. No resignation or removal of an Independent Manager, and no appointment of a successor Independent Manager, shall be effective until such successor (i) shall have accepted his or her appointment as an Independent Manager by a written instrument, which may be a counterpart signature page to the Management Agreement, and (ii) shall have executed a counterpart to this Agreement as required by Section 5(c). In the event of a vacancy in the position of Independent Manager, the Member shall, as soon as practicable, appoint a successor Independent Manager. All right, power and authority of the Independent Managers shall be limited to the extent necessary to exercise those rights and perform those duties specifically set forth in this Agreement. No Independent Manager shall at any time serve as trustee in bankruptcy for any Affiliate of the Company.

Section 11. Officers.

(a) Officers. The initial Officers of the Company shall be designated by the Member. The additional or successor Officers of the Company shall be chosen by the Board and shall consist of at least a President, a Secretary and a Treasurer. The Board of Managers may also choose one or more Vice Presidents, Assistant Secretaries and Assistant Treasurers. Any number of offices may be held by the same person. The Board may appoint such other Officers and agents as it shall deem necessary or advisable who shall hold their offices for such terms and shall exercise such powers and perform such duties as shall be determined from time to time by the Board. The salaries of all Officers and agents of the Company shall be fixed by or in the manner prescribed by the Board. The Officers of the Company shall hold office until their successors are chosen and qualified. Any Officer may be removed at any time, with or without cause, by the affirmative vote of a majority of the Board. Any vacancy occurring in any office of the Company shall be filled by the Board. The initial Officers of the Company designated by the Member are listed on Schedule E hereto.

(b) President. The President shall be the chief executive officer of the Company, shall preside at all meetings of the Board, shall be responsible for the general and active management of the business of the Company and shall see that all orders and resolutions of the Board are carried into effect. The President or any other Officer authorized by the President or the Board shall execute all bonds, mortgages and other contracts, except: (i) where required or permitted by law or this Agreement to be otherwise signed and executed, including Section 7(b); (ii) where signing and execution thereof shall be expressly delegated by the Board to some other Officer or agent of the Company; and (iii) as otherwise permitted in Section 11(c).

(c) Vice President. In the absence of the President or in the event of the President's inability to act, the Vice President, if any (or in the event there be more than one Vice President, the Vice Presidents in the order designated by the Managers, or in the absence of any designation, then in the order of their election), shall perform the duties of the President, and when so acting, shall have all the powers of and be subject to all the restrictions upon the President. The Vice Presidents, if any, shall perform such other duties and have such other powers as the Board may from time to time prescribe.

(d) Secretary and Assistant Secretary. The Secretary shall be responsible for filing legal documents and maintaining records for the Company. The Secretary shall attend all meetings of the Board and record all the proceedings of the meetings of the Company and of the Board in a book to be kept for that purpose and shall perform like duties for the standing committees when required. The Secretary shall give, or shall cause to be given, notice of all meetings of the Member, if any, and special meetings of the Board, and shall perform such other duties as may be prescribed by the Board or the President, under whose supervision the Secretary shall serve. The Assistant Secretary, or if there be more than one, the Assistant Secretaries in the order determined by the Board (or if there be no such determination, then in order of their election), shall, in the absence of the Secretary or in the event of the Secretary's inability to act, perform the duties and exercise the powers of the Secretary and shall perform such other duties and have such other powers as the Board may from time to time prescribe.

(e) Treasurer and Assistant Treasurer. The Treasurer shall have the custody of the Company funds and securities and shall keep full and accurate accounts of receipts and disbursements in books belonging to the Company and shall deposit all moneys and other valuable effects in the name and to the credit of the Company in such depositories as may be designated by the Board. The Treasurer shall disburse the funds of the Company as may be ordered by the Board, taking proper vouchers for such disbursements, and shall render to the President and to the Board, at its regular meetings or when the Board so requires, an account of all of the Treasurer's transactions and of the financial condition of the Company. The Assistant Treasurer, or if there shall be more than one, the Assistant Treasurers in the order determined by the Board (or if there be no such determination, then in the order of their election), shall, in the absence of the Treasurer or in the event of the Treasurer's inability to act, perform the duties and exercise the powers of the Treasurer and shall perform such other duties and have such other powers as the Board may from time to time prescribe.

