"**Landlord's Restoration Estimate**" shall have the meaning set forth in Section 12.3.1.

"**Laws**" means any law, regulation, rule, order, statute or ordinance of any governmental or private entity in effect on or after the Effective Date and applicable to the Premises or the use or occupancy of the Premises, including, without limitation, Environmental Laws and Private Restrictions.

"**Lease**" means this Facility Lease Agreement, as the same may be amended or modified after the Effective Date in accordance with the terms of the Lease.

"**Lease Year**" shall have the meaning set forth in Section 2.1

"**Liens**" shall have the meaning set forth in Section 8.4.

"**Logistics Plan**" shall have the meaning set forth in Section 1.6.

"**Master Developer**" means [***].

"**MDSA**" means that certain Master Development and Supply Agreement, between Apple Inc. and Tenant, dated as of October 31, 2013.

"**MDSA SOW**" means that certain Statement of Work #1 incorporated in the MDSA.

"**Migratory Release**" shall have the meaning set forth in Section 5.3.

"**Notices**" means all notices, demands, requests or consents that may be or are required to be given, demanded or requested by either party to the other as provided in the Lease.

"**Occupant**" means any sublessee, licensee, concessionaire, franchisee or user of all or any portion of the Premises under a sublease, license, concession or franchise or similar agreement approved by Landlord in its sole discretion (unless otherwise permitted herein), whether with the Tenant or any other Person.

"**OFAC**" shall have the meaning set forth in Section 4.5.

"**Outside Delivery Date**" means for each Phase of the Premises, the date set forth on the attached **Exhibit C**, by which the Applicable Delivery Date for such Phase shall have occurred, which date shall be extended one (1) day for each day of Tenant Delay and/or delay by a Force Majeure Event.

"**Outside Closing Date**" means December 30, 2013.

"**P&S**" shall have the meaning set forth in Section 1.1.1.

"**P&S Party**" shall have the meaning set forth in Section 1.1.2.

"**Permitted Use**" means, collectively, the uses of the Premises that are permitted pursuant to Section 4.1.

"**Person**" means any individual, partnership, corporation, limited liability company, trust, unincorporated organization, governmental authority or any other form of entity.

"**Phase**" shall have the meaning set forth in Section 1.2.1.

"**Phasing Plan**" means the document attached as **Exhibit C**, and all schedules attached thereto.

A-5

"**Premises**" shall have the meaning set forth in Section 1.1.

"**Private Restrictions**" means all recorded covenants, conditions and restrictions affecting the Land now in force or which may hereafter be in force with Tenant's consent, which consent shall not be unreasonably withheld, conditioned or delayed; provided that, if it is reasonably necessary to subject the Premises to a covenant, condition, restriction or other encumbrance in order for Landlord to deliver the Premises to Tenant with the Landlord Work completed, Landlord shall notify Tenant of such encumbrance but Tenant shall have no consent right with respect to such encumbrance unless such encumbrance would have a material adverse effect on Tenant's ability to manufacture the Goods at the Premises in accordance with the delivery schedule set forth in the MDSA SOW, or would cause Tenant to incur substantial costs to comply with such encumbrance.

"**Progress Plans**" shall have the meaning set forth in Section 1.2.3.1.

"**Property Taxes**" means any general real property tax, personal property tax, government property lease excise tax, improvement tax, assessment, special assessment, reassessment, in lieu tax, levy, charge, penalty or similar imposition imposed by any authority having the direct or indirect power to tax, including but not limited to: (a) any city, county, state or federal entity; (b) any school, agricultural, lighting, drainage or other improvement or special assessment district; (c) any governmental agency; or (d) any Person having the authority to assess the Premises under any of the Private Restrictions.

"**Punch List**" shall have the meaning set forth in Section 1.3.

"**Punch List Inspections**" shall have the meaning set forth in Section 1.3.

