**HEARING DATE AND TIME: FEBRUARY 12, 2015 at 10:00 a.m. (Eastern Time)**
**OBJECTION DEADLINE: FEBRUARY 5, 2015 at 4:00 p.m. (Eastern Time)**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW HAMPSHIRE**

---------------------------------------------------------------x
:
*In re:* : Chapter 11
:
**GT ADVANCED TECHNOLOGIES INC.,** *et al.*,: Case No. 14-11916-HJB
:
Debtors.[1] : Jointly Administered
:
:
---------------------------------------------------------------x

**DEBTORS' FIRST MOTION UNDER BANKRUPTCY CODE SECTION 1121(d)**
**FOR ORDER EXTENDING EXCLUSIVE PERIODS TO FILE**
**CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

GT Advanced Technologies Inc. ("GT") and its affiliated debtors as debtors in possession (collectively, "GTAT" or the "Debtors") submit this first motion (the "Motion"), pursuant to section 1121(d) of title 11 of the United States Code (the "Bankruptcy Code"), requesting entry of an order, substantially in the form attached hereto as Exhibit A, (a) extending GTAT's exclusive period under section 1121(c)(2) of the Bankruptcy Code to file a chapter 11 plan to June 30, 2015 and (b) extending GTAT's exclusive period under section 1121(c)(3) of the Bankruptcy Code to solicit acceptances of its chapter 11 plan to August 31, 2015. In support of the Motion, GTAT respectfully states as follows:

**PRELIMINARY STATEMENT**

1. Less than four months ago, GTAT filed these chapter 11 cases—the second largest chapter 11 cases to ever file in the District of New Hampshire—in the midst of an acute

---

[1] The Debtors, along with the last four digits of each debtor's tax identification number, as applicable, are: GT Advanced Technologies Inc. (6749), GTAT Corporation (1760), GT Advanced Equipment Holding LLC (8329), GT Equipment Holdings, Inc. (0040), Lindbergh Acquisition Corp. (5073), GT Sapphire Systems Holding LLC (4417), GT Advanced Cz LLC (9815), GT Sapphire Systems Group LLC (5126), and GT Advanced Technologies Limited (1721). The Debtors' corporate headquarters are located at 243 Daniel Webster Highway, Merrimack, NH 03054.

operational and liquidity crisis with less than three weeks of preparation.  Needless to say, after the petition date, GTAT's management and advisors worked around the clock to stabilize the business and develop an operational framework upon which an emergency strategy could be created in order to maximize enterprise value.  Most importantly, GTAT determined that, to preserve the value of its estates, it should extract itself from the relationship with its largest creditor and customer, Apple Inc. ("Apple"), and wind down its sapphire growth operations while returning to its legacy business, namely selling sapphire growth furnaces, solar equipment, as well as developing and selling other new technologies, including the Merlin and Hyperion products.  Since the filing of these chapter 11 cases, GTAT has made substantial progress along this path—reaching a consensual resolution with Apple with respect to the amicable separation of their respective businesses and winding down the sapphire growth operations at its facilities in Mesa, Arizona, and Salem, Massachusetts.  In addition, GTAT has recently developed a business plan pursuant to which GTAT will transition to "new GTAT" with a renewed focus on selling sapphire growth furnaces and legacy solar equipment, while investing in and commercializing the Merlin and Hyperion growth technologies.

2. Notwithstanding the substantial progress made by GTAT to date, terminating exclusivity at this early stage would be premature.  As the Court recently recognized at the January 26 hearing when ruling on the motion for appointment of an equity committee, ***these chapter 11 cases are in their early stages and GTAT's business is in the process of evolving***.  Consequently, GTAT must undertake a number of important steps before it can successfully emerge from chapter 11.  For example, GTAT hopes to promptly seek Court approval of debtor in possession financing, a critical step in GTAT's reorganizational efforts.  Furthermore, because the deadline for creditors to file proofs of claims only occurred a few days ago on January 26,

2015, the claims reconciliation process, which will involve thousands of claims,[2] has not yet begun.  GTAT has not had an opportunity to analyze and formulate a chapter 11 plan for resolving the myriad of liabilities that necessitated the filing of these chapter 11 cases.  Moreover, in light of the crisis mode under which GTAT has been operating since the petition date, GTAT is only now turning to other critical issues, including intercompany claims, analysis of issues related to substantive consolidation, and the sale of non-core assets.  Finally, GTAT will need to operate its business for a period of time to validate the assumptions underlying its new business plan before being able to move these cases forward.

