**Expedited Hearing Requested for May 12, 2015 at 11:00 a.m. (Eastern Time)**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW HAMPSHIRE**

-----------------------------------------------------------------x
: 
*In re:* : Chapter 11
:
**GT ADVANCED TECHNOLOGIES INC.,** *et al.***,**: Case No. 14-11916-HJB
:
Debtors.[1] : Jointly Administered
:
-----------------------------------------------------------------x

**DEBTORS' MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 363(b) AND 503(b) AND BANKRUPTCY RULE 6004(h) AUTHORIZING GT ADVANCED TECHNOLOGIES INC. TO ENTER INTO AMENDMENT TO COMMITMENT LETTER WITH GT NOTEHOLDERS IN CONNECTION WITH DEBTOR IN POSSESSION FINANCING**

GT Advanced Technologies Inc. ("GT") and its affiliated debtors as debtors in possession (collectively, "GTAT" or the "Debtors") submit this motion (the "Motion"), pursuant to sections 363(b) and 503(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 6004(h) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), requesting entry of an order, substantially in the form attached hereto as Exhibit A, authorizing GT to enter into that certain Second Amendment, dated as of April 29 (the "Second Amendment"),[2] to the Amended and Restated Commitment Letter, dated as of March 17, 2015 (the "Existing

---

[1] The Debtors, along with the last four digits of each debtor's tax identification number, as applicable, are: GT Advanced Technologies Inc. (6749), GTAT Corporation (1760), GT Advanced Equipment Holding LLC (8329), GT Equipment Holdings, Inc. (0040), Lindbergh Acquisition Corp. (5073), GT Sapphire Systems Holding LLC (4417), GT Advanced Cz LLC (9815), GT Sapphire Systems Group LLC (5126), and GT Advanced Technologies Limited (1721). The Debtors' corporate headquarters are located at 243 Daniel Webster Highway, Merrimack, NH 03054.

[2] A copy of the Second Amendment is attached hereto as Exhibit B.

Commitment Letter"),³ with certain unaffiliated holders of GT convertible notes (collectively, the "Backstop Lenders").  In support of this Motion, GTAT respectfully states as follows:

## JURISDICTION AND VENUE

1.	The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.	The statutory bases for the relief requested herein are sections 363(b) and 503(b) of the Bankruptcy Code and Bankruptcy Rule 6004(h).

## BACKGROUND

### GTAT's Chapter 11 Cases

3.	On October 6, 2014 (the "Petition Date"), GTAT commenced voluntary cases under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Hampshire (the "Court").  GTAT continues to operate its business and manage its properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of an examiner has been made in these chapter 11 cases.  A motion to appoint a trustee has been denied.

4.	On October 14, 2014, the Office of the United States Trustee for the District of New Hampshire appointed an official committee of unsecured creditors (the "Committee") in these chapter 11 cases.

5.	These chapter 11 cases have been consolidated for procedural purposes only and are jointly administered pursuant to Bankruptcy Rule 1015(b).

---

3	Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Existing Commitment Letter.  A copy of the Existing Commitment Letter was attached to Commitment Letter Order (as defined below).

2

**Existing Commitment Letter**

6. On March 13, 2015, GTAT filed its motion [Docket No. 1436] (as amended, the "Commitment Letter Motion") requesting (i) authorization to pay the Backstop Lenders (a) a put option premium equal to 3.0% of the committed amount of the $95 million DIP facility and (b) certain expenses of the Backstop Lenders incurred in connection with the DIP Facility and certain expenses of the ad hoc group of unaffiliated holders of GT convertible notes, and (ii) approving GT's information sharing obligations and certain indemnity obligations under the Existing Commitment Letter. By order dated March 20, 2015 [Docket No. 1490] (the "Commitment Letter Order"), the Court granted the Commitment Letter Motion.

7. The Existing Commitment Letter provides, among other things, that (a) the offer under the Existing Commitment Letter expires if the Court has not entered an order approving the contemplated DIP financing within 45 days following entry of the Commitment Letter Order (*i.e.*, by May 4, 2015) and (b) the commitment and agreements of the Backstop Lenders under the Existing Commitment Letter will expire on May 15, 2015. On April 17, 2015, the Backstop Lenders agreed to extend the date by which an order approving the DIP financing must be entered to May 12, 2015.[4]

8. As required under the Existing Commitment Letter, on March 19, 2015, GTAT also filed a motion [Docket No. 1487] (the "Solicitation Procedures Motion") seeking approval of procedures for the solicitation (the "Solicitation") of holders of GT's convertible notes to participate in the proposed DIP financing described in the Existing Commitment Letter. By order dated April 2, 2015, the Court granted the Solicitation Procedures Motion. On April 3, 2015, with the assistance of KCC, GTAT commenced the Solicitation of holders of GT

---

[4] This initial extension of time constituted the "First Amendment" to the Existing Commitment Letter.

convertible notes. The solicitation period was originally scheduled to expire on April 23, 2015; however, GTAT has extended (with the consent of the Backstop Lenders) the solicitation period to May 1, 2015. GTAT intends to further extend the solicitation period to May 15, 2015.