(f) Officers as Agents. The Officers, to the extent of their powers set forth in this Agreement or otherwise vested in them by action of the Board not inconsistent with this Agreement, are agents of the Company for the purpose of the Company's business and, subject to Section 9(j), the actions of the Officers taken in accordance with such powers shall bind the Company.

(g) Duties of Board and Officers. Except to the extent otherwise modified herein, each Manager and Officer shall have fiduciary duties identical to those of directors and officers of business corporations organized under the General Corporation Law of the State of Delaware.

Section 12. Limited Liability.

Except as otherwise expressly provided by the Act, the debts, obligations and liabilities of the Company, whether arising in contract, tort or otherwise, shall be the debts, obligations and liabilities solely of the Company, and neither the Member nor the Special Members nor any Manager shall be obligated personally for any such debt, obligation or liability of the Company solely by reason of being a Member, Special Member or Manager of the Company.

Section 13. Capital Contributions.

The Member has contributed to the Company property of an agreed value as listed on Schedule B attached hereto. In accordance with Section 5(c), the Special Members shall not be required to make any capital contributions to the Company.

Section 14. Additional Contributions.

The Member is not required to make any additional capital contribution to the Company. However, the Member may make additional capital contributions to the Company at any time upon the written consent of such Member. To the extent that the Member makes an additional capital contribution to the Company, the Member shall revise Schedule B of this Agreement. The provisions of this Agreement, including this Section 14, are intended to benefit the Member

and the Special Members and, to the fullest extent permitted by law, shall not be construed as conferring any benefit upon any creditor of the Company (other than a Covered Person) (and no such creditor of the Company shall be a third-party beneficiary of this Agreement) and the Member and the Special Members shall not have any duty or obligation to any creditor of the Company to make any contribution to the Company or to issue any call for capital pursuant to this Agreement.

Section 15. Allocation of Profits and Losses.

The Company's profits and losses shall be allocated to the Member.

Section 16. Distributions.

Distributions shall be made to the Member at the times and in the aggregate amounts determined by the Board. Notwithstanding any provision to the contrary contained in this Agreement, the Company shall not be required to make a distribution to the Member on account of its interest in the Company if such distribution would violate the Act or any other applicable law or any Basic Document.

Section 17. Books and Records.

The Board shall keep or cause to be kept complete and accurate books of account and records with respect to the Company's business. The books of the Company shall at all times be maintained by the Board. The Member and its duly authorized representatives shall have the right to examine the Company books, records and documents during normal business hours. The Company, and the Board on behalf of the Company, shall not have the right to keep confidential from the Member any information that the Board would otherwise be permitted to keep confidential from the Member pursuant to Section 18-305(c) of the Act. The Company's books of account shall be kept using the method of accounting determined by the Member. The Company's independent auditor, if any, shall be an independent public accounting firm selected by the Member.

Section 18. Reports.

The Board shall, after the end of each fiscal year, use reasonable efforts to cause the Company's independent accountants, if any, to prepare and transmit to the Member as promptly as possible any such tax information as may be reasonably necessary to enable the Member to prepare its federal, state and local income tax returns relating to such fiscal year.

Section 19. Other Business.

Notwithstanding any duty otherwise existing at law or in equity, the Member, the Special Members and any Officer, Manager, employee or agent of the Company and any Affiliate of the Member or the Special Members may engage in or possess an interest in other business ventures (unconnected with the Company) of every kind and description, independently or with others,

and the Company shall not have any rights in or to such independent ventures or the income or profits therefrom by virtue of this Agreement.

Section 20. Exculpation and Indemnification.

(a) To the fullest extent permitted by applicable law, neither the Member nor the Special Members nor any Officer, Manager, employee or agent of the Company nor any employee, representative, agent or Affiliate of the Member or the Special Members (collectively, the "Covered Persons") shall be liable to the Company or any other Person who is bound by this Agreement for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that a Covered Person shall be liable for any such loss, damage or claim incurred by reason of such Covered Person's gross negligence or willful misconduct.