"**Re-entry Costs**" means all costs and expenses Landlord incurs re-entering or reletting all or any part of the Premises, including, without limitation, all costs and expenses Landlord incurs: (a) maintaining or preserving the Premises after an Event of Default; (b) recovering possession of the Premises, removing persons and property from the Premises and storing such property (including court costs and reasonable attorneys' fees); (c) reletting, renovating or altering the Premises; and (d) real estate commissions, advertising expenses and similar expenses paid or payable in connection with reletting all or any part of the Premises.

"**Reminder Notice**" means a written notice from meeting the requirements for notice set forth in this Lease and reminding a party of a specific consent, approval or other action to be taken by such party that was not provided, acted upon or taken by a specified date set forth in this Lease.

"**Removal Alterations**" shall have the meaning set forth in Section 8.3. The Removal Alterations shall not include any of the Landlord Work.

"**Rent**" means, collectively, Base Rent and Additional Rent.

"**Rent Payment Address**" means the Landlord Notice Address, or such other address designated by Landlord in writing.

"**Rent Tax**" means any tax or excise on rent or on other sums or charges required to be paid by Tenant under this Lease, and gross receipts tax, transaction privilege tax or other tax, however described, which is levied or assessed by the United States of America, the state in which the Building is located or any city, municipality or political subdivision thereof, against Landlord in respect to the Base Rent, Additional Rent or other charges payable under this Lease or as a result of Landlord's receipt of such rents or other charges accruing under this Lease.

"**Requesting Entity**" shall have the meaning set forth in Section 16.1.

A-6

"**Roof Solar Array**" means that certain solar module system which is connected to the roof of the Building, but which is excluded from the Premises and is reserved for the sole and exclusive use by Landlord.

"**Seller**" shall have the meaning set forth in Section 1.1.1.

"**Solar Basin**" means the exterior solar basin existing on the Land as of the Effective Date.

"**State**" means the State of Arizona.

"**Structural Alterations**" means any Alterations made by or at the request of Tenant involving either: (a) the Structural Elements; or (b) any hardscaped portion of the Premises outside of the interior of the Building.

"**Structural Elements**" shall have the meaning set forth in Section 7.1.

"**Studies**" shall have the meaning set forth in Section 1.1.2.

"**System Alterations**" means any Alterations that materially affect any of the Building Systems.

"**Tenant**" means the tenant identified in the Lease and such tenant's permitted successors and assigns.

"**Tenant Delay**" means any delay of Landlord's completion of the Landlord Work to the extent such delay is: (a) caused by any act or default on the part of the Tenant or the Tenant's Agents that results in any material interference with the performance by Landlord or Landlord's Agents of the Landlord Work; (b) due to changes requested by Tenant to be made to the Phasing Plan, Base Building Plans and Specifications or the Approved Construction Documents (except to the extent of a request by Tenant to change the Approved Construction Documents to resolve: (i) a failure of the Approved Construction Documents to comply with Law, or (ii) a material inconsistency with the Phasing Plan as agreed to by the parties or pursuant to a final decision in accordance with an Expedited Arbitration); or (c) due to delays by Tenant in approving or objecting to any change proposed by Landlord under, and in accordance with, Section 1.2.4.1 hereof.

"**Tenant Feedback**" shall have the meaning set forth in Section 1.2.3.1.

"**Tenant Group**" means, collectively, all of the following Persons: (a) Tenant; (b) each Occupant; (c) each affiliate of Tenant (including GTAT Equipment) or any Occupant; and (d) any other Person claiming by, through or under Tenant or any Occupant.

"**Tenant Notice Address**" means GTAT Corporation, 243 Daniel Webster Highway, Merrimack, New Hampshire 03054.

"**Tenant Party(ies)**" means Tenant and its officers, directors, partners, shareholders, members employees.

"**Tenant's Agents**" means Tenant's agents, advisors, employees, partners, shareholders, directors, officers, members, members of the Tenant Group, invitees and independent contractors.