3. For these reasons, GTAT seeks to extend the period during which GTAT has the exclusive right to propose and file a chapter 11 plan to **June 30, 2015** and the period during which GTAT has the exclusive right to obtain acceptance of such plan to **August 31, 2015**, without prejudice to GTAT's right to seek further extension of such periods.  This five-month extension of exclusivity is not only necessary to address the issues described above, but also mandated by the reality of the situation in which GTAT finds itself:  GTAT is a "re-start up" which needs to be "battle-tested" before creditors can make an informed decision on a plan of reorganization.

## JURISDICTION AND VENUE

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The statutory basis for the relief requested herein is section 1121(d) of the Bankruptcy Code.

---

[2] GTAT's schedules of assets and liabilities listed more than 2,000 creditors and potential creditors of these estates, and this number has further grown, now that the Court-ordered bar date has passed, in that thousands of claims have been filed.

## BACKGROUND

### GTAT's Chapter 11 Cases

6. On October 6, 2014 (the "Petition Date"), GTAT commenced voluntary cases under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Hampshire (the "Court"). GTAT continues to operate its business and manage its properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

7. On October 14, 2014, the Office of the United States Trustee for the District of New Hampshire appointed an official committee of unsecured creditors (the "Committee") in these chapter 11 cases.

8. These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

### GTAT Has Made Significant Progress in These Chapter 11 Cases

9. Unlike many recent chapter 11 cases that were commenced with a pre-arranged or pre-packed restructuring plan already in place, these chapter 11 cases were commenced in the midst of an operational and liquidity crisis that threatened GTAT's survival. Faced with an extraordinarily challenging entrance into chapter 11, GTAT and its advisors have worked tirelessly since the Petition Date to maximize the value of the chapter 11 estates for the benefit of all stakeholders, address GTAT's liquidity crisis, and stabilize operations.

10. From the outset of these cases, GTAT has been engaged in a significant operational restructuring of its prepetition business. In light of the ongoing cash burn from its sapphire manufacturing operations, GTAT determined, after a careful evaluation of available

4

alternatives and in consultation with its advisors, that it needed to wind down its sapphire manufacturing operations and refocus its resources on its other business lines, such as the sale of advanced sapphire crystallization furnaces ("ASF Furnaces"), to preserve the value of its estates. Accordingly, on October 9, 2014, GTAT filed a motion seeking authorization to wind down its sapphire manufacturing operations at its facilities in Mesa, Arizona (the "Mesa Facility"), and Salem, Massachusetts, with reductions in associated supporting personnel at GTAT's Merrimack, New Hampshire offices (such motion, as supplemented by the Supplement filed on October 17, 2014 [Docket No. 189], the "Wind Down Motion"). The Court granted the Wind Down Motion at the October 21, 2014 hearing and entered an approval order on October 24, 2014 [Docket No. 286].

      11.    On October 21, 2014, after intensive and hard-fought negotiations, GTAT entered into that certain Adequate Protection and Settlement Agreement (as amended and restated, the "Apple Settlement Agreement") with Apple and Platypus Development LLC ("Platypus," and together with Apple, the "Apple Parties"). Among other things, the Apple Settlement Agreement (a) allowed for the consensual unwinding of GTAT's business relationship with Apple related to the sapphire growth and fabrication project, (b) resolved all disputes arising from the parties' agreements and their business relationship, (c) preserved GTAT's equity value in its ASF Furnaces located at the Mesa Facility, (d) facilitated GTAT's efforts to obtain debtor in possession and exit financing for all Debtors, and (e) paved the way for GTAT's emergence from chapter 11 as a re-energized company with a renewed focus on its pre-Apple business of selling ASF Furnaces, along with its industry leading solar equipment. While the Committee and an ad hoc committee of certain GT notes initially objected to the Apple Settlement Agreement [Docket Nos. 543, 735], the parties were ultimately able to resolve these (and other) objections. By order

dated December 17, 2014 [Docket No. 819], the Bankruptcy Court approved GTAT's execution of the Apple Settlement Agreement.