### Second Amendment to Existing Commitment Letter

9.  Following entry of the Commitment Letter Order, GTAT and the Backstop Lenders have been working diligently to document the DIP financing contemplated by the Existing Commitment Letter. As this Court is aware, GTAT has also been working on a number of intercompany issues—including between GT Advanced Technologies Limited ("GT Hong Kong") and the other Debtors as it concerns the sale of advanced sapphire furnaces ("ASF Furnaces") and other assets, and certain issues arising under prepetition agreements between the entities.[5] Because these intercompany issues have material implications on the contemplated DIP financing, GTAT has been in extensive discussions with counsel to the Backstop Lenders (as well as counsel to the Committee) to seek a consensual resolution of these matters. Moreover, in light of these issues, GT Hong Kong's board has recently appointed Alan B. Miller as independent director (the "Independent Director") to provide independent guidance to GT Hong Kong in connection with intercompany matters and issues. GTAT has also had extensive meetings with the Independent Director and his counsel.

10. However, because no consensual resolution on these issues has been reached at this time, GT and the Backstop Lenders have entered into Second Amendment pursuant to which the deadlines set forth in the Existing Commitment Letter will be extended by one month in

---

[5] As this Court is aware, by order dated April 9, 2015 [Docket No. 1630], the Court approved certain transaction in connection with the sale of ASF Furnaces by GT Hong Kong to a Chinese purchaser. The relief sought in the underlying motion as it related to an intercompany agreement was adjourned without date; provided, however, that GTAT may renew its request for relief related to intercompany issues on 14 days prior notice to the Committee, the U.S. Trustee, Citigroup Financial Products Inc., and parties who have formally filed requests for notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002.

exchange for the payment of an additional put option premium in the amount of 1.04% of the DIP facility (as further described in the Second Amendment, the "Extension Put Option Premium").

11. Specifically, pursuant to the Second Amendment, the offer under the Existing Commitment Letter will expire if the Backstop Lenders have not received:

> a copy of (i) the DIP Order entered by the Bankruptcy Court, which order shall be in form and substance reasonably satisfactory to the Commitment Parties (and which order shall be in full force and effect and shall not be stayed or modified) and (ii) an order entered by the Bankruptcy Court approving an intercompany agreement between and among the Borrower and certain of its subsidiaries, including GT Advanced Technologies Limited, resolving certain intercompany disputes and/or providing for the allocation of proceeds from the sales of ASF Furnaces and other assets (the "Intercompany Agreement"); provided, that solely to the extent the Intercompany Agreement requires any modification to the terms and conditions of the DIP Facility as set forth in the Term Sheet, such order shall be in form and substance satisfactory to the Commitment Parties, each of (i) and (ii) by no later than **June 12, 2015**.[6]

12. In addition, under the Second Amendment,

> the commitment and agreements of the Commitment Parties hereunder shall expire at 5:00 p.m. (New York City time) on **June 15, 2015** (the "Termination Date") unless, prior to that time, the Closing Date shall have occurred and the Debtors shall have paid to the Commitment Parties and the Agent the fees that are specified in this Commitment Letter and the Term Sheet to be due on or prior to the Closing Date.[7]

13. In exchange for the extension of the foregoing deadlines, the Backstop Lenders require the payment of the Extension Put Option Premium, namely:

> 1.04%, 24% of which will be added to the principal amount of the DIP Loans and 76% of which will be paid in cash, fully earned and payable to the Backstop Lenders upon the earlier of (i) the Closing Date and (ii) the termination of the Commitment Letter due to the failure for the Closing to occur as a result of Borrower's action or inaction

---

[6] Second Amendment § 1 (emphasis added).

[7] *Id.* § 2 (emphasis added).