(b) To the fullest extent permitted by applicable law, a Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Covered Person by reason of such Covered Person's gross negligence or willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this Section 20 by the Company shall be provided out of and to the extent of Company assets only, and the Member and the Special Members shall not have personal liability on account thereof; and provided further, that so long as any Obligation is outstanding, no indemnity payment from funds of the Company (as distinct from funds from other sources, such as insurance) of any indemnity under this Section 20 shall be payable from amounts allocable to any other Person pursuant to the Basic Documents.

(c) To the fullest extent permitted by applicable law, expenses (including reasonable legal fees) incurred by a Covered Person defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in this Section 20.

(d) A Covered Person shall be fully protected in relying in good faith upon the records of the Company and upon such information, opinions, reports or statements presented to the Company by any Person as to matters the Covered Person reasonably believes are within such other Person's professional or expert competence and who has been selected with reasonable care by or on behalf of the Company, including information, opinions, reports or statements as to the value and amount of the assets, liabilities, or any other facts pertinent to the existence and amount of assets from which distributions to the Member might properly be paid.

(e) The provisions of this Agreement, to the extent that they restrict or eliminate the duties and liabilities of a Covered Person to the Company or its members otherwise existing at law or in equity, are agreed by the parties hereto to replace such other duties and liabilities of such Covered Person.

(f) The foregoing provisions of this Section 20 shall survive any termination of this Agreement.

Section 21. Assignments.

(a) If Member desires to: (i) assign in whole or in part its limited liability company interest in the Company, or (ii) undertake a Member Change of Control, then Member or the applicable Affiliate of Member, will provide Apple Inc. written notice thereof promptly upon reaching the determination to do so.

(b) Subject to Section 21(a) and to any provision in the Basic Documents, the Member may assign in whole or in part its limited liability company interest in the Company. Subject to Section 23, the transferee of a limited liability company interest in the Company shall be admitted to the Company as a member of the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement. If the Member transfers all of its limited liability company interest in the Company pursuant to this Section 21, such admission shall be deemed effective immediately prior to the transfer and, immediately following such admission, the transferor Member shall cease to be a member of the Company. Notwithstanding anything in this Agreement to the contrary, any successor to the Member by merger or consolidation in compliance with the Basic Documents shall, without further act, be the Member hereunder, and such merger or consolidation shall not constitute an assignment for purposes of this Agreement and the Company shall continue without dissolution.

Section 22. Resignation.

So long as any Obligation is outstanding, the Member may not resign, except as permitted under the Basic Documents. If the Member is permitted to resign pursuant to this Section 22, an additional member of the Company shall be admitted to the Company upon its execution of an instrument signifying its agreement to be bound by the terms and conditions of this Agreement, which instrument may be a counterpart signature page to this Agreement. Such admission shall be deemed effective immediately prior to the resignation and, immediately following such admission, the resigning Member shall cease to be a member of the Company.

Section 23. Admission of Additional Members.

One or more additional Members of the Company may be admitted to the Company with the written consent of the Member; provided, however, that, notwithstanding the foregoing, so long as any Obligation remains outstanding, no additional Member may be admitted to the Company unless permitted under the Basic Documents.

Section 24. Dissolution.

(a) The Company shall be dissolved, and its affairs shall be wound up upon the first to occur of the following: (i) the termination of the legal existence of the last remaining member of the Company or the occurrence of any other event which terminates the continued membership of the last remaining member of the Company in the Company unless the Company is continued without dissolution in a manner permitted by this Agreement or the Act, (ii) the entry of a decree of judicial dissolution of the Company under Section 18-802 of the Act, or (iii) Member ceases supplying goods to Apple Inc. using the Equipment. Upon the occurrence of any event that causes the last remaining member of the Company to cease to be a member of the Company or that causes the Member to cease to be a member of the Company (other than upon continuation of the Company without dissolution upon (i) an assignment by the Member of all of its limited liability company interest in the Company and the admission of the transferee pursuant to Sections 21 and 23, (ii) the resignation of the Member and the admission of an additional member of the Company pursuant to Sections 22 and 23, or (iii) a pledgee of the membership interests in Company exercises its pledge and becomes the Company's member), to the fullest extent permitted by law, the personal representative of such member is hereby authorized to, and shall, within 90 days after the occurrence of the event that terminated the continued membership of such member in the Company, agree in writing (i) to continue the Company and (ii) to the admission of the personal representative or its nominee or designee, as the case may be, as a substitute member of the Company, effective as of the occurrence of the event that terminated the continued membership of such member in the Company.