"**Tenant's Property**" means, collectively, all of the following, as now or may hereafter exist at the Premises: (a) all trade fixtures of any member of the Tenant Group; (b) all furniture, furnishings, equipment (including equipment having the characteristics of leasehold improvements) and other personal property of any member of the Tenant Group, which includes, without limitation, each of the following, even if it is bolted or otherwise affixed to the floors, walls or other structural portions of the Building, or would otherwise constitute fixtures under applicable law: inventory, racking, shelving,

A-7

Case: 14-11916-CJP Doc #: 463-10 Filed: 11/07/14 Desc: Tab 16 part 6 Page 4 of 20

Page 39 of 55

conveyer equipment, material handling equipment, lifts, cabling, antennae, machinery, air compressors, communication equipment, data cabinets, hoist equipment, plug-in light fixtures, propane tanks, storage racks, trash compactors, signs, desks, tables, movable partitions, vending machines, computer stations, printers, computer software and hardware, and forklifts, and (c) the Furnaces and all related equipment.

"**Term**" shall have the meaning set forth in Section 1.7.

"**Title Commitment**" means the Title Insurance Commitment from [***] to Buyer's Agent, [***].

"**Transfer**" means to assign, delegate or otherwise transfer this Lease or any rights or obligations under this Lease, or to sublet the Premises or any part thereof, or permit the use of the Premises or any part thereof by any persons other than GTAT or its employees, agent and invitees, whether in conjunction with a change in ownership, merger, acquisition, the sale or transfer of all, or substantially all or any part of, GTAT's business or assets, or otherwise, voluntarily, by operation of law, reverse triangular merger or otherwise.

"**Transferrable Warranties**" means to the extent assignable, those warranties, if any, in favor of Landlord relating to the Building and Improvements.

"**Updated Disclosure Certificate**" shall have the meaning set forth in Section 5.1.

"**Utilities**" shall have the meaning set forth in Section 6.1.

"**Utility Service Providers**" shall have the meaning set forth in Section 6.1.

A-8

**EXHIBIT B**
**LEGAL DESCRIPTION OF LAND**

[***]

B-1

**EXHIBIT B-1**

SITE PLAN OF BUILDING AND LAND

[***]

B-2-1

Confidential
#C56-13-03458

**EXHIBIT C**

**PHASING PLAN**

[***]

C-1

EXHIBIT D

FORM OF INITIAL HANDOVER AND ACCEPTANCE CERTIFICATE

THIS HANDOVER AND ACCEPTANCE CERTIFICATE is made as of _____, 201_, by PLATYPUS DEVELOPMENT LLC, a Delaware limited liability company ("Landlord"), and GTAT CORPORATION, a Delaware corporation ("Tenant"), who agree as follows:

1. Landlord and Tenant entered into a Lease Agreement dated _____, 2013, in which Landlord leased to Tenant and Tenant leased from Landlord certain Premises described therein in the building located at 3740 South Signal Butte Road, Mesa, Arizona (the "Building"). All capitalized terms herein are as defined in the Lease.

2. Pursuant to the Lease, Landlord and Tenant agreed to and do hereby confirm the following matters as of the date hereof:

   a. the Commencement Date of the Lease is _____, 201_;

   b. the Expiration Date of the Lease is _____, 20__; (if known)

3. Tenant confirms that as of the date hereof:

   a. Tenant accepts possession of the following Phase(s) of the Premises: _____;

   b. the number of rentable square feet of the Current Demised Premises is _____;

   c. Other than Punch List items, Landlord is not required by the Lease to perform any work or furnish any improvements to the Phases of the Premises set forth in Section 3.a.;

   d. Landlord has fulfilled all of its obligations under the Lease with respect to the Current Demised Premises as of the date hereof; and

   e. the Lease is in full force and effect and has not been modified, altered, or amended, except as follows: _____.