12. While GTAT's operational restructuring has, to date, primarily focused on transitioning GTAT's business away from being a manufacturer and supplier of sapphire material to Apple, GTAT and its advisors have simultaneously been working to preserve and avoid disruption in GTAT's other business lines that are unrelated to Apple.  In order to avoid disruptions and interference with these ongoing business operations, GTAT obtained Court approval of numerous orders designed to stabilize operations and provide for a smooth transition into chapter 11.  These orders address a wide range of issues critical to operating GTAT's businesses, including the establishment of procedures for parties to assert demands for reclamation of goods, paying compensation and providing benefits to GTAT's employees, maintaining access to and continued use of bank accounts and banking services, preserving GTAT's insurance programs, establishing expedited procedures for the assumption or rejection of contracts and leases, and maintaining goodwill with GTAT's customers.

13. GTAT has also addressed numerous creditor motions for relief from the automatic stay, motions to compel early assumption or rejection of contracts, motions for adequate assurance of payment, and similar relief.  GTAT has worked constructively to reach agreements with the vast majority of these movants and avoid protracted litigation.  At the same time, during the past 90 days, GTAT has begun the process of determining contracts and leases that are burdensome to the estates and, thus, should be rejected.  To that end, GTAT has filed nine notices of the rejection of contracts and leases, as well as a motion to reject certain leases of non-residential real property.  The Debtors have also continued value-maximizing initiatives such as the implementation of procedures for the sale of non-core assets.

14. In short, the first 90 days of these chapter 11 cases have been extremely busy and productive. With the wind-down of the Mesa Facility underway and a comprehensive business plan (the "Business Plan") completed, GTAT has turned its efforts towards implementing the Business Plan. Among other things, the Business Plan is premised upon selling ASF Furnaces and solar equipment, reducing the cash operating expense run-rate through the remainder of these chapter 11 cases, strategic spending for research and development and capital expenditures, and advancement of the Merlin and Hyperion projects.

15. As the Court is well aware based on the extensive testimony given by Mr. Neil Augustine of Rothschild Inc. at the hearing on approval of the Apple Settlement Motion on December 15, 2014, these chapter 11 cases are extremely challenging due to many factors, including limited existing revenues and the need to transition the business to the "new GTAT." GTAT believes that the successful implementation of the Business Plan should enable GTAT to emerge from chapter 11 as a strong and healthy enterprise.

**RELIEF REQUESTED**

16. Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to propose and file a chapter 11 plan (the "Exclusive Filing Period"). Section 1121(c)(3) provides that if a debtor files a plan within the Exclusive Filing Period, it has a period of 180 days after the commencement of the case to obtain acceptance of such plan, during which time competing plans may not be filed (the "Solicitation Period" and, together with the Exclusive Filing Period, the "Exclusive Periods"). Pursuant to section 1121(d) of the Bankruptcy Code, the Court may extend a debtor's Exclusive Periods for cause shown, provided that the Exclusive Filing Period may not be extended beyond 18 months after the commencement of the case and the Solicitation Period may not be extended beyond 20 months after the commencement of the case.

17. GTAT's Exclusive Filing Period and Solicitation Period will expire on February 3, 2015 and April 6, 2015, respectively. Pursuant to section 1121(d) of the Bankruptcy Code, GTAT requests entry of the Proposed Order extending both the Exclusive Filing Period and the Solicitation Period by approximately five months to and including June 30, 2015 and August 31, 2015, respectively, without prejudice to GTAT's right to seek further extensions of such periods.[3] This is GTAT's first request to extend the Exclusive Periods.

## BASIS FOR THE RELIEF REQUESTED

18. The Exclusive Periods are intended to afford a debtor a full and fair opportunity to propose a consensual plan and solicit acceptances of such plan without the deterioration and disruption of the debtor's business that is likely to be caused by the filing of competing plans by non-debtor parties. The primary objective of a chapter 11 case is the formulation, confirmation, and consummation of a consensual chapter 11 plan.

19. Section 1121(d) of the Bankruptcy Code allows the court to extend a debtor's Exclusive Periods for cause. The decision to extend exclusivity is within the discretion of the bankruptcy court.[4] Although the Bankruptcy Code does not define the term "cause," the legislative history indicates it is intended to be a flexible standard to balance the competing interests of a debtor and its creditors.[5] Congress built flexibility into section 1121 of the

---

[3] In accordance with paragraph 21 of the Bankruptcy Court's Order, dated October 9, 2014, establishing notice and case management procedures in these chapter 11 cases [Docket No. 83], if a motion to extend the time to take any action is filed before the expiration of the applicable period prescribed by the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules or Court order, then such period shall automatically be extended until the Bankruptcy Court enters an order addressing the applicable extension motion, without the necessity of the entry of an intermediate bridge order extending the time.