(including, without limitation, Borrower's determination not to enter into the Definitive Financing Documentation or Borrower's request to modify the terms of the DIP Facility in a manner inconsistent with the Commitment Letter or the Term Sheet) but solely as a result of a material sale of ASF Furnaces prior to the Closing Date. To the extent the Extension Put Option Premium is earned and payable under clause (ii) above, such premium shall be payable entirely in cash. If any Backstop Lender shall fail to fund its commitment under the Commitment Letter upon satisfaction of the conditions precedent set forth therein and the other Backstop Lenders are required to fund the Unfunded Amount (as defined in the Commitment Letter), the Extension Put Option Premium allocated to such defaulting Backstop Lender shall be reallocated to the other Backstop Lenders based on the amount of the Unfunded Amount provided by each such Backstop Lender. For the avoidance of doubt, the Put Option Premium was earned upon entry of the Commitment Letter Order on March 20, 2015.[8]

14. It is important to point out that the additional 1.04% fee will be payable only if (i) the DIP financing closes following approval of such financing by this Court or (ii) the Debtors determine not to move forward with the DIP financing (or to request modifications to the DIP financing) solely as a result of a material sale of ASF Furnaces.

## RELIEF REQUESTED

15. By this Motion, the Debtors seek entry of an order authorizing GT to enter into the Second Amendment, including the payment of the Extension Put Option Premium.

## BASIS FOR THE RELIEF REQUESTED

16. As noted above in paragraphs 9 and 10, given the complexity of the intercompany issues, GTAT and the Backstop Lenders require additional time to reach agreement on the DIP documentation. Indeed, the Second Amendment recognizes the need for a resolution on these intercompany issues (including as it relates to the sale of ASF Furnaces) before final agreement on the DIP financing can be reached. Specifically, the Second Amendment requires that, by June

---

[8] *Id.* § 3.

12, 2015, the Court have entered an order approving an intercompany agreement resolving certain intercompany disputes and/or providing for the allocation of proceeds from the sales of ASF Furnaces.

17. Section 363(b)(1) of the Bankruptcy Code allows a debtor in possession to use property of the estate "other than in the ordinary course of business" after notice and a hearing, in the exercise of its business judgment.[9] The estate's property may be used other than in the ordinary course of business if the debtor can show a "sound business purpose" for such use.[10] The business judgment rule shields a debtor's management from judicial second guessing, "absent a showing of bad faith, self-interest, or gross negligence."[11] As courts in this Circuit have noted, "[a] debtor's business decision should be approved by the court unless it is shown to be so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice."[12] Numerous courts have recognized the authority and ability of bankruptcy courts to approve commitment letters and expense reimbursement provisions under sections 363(b) and 503(b) of the Bankruptcy Code prior to the approval of the DIP or exit financing.[13]

---

[9] 11 U.S.C. § 363(b)(1); *see also, e.g., In re SW Boston Hotel Venture, LLC*, 2010 Bankr. LEXIS 2924 (Bankr. D. Mass. 2010) (granting debtors' motion to pursue leasing strategy under section 363(b) as based on reasonable business judgment); *In re Martin*, 91 F.3d 389, 395 (3d. Cir. 1996) (stating that under normal circumstances, courts will defer to debtor's judgment in using property under section 363(b) if there is legitimate business justification).

[10] *See In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983) ("[t]he rule we adopt requires that a judge determining a §363(b) application expressly find from the evidence presented before him [supports a] good business reason to grant the application.").

[11] *In re Integrated Resources*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (citing *Smith v. Van Gorkom*, 488 A.2d 858, 872-73 (Del. 1985)).

[12] *White v. Official Comm. of Unsecured Creditors (In re Cadkey Corp.),* 317 B.R. 19, 22-23 (D. Mass. 2004). *See also In re New Bedford Capacitor, Inc.,* 2003 Bankr. LEXIS 2328 at *13-14 (Bankr. D. Mass. June 27, 2003) (noting that debtor's business decision should be approved by bankruptcy court "unless it is shown to be so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice.") (internal citation omitted).