(b) Notwithstanding any other provision of this Agreement, the Bankruptcy of the Member or a Special Member shall not cause the Member or Special Member, respectively, to cease to be a member of the Company, and upon the occurrence of such an event, the Company shall continue without dissolution.

(c) Notwithstanding any other provision of this Agreement, each of the Member and the Special Members waives any right it might have to agree in writing to dissolve the Company upon the Bankruptcy of the Member or a Special Member or the occurrence of an event that causes the Member or a Special Member to cease to be a member of the Company.

(d) In the event of dissolution, the Company shall conduct only such activities as are necessary to wind up its affairs (including the sale of the assets of the Company in an orderly manner), and the assets of the Company shall be applied in the manner, and in the order of priority, set forth in Section 18-804 of the Act.

(e) The Company shall terminate when (i) all of the assets of the Company, after payment of or due provision for all debts, liabilities and obligations of the Company shall have been distributed to the Member in the manner provided for in this Agreement and (ii) the Certificate of Formation shall have been canceled in the manner required by the Act.

Section 25. Waiver of Partition; Nature of Interest.

Except as otherwise expressly provided in this Agreement, to the fullest extent permitted by law, each of the Member and the Special Members hereby irrevocably waives any right or power that such Person might have to institute any proceeding at law or in equity to cause the dissolution, liquidation, winding up or termination of the Company. The Member shall not have any interest in any specific assets of the Company, and the Member shall not have the status of a creditor with respect to any distribution pursuant to Section 16 hereof. The interest of the Member in the Company is personal property.

Section 26. Benefits of Agreement; No Third-Party Rights.

None of the provisions of this Agreement shall be for the benefit of or enforceable by any creditor of the Company or by any creditor of the Member or a Special Member. Nothing in this Agreement shall be deemed to create any right in any Person (other than Covered Persons) not a party hereto, and this Agreement shall not be construed in any respect to be a contract in whole or in part for the benefit of any third Person (other than Covered Persons).

Section 27. Severability of Provisions.

Each provision of this Agreement shall be considered severable and if for any reason any provision or provisions herein are determined to be invalid, unenforceable or illegal under any existing or future law, such invalidity, unenforceability or illegality shall not impair the operation of or affect those portions of this Agreement which are valid, enforceable and legal.

Section 28. Entire Agreement.

This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof.

Section 29. Binding Agreement.

Notwithstanding any other provision of this Agreement, the Member agrees that this Agreement, including, without limitation, Sections 7, 8, 9, 10, 20, 21, 22, 23, 24, 26, 29 and 31, constitutes a legal, valid and binding agreement of the Member, and is enforceable against the Member by the Independent Managers, in accordance with its terms.

Section 30. Governing Law.

This Agreement shall be governed by and construed under the laws of the State of Delaware (without regard to conflict of laws principles), all rights and remedies being governed by said laws.

Section 31. Amendments.

Subject to Section 9(j), this Agreement may be modified, altered, supplemented or amended pursuant to a written agreement executed and delivered by the Member. Notwithstanding anything to the contrary in this Agreement, so long as any Obligation is outstanding, this Agreement may not be modified, altered, supplemented or amended without the consent of the Independent Managers except: (i) to cure any ambiguity or (ii) to convert or supplement any provision in a manner consistent with the intent of this Agreement and the other Basic Documents.

Section 32. Counterparts.

This Agreement may be executed in any number of counterparts, each of which shall be deemed an original of this Agreement and all of which together shall constitute one and the same instrument.

Section 33. Notices.

Any notices required to be delivered hereunder shall be in writing and personally delivered, mailed or sent by telecopy, electronic mail or other similar form of rapid transmission, and shall be deemed to have been duly given upon receipt (a) in the case of the Company, to the Company at its address in Section 2, (b) in the case of the Member, to the Member at its address as listed on Schedule B attached hereto and (c) in the case of either of the foregoing, at such other address as may be designated by written notice to the other party.