The confirmations of Tenant set forth in Section 3.c and Section 3.d are based solely on Tenant's Punch List Inspection, and nothing in this Handover and Acceptance Certificate shall be deemed to release Landlord from its obligations under the Lease with respect to Construction Defects. The provisions of this Handover and Acceptance Certificate shall inure to the benefit of, or bind, as the case may require, the parties and their respective successors and assigns, and to all mortgagees of the Building, subject to the restrictions on assignment and subleasing contained in the Lease, and are hereby attached to and made a part of the Lease.

[Signatures appear on next page]

D-1

LANDLORD:

PLATYPUS DEVELOPMENT LLC,
a Delaware limited liability company

By:   PLATYPUS HOLDINGS LLC,
       a Delaware limited liability company, its Member

      By: _____
      Name:
      Title: Manager

TENANT:

GTAT CORPORATION,
a Delaware corporation

By: _____
Name: _____
Title: _____

D-2

## EXHIBIT D-1

## FORM OF HANDOVER AND ACCEPTANCE CERTIFICATE

THIS HANDOVER AND ACCEPTANCE CERTIFICATE is made as of _____, 201__, by PLATYPUS DEVELOPMENT LLC, a Delaware limited liability company ("Landlord"), and GTAT CORPORATION ("Tenant"), who agree as follows:

    1.    Landlord and Tenant entered into a Lease Agreement dated _____, 2013, in which Landlord leased to Tenant and Tenant leased from Landlord certain Premises described therein in the building located at 3740 South Signal Butte Road, Mesa, Arizona (the "Building"). All capitalized terms herein are as defined in the Lease.

    2.    Tenant confirms that as of the date hereof:

        a.    the Expiration Date of the Lease is _____, 20__; (if known)

        b.    Tenant accepts possession of the following Phase(s) of the Premises: _____;

        c.    the number of rentable square feet of the Current Demised Premises is _____;

        d.    Other than Punch List items, Landlord is not required by the Lease to perform any work or furnish any improvements to the Phases of the Premises set forth in 2.b., above;

        e.    Landlord has fulfilled all of its obligations under the Lease with respect to the Current Demised Premises as of the date hereof; and

        f.    the Lease is in full force and effect and has not been modified, altered, or amended, except as follows: _____.

The confirmations of Tenant set forth in Section 2.d and Section 2.e are based solely on Tenant's Punch List Inspection, and nothing in this Handover and Acceptance Certificate shall be deemed to release Landlord from its obligations under the Lease with respect to Construction Defects. The provisions of this Handover and Acceptance Certificate shall inure to the benefit of, or bind, as the case may require, the parties and their respective successors and assigns, and to all mortgagees of the Building, subject to the restrictions on assignment and subleasing contained in the Lease, and are hereby attached to and made a part of the Lease.

[Signatures appear on next page]

D-1-1

LANDLORD:

PLATYPUS DEVELOPMENT LLC,
a Delaware limited liability company

By:   PLATYPUS HOLDINGS LLC,
      a Delaware limited liability company, its Member

    By: _____
    Name:
    Title: Manager


TENANT:

GTAT CORPORATION,
a Delaware corporation


By: _____
Name: _____
Title: _____

D-1-2

EXHIBIT E

**HAZARDOUS MATERIALS DISCLOSURE CERTIFICATE**

Your cooperation in this matter is appreciated. Initially, the information provided by you in this Hazardous Materials Disclosure Certificate is necessary for Landlord to evaluate your proposed uses of the premises (the "**Premises**") and to determine whether to enter into a lease agreement with you as tenant. If a lease agreement is signed by you and Landlord (the "**Lease**"), on an annual basis in accordance with the provisions of Section 5.1 of the Lease, you are to provide an update to the information initially provided by you in this certificate. Any questions regarding this certificate should be directed to, and when completed, the certificate should be delivered to:

Landlord:


      Attention:
      Phone: (    )

Name of (Prospective) Tenant:
Mailing Address:

Contact Person, Title and Telephone Number(s):
Contact Person for Hazardous Waste Materials Management and Manifests and Telephone Number(s):

Address of (Prospective) Premises:
Length of (Prospective) initial Term:


1.    GENERAL INFORMATION:

    Describe the proposed operations to take place in, on, or about the Premises, including, without limitation, principal products processed, manufactured or assembled, and services and activities to be provided or otherwise conducted. Existing tenants should describe any proposed changes to on-going operations.