[4] *In re Murray*, 116 B.R. 6, 7 (D. Mass. 1990) (stating that the court "has the discretion to allow extensions or reductions of the exclusivity period upon a finding of cause"); *In re Clamp-All Corp.*, 233 B.R. 198, 206 (Bankr. D. Mass. 1999) (observing that the court "in its discretion may reduce or increase the debtor's period of exclusivity").

[5] *See* H.R. Rep. No. 95-595, at 231, 232 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6191 (noting that Congress intended to give bankruptcy courts flexibility to protect a debtor's interest by allowing unimpeded opportunity to negotiate settlement of debts without interference from other parties in interest).

8

Bankruptcy Code to give chapter 11 debtors an adequate opportunity to stabilize their business operations at the outset of the chapter 11 case and to negotiate an effective plan of reorganization with creditors.[6]

20. In determining whether cause exists to extend the Exclusive Periods, a court may consider a variety of factors to assess the totality of circumstances in each case.[7] While the court is obliged to ensure that the rights of creditors are not prejudiced by the reorganization process, it must also give the debtor "every reasonable opportunity to present and confirm a plan reorganizing its financial affairs."[8] Further, the court has a "duty to safeguard the integrity of the negotiation process which is at the heart of Chapter 11."[9] Moreover, in the early stages of a chapter 11 case, the case's size and complexity alone may warrant extension of the exclusivity periods.[10] In addition to size and complexity, courts have identified a number of additional relevant factors, including, among others:

(a) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

(b) the existence of good faith progress toward reorganization;

(c) the fact that the debtor is paying its bills as they become due;

---

[6] *In re Newark Airport/Hotel L.P.*, 156 B.R. 444, 451 (Bankr. D.N.J.), *aff'd*, 155 B.R. 93 (D.N.J. 1993) (noting that Congress designed chapter 11 provisions to enable a debtor to remain in control for some period of time, thereby making reorganization an attractive alternative to financially troubled companies); *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297-98 (W.D. Tenn. 1987) (Congress designed section 1121 to give the debtor time to reach an agreement with its creditors regarding a plan of reorganization).

[7] *See In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006) (stating that the decision to extend or terminate exclusivity for cause is within the discretion of the bankruptcy court, and is fact-specific); *In re McLean Indus., Inc.*, 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (identifying the factors used by courts to determine whether cause exists to extend exclusivity); *In re Dow Corning Corp.*, 208 B.R. 661, 664, 670 (Bankr. E.D. Mich. 1997).

[8] *Clamp-All Corp.*, 233 B.R. at 211-12.

[9] *Id.*

[10] *See In re Pub. Serv. Co. of N.H.*, 88 B.R. 521, 537 (Bankr. D.N.H. 1988) ("a debtor in a large and complex case may make a showing of cause on those facts for exclusivity extension in the *initial stages* of the reorganization by virtue of that factor") (emphasis in original).

9

  (d)  whether the debtor has demonstrated reasonable prospects for filing a viable plan;

  (e)  whether the debtor has made progress in negotiations with its creditors;

  (f)  the amount of time which has elapsed in the case;

  (g)  whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands; and

  (h)  whether an unresolved contingency exists.[11]

21. As illustrated below, application of these standards to the facts of these chapter 11 cases demonstrates more than sufficient "cause" to grant GTAT's requested extension of the Exclusive Periods.

## Cause Exists to Extend the Exclusive Periods

**A. GTAT's Chapter 11 Cases are Large and GTAT's Businesses Are Complex**

22. The most common basis upon which courts grant an extension of the Exclusive Periods is the size and complexity of the chapter 11 case.[12] Indeed, Congress expressly recognized that courts would need to extend the exclusive periods if a debtor's case is unusually large or complex.[13]

23. Given the size of GTAT's chapter 11 cases and the complexity of its business, a five-month extension of the Exclusive Periods is warranted. These chapter 11 cases involve nine different Debtors, business operations in both the United States and Hong Kong, China, and

---

[11] *In re SW Boston Hotel Venture, LLC*, Case No. 10-14535-JNF, 2011 WL 1675085 at *2, (Bankr. D. Mass. May 4, 2011) (citing *Adelphia Commc'ns Corp.*, 352 B.R. at 587); *see also McLean Indus.*, 87 B.R. at 834 (identifying six of these factors to determine whether cause existed to extend Exclusive Periods); *In re United Press Int'l, Inc.*, 60 B.R. 265, 269 (Bankr. D.D.C. 1986) (holding that the debtor showed "cause" to extend its exclusivity period based upon certain of the above-quoted factors).