[13] *In re Broadview Networks Holdings, Inc.*, Case No. 12-13581 (SCC) (Bankr. S.D.N.Y. Oct. 3, 2012); *In re Tronox Inc.*, Case No. 09-10156 (ALG) (Bankr. S.D.N.Y. Oct. 27, 2010); *In re Overseas Shipholding*

18.     GTAT believes the Extension Put Option Premium is a necessary inducement to convince the Backstop Lenders to extend the deadlines set forth in the Existing Commitment Letter by one month.  As set forth in the Commitment Letter Motion, GTAT needs DIP financing to fund its operations during these chapter 11 cases and to continue to implement its business plan.  Without the inducement of the Extension Put Option Premium, GTAT believes that it would not be possible to obtain an extension of the deadlines under the Existing Commitment Letter.  And without such an extension, GTAT is simply not in the position to file a motion seeking approval of DIP financing, because the resolution of the intercompany issues may impact the ability of the parties to finalize the DIP documentation and close on the DIP financing.  Moreover, because the Independent Director was only recently appointed, additional time is required to reach a consensual resolution of the intercompany issues involving the Independent Director.

19.     Therefore, GTAT has determined, after consultation with its advisors, and in consideration of its current circumstances including the need for liquidity in order to emerge successfully from these chapter 11 cases, that the Second Amendment represents the best possible strategy for maximizing the recoveries of all creditors.

## CONCLUSION

20.     In light of the foregoing, GTAT's submits that entry into the Second Amendment, including authorization to pay the Extension Put Option Premium, is warranted and appropriate under the circumstances.

---

*Group, Inc.*, Case No. 12-20000 (PJW) (Bankr. D. Del. May 27, 2014); *In re Energy Future Holdings Corp.*, Case No. 14-10979 (CSS) (Bankr. D. Del. May 1, 2014); *In re Rotech Healthcare, Inc.*, No. 13-10741 (PJW) (Bankr. D. Del. Jul. 29, 2013); *In re Eastman Kodak Company*, Case No. 12-10202 (ALG) (Bankr. S.D.N.Y. Dec. 14, 2012); *In re NewPage Corp.*, No. 11-12804 (KG) (Bankr. D. Del. Nov. 6, 2012). Copies of the foregoing orders were attached to the Supplement to the Commitment Letter Motion, dated March 18, 2015 [Docket No. 1469].

21. Because the commitment (as extended under the Second Amendment) would lapse if the Extension Put Option Premium is not approved, GTAT also respectfully requests that the Motion be granted effective immediately and that the Court order that no stay apply pursuant to Bankruptcy Rule 6004(h).

## NOTICE

22. Notice of this Motion has been provided by email, facsimile, or overnight courier to: (a) the Office of the United States Trustee for Region 1, 1000 Elm Street, Suite 605 Manchester, NH 03101, Attn: Geraldine L. Karonis; (b) Kelley Drye & Warren LLP, 101 Park Avenue, New York, NY 10178, Attn: James S. Carr, Esq., counsel to the Committee; (c) the Internal Revenue Service, 1000 Elm St., 9th Floor Manchester, NH 03101, Attn: District and Regional Directors; (d) U.S. Securities and Exchange Commission, 100 F Street, NE, Washington, DC 20549; (e) those parties who have formally filed requests for notice in these chapter 11 cases pursuant to Bankruptcy Rule 2002; and (f) counsel to the Backstop Lenders.

## NO PRIOR REQUEST

23. No previous request for the relief sought herein has been made to this Court or any other court.

## WAIVER OF MEMORANDUM OF LAW

24. GTAT requests that the Court waive and dispense with the requirement set forth in Rule 7102(b)(2) of the Local Bankruptcy Rules for the District of New Hampshire (the "LBR") that any motion filed shall have an accompanying memorandum of law.  The legal authorities upon which GTAT relies are set forth in the Motion.  Accordingly, GTAT submits that a waiver of the LBR 7102(b)(2) requirement is appropriate under these circumstances.

[*remainder of page intentionally left blank*]

WHEREFORE, GTAT respectfully requests (a) entry of an order, substantially in the form attached hereto as <u>Exhibit A</u> and (b) granting such other and further relief as the Court deems just and proper.

Dated: April 29, 2015

<u>/s/ G. Alexander Bongartz</u>
Luc A. Despins, Esq.
Andrew V. Tenzer, Esq.
James T. Grogan, Esq. (BNH07394)
G. Alexander Bongartz, Esq. (BNH07449)
PAUL HASTINGS LLP
Park Avenue Tower
75 East 55th Street, First Floor
New York, New York 10022
Telephone: (212) 318-6000
Facsimile: (212) 319-4090


- and -

Daniel W. Sklar, Esq.
Holly J. Barcroft, Esq.
NIXON PEABODY LLP
900 Elm Street
Manchester, NH 03101-2031
Telephone: (603) 628-4000
Facsimile: (603) 628-4040

*Co-Counsel for the Debtors and Debtors in Possession*