E-1

2. USE, STORAGE AND DISPOSAL OF HAZARDOUS MATERIALS

   2.1 Will any Hazardous Materials (as hereinafter defined) be used, generated, treated, stored or disposed of in, on or about the Premises? Existing tenants should describe any Hazardous Materials, which continue to be used, generated, treated, stored or disposed of in, on or about the Premises.

   | | | |
   |---|---|---|
   | Wastes | Yes ☐ | No ☐ |
   | Chemical Products | Yes ☐ | No ☐ |
   | Other | Yes ☐ | No ☐ |

   If Yes is marked, please explain:

   2.2 If Yes is marked in Section 2.1, attach a list of any Hazardous Materials to be used, generated, treated, stored or disposed of in, on or about the Premises, including the applicable hazard class and an estimate of the quantities of such Hazardous Materials to be present on or about the Premises at any given time; estimated annual throughput; the proposed location(s) and method of storage (excluding nominal amounts of ordinary household cleaners and janitorial supplies which are not regulated by any Environmental Laws, as hereinafter defined); and the proposed location(s) and method(s) of treatment or disposal for each Hazardous Material, including the estimated frequency, and the proposed contractors or subcontractors. Existing tenants should attach a list setting forth the information requested above and such list should include actual data from on-going operations and the identification of any variations in such information from the prior year's certificate.

3. STORAGE TANKS AND SUMPS

   3.3 Is any above or below ground storage or treatment of gasoline, diesel, petroleum, or other Hazardous Materials in tanks or sumps proposed in, on or about the Premises? Existing tenants should describe any such actual or proposed activities.

   Yes ☐    No ☐

   If yes, please explain:

4. WASTE MANAGEMENT

   4.4 Has your company been issued an EPA Hazardous Waste Generator I.D. Number? Existing tenants should describe any additional identification numbers issued since the previous certificate.

   Yes ☐    No ☐

E-2

    4.5    Has your company filed a biennial or quarterly reports as a hazardous waste generator? Existing tenants should describe any new reports filed.

        Yes ☐        No ☐

        If yes, attach a copy of the most recent report filed.

5.    WASTEWATER TREATMENT AND DISCHARGE

    5.6    Will your company discharge wastewater or other wastes to:

        ☐ storm drain?        ☐ sewer?

        ☐ surface water?        ☐ no wastewater or other wastes discharged.

        Existing tenants should indicate any actual discharges. If so, describe the nature of any proposed or actual discharge(s).

    5.7    Will any such wastewater or waste be treated before discharge?

        Yes ☐        No ☐

        If yes, describe the type of treatment proposed to be conducted. Existing tenants should describe the actual treatment conducted.

6.    AIR DISCHARGES

    6.8    Do you plan for any air filtration systems or stacks to be used in your company's operations in, on or about the Premises that will discharge into the air; and will such air emissions be monitored? Existing tenants should indicate whether or not there are any such air filtration systems or stacks in use in, on or about the Premises which discharge into the air and whether such air emissions are being monitored.

        Yes ☐        No ☐

        If yes, please describe:

E-3

6.9 Do you propose to operate any of the following types of equipment, or any other equipment requiring an air emissions permit? Existing tenants should specify any such equipment being operated in, on or about the Premises.

☐ Spray booth(s)    ☐ Incinerator(s)

☐ Dip tank(s)    ☐ Other (Please describe)

☐ Drying oven(s)    ☐ No Equipment Requiring Air Permits

If yes, please describe:

6.10 Please describe (and submit copies of with this Hazardous Materials Disclosure Certificate) any reports you have filed in the past thirty-six months with any governmental or quasi-governmental agencies or authorities related to air discharges or clean air requirements and any such reports which have been issued during such period by any such agencies or authorities with respect to you or your business operations.