[12] *See, e.g., In re Express One Int'l*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); *In re Texaco, Inc.*, 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987) (sheer size of case constituted "cause" to extend exclusivity); *In re Manville Forest Prods. Corp.*, 31 B.R. 991, 995 (S.D.N.Y. 1983) ("[T]he sheer mass, weight, volume and complications of the Manville filings undoubtedly justify a shakedown period").

[13] H.R. Rep. No. 95-595, at 231, 232, 406 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6191, 6362 ("[I]f an unusually large company were to seek reorganization under Chapter 11, the Court would probably need to extend the time in order to allow the debtor to reach an agreement.").

10

more than 2,000 creditors.  Indeed, GTAT's chapter 11 cases—listing assets with a book value of approximately $1.5 billion and liabilities of approximately $1.3 billion—are the second largest chapter 11 cases ever filed in the District of New Hampshire.  GTAT must also analyze a web of intercompany claims and transactions and evaluate the potential for substantive consolidation.

24.     Moreover, as noted above, GTAT's business is currently undergoing a fundamental transition to the "new GTAT," including the wind-down of its sapphire operations and the implementation of the Business Plan (including the sale of ASF Furnaces).  Although GTAT has expeditiously addressed these issues to date, additional time is required to complete and implement GTAT's strategy to emerge from chapter 11 as the "new GTAT."  Indeed, as this Court recognized at the January 26, 2015 hearing, these chapter 11 cases are in their early stages and GTAT's business is evolving.  In addition, as part of its reorganizational efforts, GTAT is also seeking to sell non-core assets and obtain debtor in possession financing, which financing GTAT hopes to submit for this Court's approval in the near future.

25.     Furthermore, due to the size and complexity of these chapter 11 cases, GTAT previously sought and obtained extensions of time, until November 21, 2014, to file its respective schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and statement of financial affairs (the "Schedules").  As previously noted, more than 2,000 claims were listed on the Schedules.  In addition, on October 30, 2014, the Court entered an order [Docket No. 395] (the "Bar Date Order") establishing certain claims bar dates in these chapter 11 cases.  Under the Bar Date Order, the Court established January 26, 2015 at 5:00 p.m. (E.T.) as the general claims bar date (the "General Bar Date").  The resolution of this important contingency alone inhibits GTAT from filing a chapter 11 plan at this time.  It is essential to the

formulation of a chapter 11 plan to ascertain the nature and extent of claims that may have to be dealt with under a chapter 11 plan.

26.     In cases of the size and the complexity of GTAT's business, the initial 120-day exclusivity period provided by the Bankruptcy Code is simply inadequate to evaluate the claims asserted against the chapter 11 estates and develop a plan of reorganization with the necessary committed exit financing and, preferably, the support of the Committee.

**B.     GTAT Has Demonstrated Good Faith Progress Towards Its Reorganization**

27.     GTAT believes that an expeditious restructuring and emergence from chapter 11 is crucial to preserving the value of its businesses and is in the best interests of the estates and all its stakeholders. To that end, GTAT has repeatedly demonstrated its continuing commitment toward an expeditious restructuring. Central to GTAT's restructuring efforts was achieving a resolution with one of its largest creditors and customers, Apple. Absent the Apple Settlement Agreement, GTAT would have faced contentious and distracting litigation that would have delayed and impeded GTAT's efforts to reorganize. Moreover, GTAT and its advisors have worked tirelessly to develop the Business Plan, which provides the foundation for GTAT's transition to the "new GTAT."

28.     Accordingly, GTAT believes that the good-faith substantial progress described above justifies the requested five-month extension of the Exclusive Periods during which GTAT will seek to raise capital and negotiate a chapter 11 plan with its key stakeholders.

**C.     Other Factors Also Support Extension of Exclusivity**

29.     This is GTAT's first request for an extension of the Exclusive Periods, and GTAT is *not* seeking this extension to delay the reorganization or pressure creditors to accede to a plan that is unsatisfactory to them. Rather, the requested extension reflects the reality that these chapter 11 cases are not yet sufficiently mature for the formulation, negotiation, filing, and

prosecution of a feasible chapter 11 plan. Under these circumstances, granting an extension of the Exclusivity Periods will not give GTAT an unfair bargaining leverage over creditor constituencies. Finally, since the Petition Date, GTAT has timely met, and will continue to timely meet, its postpetition obligations in these chapter 11 cases.