7. HAZARDOUS MATERIALS DISCLOSURES

7.11 Has your company prepared or will it be required to prepare a Hazardous Materials management plan ("**Management Plan**") or Hazardous Materials Business Plan and Inventory ("**Business Plan**") pursuant to Fire Department or other governmental or regulatory agencies' requirements? Existing tenants should indicate whether or not a Management Plan is required and has been prepared.

Yes ☐    No ☐

If yes, attach a copy of the Management Plan or Business Plan. Existing tenants should attach a copy of any required updates to the Management Plan or Business Plan.

8. ENFORCEMENT ACTIONS AND COMPLAINTS

8.12 With respect to Hazardous Materials or Environmental Laws, has your company ever been subject to any agency enforcement actions, administrative orders, or consent decrees or has your company received requests for information, notice or demand letters, or any other inquiries regarding its operations? Existing tenants should indicate whether or not any such actions, orders or decrees have been, or are in the process of being, undertaken or if any such requests have been received.

Yes ☐    No ☐

If yes, describe the actions, orders or decrees and any continuing compliance obligations imposed as a result of these actions, orders or decrees and also describe any requests, notices or demands, and attach a copy of all such documents. Existing tenants should describe and attach a copy of any new actions, orders, decrees, requests, notices or demands not already delivered to Landlord pursuant to the provisions of Article 5 of the Lease.

E-4

8.13 Have there ever been, or are there now pending, any lawsuits against your company regarding any environmental or health and safety concerns?

Yes ☐ No ☐

If yes, describe any such lawsuits and attach copies of the complaint(s), cross-complaint(s), pleadings and other documents related thereto as requested by Landlord. Existing tenants should describe and attach a copy of any new complaint(s), cross-complaint(s), pleadings and other related documents not already delivered to Landlord pursuant to the provisions of Article 5 of the Lease.

8.14 Have there been any problems or complaints from adjacent tenants, owners or other neighbors at your company's current facility with regard to environmental or health and safety concerns? Existing tenants should indicate whether or not there have been any such problems or complaints from adjacent tenants, owners or other neighbors at, about or near the Premises and the current status of any such problems or complaints.

Yes ☐ No ☐

If yes, please describe. Existing tenants should describe any such problems or complaints not already disclosed to Landlord under the provisions of the signed Lease Agreement and the current status of any such problems or complaints.

9. PERMITS AND LICENSES

9.15 Attach copies of all permits and licenses issued to your company with respect to its proposed operations in, on or about the Premises, including, without limitation, any Hazardous Materials permits, wastewater discharge permits, air emissions permits, and use permits or approvals. Existing tenants should attach copies of any new permits and licenses as well as any renewals of permits or licenses previously issued.

As used herein, "**Hazardous Materials**" shall mean and include any substance that is or contains (a) any "hazardous substance" as now or hereafter defined in § 101(14) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("**CERCLA**") (42 U.S.C. § 9601 *et seq.*) or any regulations promulgated under CERCLA; (b) any "hazardous waste" as now or hereafter defined in the Resource Conservation and Recovery Act, as amended ("**RCRA**") (42 U.S.C. § 6901 *et seq.*) or any regulations promulgated under RCRA; (c) any substance now or hereafter regulated by the Toxic Substances Control Act, as amended ("**TSCA**") (15 U.S.C. § 2601 *et seq.*) or any regulations promulgated under TSCA; (d) petroleum, petroleum by-products, gasoline, diesel fuel, or other petroleum hydrocarbons; (e) asbestos and asbestos-containing material, in any form, whether friable or non-friable; (f) polychlorinated biphenyls; (g) lead and lead-containing materials; or (h) any additional substance,