## CONCLUSION

30.     In light of the foregoing, GTAT's first request for an extension of the Exclusive Periods is warranted and appropriate under the circumstances. Bankruptcy courts have frequently granted similar extensions of the Exclusive Periods in other large and complex cases.[14] Indeed, the unique context of these chapter 11 cases supports the propriety of the requested extension. Given GTAT's dedication to an expeditious restructuring and emergence from chapter 11, these chapter 11 cases have successfully proceeded at an ambitiously rapid pace, including a global settlement with Apple, the wind-down of GTAT's sapphire growth operations, and the development of the Business Plan. Accordingly, GTAT respectfully submits that the requested extension of the Exclusive Periods is efficient, necessary, and will not prejudice the legitimate interests of creditors and other parties in interest.

## NOTICE

31.     Notice of this Motion has been provided by email, facsimile, or overnight courier to: (a) the Office of the United States Trustee for Region 1, 1000 Elm Street, Suite 605

---

[14]     *See, e.g., In re Exide Technologies,* No. 13-11482 (KJC) (Bankr. D. Del. Oct. 15, 2013) (granting initial extension of approximately 235 days); *In re Edison Mission Energy*, No. 12-49219 (JPC) (Bankr. N.D. Ill. May 15, 2013) (granting initial extension of approximately 205 days); *In re L.A. Dodgers LLC,* No. 11-12010 (KG) (Bankr. D. Del. Dec. 7, 2011) (granting extension of 183 days); *In re Capmark Fin. Grp., Inc.*, No. 09-13684 (CSS) (Bankr. D. Del. Feb. 19, 2010) (granting initial extension of 220 days); *In re Gen. Growth Props., Inc.*, No. 09-11977 (ALG) (Bankr. S.D.N.Y. July 28, 2009) (granting initial extension of approximately 195 days); *In re Calpine Corp.*, No. 05-60200 (BRL) (Bankr. S.D.N.Y. Apr. 11, 2006) (granting initial extension of approximately 255 days); *In re Federal-Mogul Global Inc.*, No. 01-10578 (AMW) (Bankr. D. Del. Jan. 14, 2002) (granting initial extension of approximately 180 days). Because of the voluminous nature of the unreported orders cited herein, they are not annexed to the Motion. Copies of these orders are available upon request of GTAT's undersigned counsel

Manchester, NH 03101, Attn: Geraldine L. Karonis; (b) Kelley Drye & Warren LLP, 101 Park Avenue, New York, NY 10178, Attn: James S. Carr, Esq., counsel to the Creditors' Committee; (c) the Internal Revenue Service, 1000 Elm St., 9th Floor Manchester, NH 03101, Attn: District and Regional Directors; (d) U.S. Securities and Exchange Commission, 100 F Street, NE, Washington, DC 20549; and (e) those parties who have formally filed requests for notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

## NO PRIOR REQUEST

32. No previous request for the relief sought herein has been made to this Court or any other court.

## WAIVER OF MEMORANDUM OF LAW

33. GTAT requests that the Court waive and dispense with the requirement set forth in Rule 7102(b)(2) of the Local Bankruptcy Rules for the District of New Hampshire (the "LBR") that any motion filed shall have an accompanying memorandum of law. The legal authorities upon which GTAT relies are set forth in the Motion. Accordingly, GTAT submits that a waiver of the LBR 7102(b)(2) requirement is appropriate under these circumstances.

[*remainder of page intentionally left blank*]

WHEREFORE, GTAT respectfully requests (a) entry of an order, substantially in the form attached hereto as <u>Exhibit A</u>, extending GTAT's Exclusive Periods to file chapter 11 plans and to solicit acceptances thereof and (b) granting such other and further relief as the Court deems just and proper.

Dated: January 29, 2015

*/s/ James T. Grogan*
Luc A. Despins, Esq.
Andrew V. Tenzer, Esq.
James T. Grogan, Esq. (BNH07394)
PAUL HASTINGS LLP
Park Avenue Tower
75 East 55th Street, First Floor
New York, New York 10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090


- and -

Daniel W. Sklar, Esq.
Holly J. Barcroft, Esq.
NIXON PEABODY LLP
900 Elm Street
Manchester, NH 03101-2031
Telephone: (603) 628-4000
Facsimile: (603) 628-4040

*Co-Counsel for the Debtors and Debtors in Possession*