E-5

material or waste (i) the presence of which on or about the Premises (A) requires reporting, investigation or remediation under any Environmental Laws (as hereinafter defined), (B) causes or threatens to cause a nuisance on the Premises or any adjacent property or poses or threatens to pose a hazard to the health or safety of persons on the Premises or any adjacent property, or (C) which, if it emanated or migrated from the Premises, could constitute a trespass, or (ii) which is now or is hereafter classified or considered to be hazardous or toxic under any Environmental Laws; and "**Environmental Laws**" shall mean and include (a) CERCLA, RCRA and TSCA; and (b) any other federal, state or local laws, ordinances, statutes, codes, rules, regulations, orders or decrees now or hereinafter in effect relating to (i) pollution, (ii) the protection or regulation of human health, natural resources or the environment, (iii) the treatment, storage or disposal of Hazardous Materials, or (iv) the emission, discharge, release or threatened release of Hazardous Materials into the environment.

The undersigned hereby acknowledges and agrees that this Hazardous Materials Disclosure Certificate is being delivered to Landlord in connection with the evaluation of a Lease Agreement and, if such Lease Agreement is executed, will be attached thereto as an exhibit. The undersigned further acknowledges and agrees that if such Lease Agreement is executed, this Hazardous Materials Disclosure Certificate will be updated from time to time in accordance with Section 5.1 of the Lease. The undersigned further acknowledges and agrees that Landlord and its partners, lenders and representatives may, and will, rely upon the statements, representations, warranties, and certifications made herein and the truthfulness thereof in entering into the Lease Agreement and the continuance thereof throughout the term, and any renewals thereof, of the Lease Agreement. I [print name] _____, acting with full authority to bind the (proposed) Tenant and on behalf of the (proposed) Tenant, certify, represent and warrant that the information contained in this certificate is true and correct.

(PROSPECTIVE) TENANT:

a _____,

By: _____

Title: _____

Date: _____

E-6

# EXHIBIT F-1

## Minimum Tenant Insurance Requirements

1. Tenant shall obtain and maintain in full force and effect, at its own cost and expense, during the term of the Lease and after termination as may be specified below, the following minimum types and limits of insurance and any other insurance required by law, regulation or orders in the State. Such insurance shall be maintained with reputable and solvent insurance companies having, where available, an A.M. Best's insurance rating of A-VII or better or a comparable financial rating from a reputable rating bureau, and lawfully authorized to do business in the State, and will comply with all those requirements as stated herein. In no way do these minimum insurance requirements limit the liability assumed elsewhere in this Lease, including but not limited to Tenant's defense and indemnity obligations.

2. <u>Minimum Insurance Requirements</u>.

    (i)   <u>Commercial General Liability</u> insurance, including coverage for bodily injury, property damage, personal and advertising injury, products liability, completed operations liability, premises and operations liability (including explosion, collapse, and underground hazard) and contractual liability and including severability of interests provisions. Such insurance must have limits of not less than $1,000,000 per occurrence and $2,000,000 in the annual aggregate. Such insurance must include Landlord Parties as additional insureds for liabilities falling within Tenant's indemnity obligations pursuant to the Lease.

    (ii)  <u>Workers' Compensation</u> insurance with statutory limits, as required by any state, territory, province or nation having jurisdiction over Tenant's employees, and <u>Employer's Liability</u> insurance with limits not less than $1,000,000.

    (iii) <u>Automobile Liability</u> insurance covering any owned, non-owned or hired vehicles used by Tenant in connection with the Premises, in compliance with all statutory requirements and with limits of not less than $1,000,000 for bodily injury and property damage.

    (vi)  <u>Umbrella/Excess Liability</u> insurance, on a follow form basis, providing coverage excess of the Commercial General Liability, Employer's Liability and Automobile Liability insurance, with limits of not less than $20,000,000 per occurrence and in the annual aggregate. Such insurance must include Landlord Parties as additional insureds for liabilities falling within Tenant's indemnity obligations pursuant to the Lease.

    (v)   <u>Crime/Employee Dishonesty/Fidelity</u> insurance covering the dishonest acts of Tenant's employees and agents, acting alone or in collusion with others, and including third party coverage, with Landlord, its subsidiaries and affiliates included as a loss payees, with limits of not less than $1,000,000.

    (vi)  <u>Property Insurance</u> providing coverage on a full replacement cost basis on all property owned by Tenant or for which Tenant is legally liable, or which is installed by or on behalf of Tenant, and which is located within the Premises, including, without limitation, fittings, installations, alterations, additions, partitions, fixtures, Furnaces and anything in the nature of a leasehold improvement with respect to all risks of physical loss. Landlord, its subsidiaries and affiliates shall be included on such coverage as loss payees, as their interests may appear.

3. All insurance to be provided by Tenant shall be designated as primary to and non-contributory with any and all insurance maintained by or otherwise afforded to Landlord Parties. Except to the extent prohibited by law, and except with respect to Tenant's crime/employee dishonesty/fidelity and property insurance, Tenant shall require its insurers to waive all rights of recovery from or subrogation against Landlord Parties and their respective insurers, but only to the extent of liabilities falling within Tenant's

F-1

indemnity obligations pursuant to the terms of this Lease. Tenant, by endorsement or otherwise, shall ensure that its property insurance policy contains a waiver of subrogation against Landlord in accordance with the terms of Section 10.3 of this Lease.

4.      At the time this Lease is executed, or within a reasonable time thereafter, and within a reasonable time after coverage is renewed or replaced, Tenant will deliver to Landlord evidence that the foregoing coverages required from Tenant are in place, at the Landlord Notice Address.

Landlord's receipt or acceptance of evidence of coverage that does not comply with these requirements, or Tenant's failure to provide evidence of coverage, shall not constitute a waiver or modification of the insurance requirements as set forth herein. In the event of cancellation of coverage, Tenant shall promptly replace coverage so that no lapse in insurance occurs. All deductibles and self-insured retentions are to be paid by Tenant, except as otherwise specifically provided in this Lease.

F-2

**EXHIBIT F-2**

**Landlord Insurance Requirements**

1. Landlord shall obtain and maintain in full force and effect, at its own cost and expense, during the term of the Lease, the following minimum types and limits of insurance and any other insurance required by law, regulation or orders in the State. Such insurance shall be maintained with reputable and solvent insurance companies having, where available, an A.M. Best's insurance rating of A-VII or better or a comparable financial rating from a reputable rating bureau, and lawfully authorized to do business in the State, and will comply with all those requirements as stated herein; provided, however, that nothing contained herein shall prohibit Landlord from providing any or all of the insurance on a self-insured basis. In no way do these minimum insurance requirements limit the liability assumed elsewhere in this Lease, including but not limited to Landlord's defense and indemnity obligations.

2. <u>Minimum Insurance Requirements</u>.

   (i) <u>Commercial General Liability</u> insurance, including coverage for bodily injury, property damage, personal and advertising injury, and contractual liability and including severability of interests provisions. Such insurance must have limits of not less than $1,000,000 per occurrence and $2,000,000 in the annual aggregate.

   (ii) <u>Workers' Compensation</u> insurance with statutory limits, as required by any state, territory, province or nation having jurisdiction over Landlord's employees, and <u>Employer's Liability</u> insurance with limits not less than $1,000,000.

   (iii) <u>Automobile Liability</u> insurance covering any owned, non-owned or hired vehicles used by Landlord in connection with the Premises, in compliance with all statutory requirements and with limits of not less than $1,000,000 for bodily injury and property damage.

   (iv) <u>Property Insurance</u> providing coverage on a full replacement cost basis on the Building and the machinery, boilers and equipment contained within the Building (but excluding the property that Tenant is required to insure pursuant to Exhibit F-1), on an extended perils basis, including fire, lighting, vandalism, and malicious mischief.

   (v) Such other insurance as Landlord deems reasonable and appropriate given the intended use of the Premises and its location.

Landlord, by endorsement or otherwise, shall ensure that its property insurance policy contains a waiver of subrogation against Tenant in accordance with the terms of Section 10.3 of this Lease.

F-2-1