UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GT Advanced Technologies, Inc., | ) | Bk. No. 14-11916-HJB (Lead Case) |
| GT Equipment Holdings, Inc., | ) | Bk. No. 14-11917-HJB |
| GTAT Corporation, | ) | Bk. No. 14-11919-HJB |
| GT Advanced Technologies Limited, | ) | Bk. No. 14-11920-HJB |
| Lindbergh Acquisition Corp., | ) | Bk. No. 14-11922-HJB |
| GT Sapphire Systems Group LLC, | ) | Bk. No. 14-11923-HJB |
| GT Sapphire Systems Holding LLC, | ) | Bk. No. 14-11924-HJB |
| GT Advanced Cz LLC, and | ) | Bk. No. 14-11925-HJB |
| GT Advanced Equipment Holding LLC, | ) | Bk. No. 14-11929-HJB |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

**MOTION OF TERA XTAL TECHNOLOGY CORP.
FOR ALLOWANCE AND PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS
PURSUANT TO 11 U.S.C. § 503(b)(1)**

Tera Xtal Technology Corp. ("TXT") hereby requests that this Honorable Court grant the within Motion for Allowance and Payment of Administrative Expense Claims (the "Motion") to TXT, pursuant to 11 U.S.C. (the "Bankruptcy Code") § 503(b)(1) and applicable authority. In support of this Motion, TXT states as follows:

**Jurisdiction, Venue, and Statutory Predicates for Relief**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334.

2. Venue is proper in this District pursuant to §§ 1408 and 1409(a) of the Bankruptcy Code.

3. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (B).

4. The statutory predicates for relief herein include §§ 503(b)(1) and 105(a) of the Bankruptcy Code.

1

**Factual Background**

5. Prior to October 6, 2014 (the "Petition Date"), TXT contracted to purchase a total of 98 Advanced Sapphire Furnaces ("ASFs") from GT Advanced Technologies Limited ("GT Hong Kong") pursuant to three supply agreements dated March 26, 2011, May 3, 2011, and May 4, 2011 (together the "Supply Agreement").

6. After GT Hong Kong delivered 30 ASFs to TXT, a dispute arose between the parties.

7. During 2012, the disputes between the TXT and GT Hong Kong concerned performance under the Supply Agreement, including with respect to 68 ASFs that GT Hong Kong had not yet delivered to TXT, but as to which TXT had paid a deposit in the amount of $16,662,450 (the "Undelivered ASFs").

8. On November 7, 2012, GT Hong Kong commenced an arbitration against TXT under the auspices of the International Centre for Dispute Resolution (Case No. 50-20-1200-0829) (the "Arbitration") asserting claims for $ 33,014,550 (plus interest) in connection with certain alleged breaches by TXT of the Supply Agreement. TXT contested the claims in the Arbitration and filed counterclaims for a refund of all payments made to GT Hong Kong in the amount of $35,292,450 (plus $25,729,565 in consequential damages and interest on such sums).

9. On August 12, 2014, the arbitral tribunal (the "Tribunal") in the Arbitration issued a final award (the "Arbitration Award"), which ordered GT Hong Kong to pay TXT $20,967,450, plus interest.

10. The Tribunal concluded, among other things, that GT Hong Kong, not TXT, had repudiated the Supply Agreement, and even if TXT had repudiated the Supply Agreement, GT Hong Kong had not proven any damages. Accordingly, as part of the Arbitration Award, the

Tribunal ordered GT Hong Kong to refund TXT's $6,210,000 payment with respect to the 10 noncompliant ASFs (as defined below) and $16,662,450 deposit for the 68 Undelivered ASFs, plus interest (the "Deposit").

11. On August 30, 2014, after the Tribunal issued the Arbitration Award, GT Hong Kong and TXT entered into a settlement agreement (the "Arbitration Settlement"), which essentially implemented the Arbitration Award, and is in fact a contract between the parties. A full copy of the Arbitration Settlement is attached to the parties' Stipulation of Undisputed Facts [D.E.791].

12. GT Hong Kong contends that the Arbitration Award itself is confidential and may not be publicly disclosed. TXT believes that the Arbitration Award is not confidential. However, in an abundance of caution, and to ensure that it is not in breach of the Arbitration Award or the Arbitration Settlement, TXT has filed the Arbitration Award under seal in the parties' adversary proceeding herein (Adv. Proc. No. 15-1007-HJB, the "Adversary Proceeding"), pending this Court's determination as to the document's confidentiality, or lack thereof. The Arbitration Award is available to the Court in an unredacted form, pursuant to TXT's Motion to Determine Non-Confidentiality of Arbitration Award and Supply Agreements and Temporarily Seal Documents (Adversary Proceeding, D.E. 3, the "Motion to Seal").

13. Under the Arbitration Settlement, GT Hong Kong was to pay TXT $24,493,318 (the "Settlement Payment") in satisfaction of the Arbitration Award through two installment payments, with the second due on September 29, 2014. The Arbitration Award and Arbitration Settlement also required GT Hong Kong to provide TXT with software licenses for 20 ASFs (the "20 ASFs"), and to remove 10 noncompliant ASFs from TXT's facility at GT Hong Kong's "sole cost and expense" (the "10 ASFs"). The software licenses were to be automatically

renewed on an annual basis for as long as TXT owned the furnaces.  Additionally, the Arbitration Settlement required GT Hong Kong to "provide whatever service is necessary to render the software operational."

14. Without current and compatible software licenses, the 20 ASFs are completely nonfunctional, and TXT is unable to use them for the production of sapphire, resulting in significant lost profits.

15. Under the Arbitration Settlement, TXT agreed to "take no further steps to file, confirm or enforce the [Arbitration] Award in any forum or court" unless GT Hong Kong failed to tender the Settlement Payment in full.  In the event that GT Hong Kong failed to complete its obligations under the Arbitration Settlement, the Arbitration Settlement provided that TXT could enforce the Arbitration Award.  Additionally, GT Hong Kong delivered a signed "Agreed Form of Affidavit for Judgment By Confession," which TXT could seek to have entered in the Supreme Court of the State of New York if GT Hong Kong failed to perform under the Arbitration Settlement.  GT Hong Kong was aware that its breach of the Arbitration Settlement would cause serious and continuing harm to TXT.

16. GT Hong Kong breached the payment terms provided in the Arbitration Settlement, including by failing to pay the Settlement Payment in full and, as is relevant hereto, by failing to timely remove the 10 ASFs from TXT's facility, as provided by the Arbitration Award and the Arbitration Settlement.  Additionally, GT Hong Kong continues to breach the Arbitration Award and Arbitration Settlement post-petition by failing to provide current and compatible software licenses for the 20 ASFs and provide the service necessary to render the software (and by extension the furnaces themselves) operational.

17. Neither the Arbitration Award nor the Arbitration Settlement is an executory contract, because: (a) the Arbitration Award is not a contract, but rather a judgment; and (b) there is no material performance remaining for TXT under either document.[1]

18. Because of GT Hong Kong's failure to timely remove the 10 ASFs, TXT has incurred $189,963.00 in storage, maintenance, utility service, and other related and consequential costs, as forth in detail in **Exhibit A**, attached hereto, and explained below.  Additionally, due to GT Hong Kong's continuing obligation to provide, and its subsequent failure to provide, current and compatible software licenses for the 20 ASFs and the service necessary to render the software operational, TXT has suffered post-petition lost profits of $3,600,000.00, attributable to the lost production capacity of the 20 ASFs.

19. TXT's post-petition storage and preservation of the 10 ASFs has benefited GT Hong Kong's bankruptcy estate in the amount of not less than $189,963.00.  Moreover, TXT has been damaged due to GT Hong Kong's post-petition and continuing failure to provide current and compatible software licenses for the 20 ASFs and provide the service necessary to render the software operational; such damages are not less than $3,600,000.00.

**Relief Requested**

20. TXT respectfully requests that the Court enter an order, substantially in the form attached hereto (the "Order") (a) allowing TXT an administrative expense claim for the full $3,789,963.00 value of the storage, maintenance, utility service, and other related and

---

[1] Courts in the First Circuit adopt the Countryman definition of executory contract: "the obligation [of] both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." In re La Electronica, Inc., 995 F.2d 320, 323 n.3 (1st Cir. 1993).  TXT has no obligations under either the Arbitration Award or the Arbitration Settlement, where the failure to perform would constitute a material breach.

5

consequential costs incurred, as well as lost profits (the "<u>Claim</u>"); and (b) directing GT Hong Kong to pay such Claim within ten business days of the entry of the Order.

**Basis For Relief**

21.   TXT is entitled to the allowance and payment of the Claim pursuant to § 503(b)(1)(A) of the Bankruptcy Code, as well as pursuant to the doctrine set forth in <u>Reading Co. v. Brown</u>, 391 U.S. 471 (1968).

22.   Section 503(b) of the Bankruptcy Code provides, in relevant part:

> (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—
> (1)(A) the actual, necessary costs and expenses of preserving the estate…

23.   As explained by the New Hampshire Bankruptcy Court, "[a]n expense may qualify for treatment under section 503(b) if '(1) the right to payment arose from a postpetition transaction with the debtor' and '(2) the consideration supporting the right to payment was beneficial to the estate of the debtor.'"  <u>In re Hopkinton Indep. Sch., Inc.</u>, 499 B.R. 158, 161 (Bankr. D.N.H. 2013) (citing <u>Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.)</u>, 954 F.2d 1, 5 (1st Cir. 1992), additional citations omitted).[2]

24.   Courts have clarified the above "post-petition transaction" requirement for allowance of an administrative expense.  "Determining whether a creditor has an administrative claim is a two-prong test: first, [the claimant] must show *either* that the debtor-in-possession (not the pre-petition entity) incurred the transaction on which the claim is based, *or that the claimant furnished the consideration to the debtor-in-possession (not the pre-petition entity)*. Second, it

---

[2] As this Court has noted in the past, <u>Hemingway Transp.</u> relied upon a pre-Code case for its analysis of administrative expense claims, and such analysis is "conservative."  <u>In re Pyxys Corp.</u>, 288 B.R. 309, 317 (Bankr. D. Mass. 2003).

6

must show that the transaction resulted in a direct benefit to the debtor-in-possession." In re Harnischfeger Indus., Inc., 293 B.R. 650, 659 (Bankr. D. Del. 2003) (citations and quotations omitted, emphasis added).

25. TXT is entitled to an administrative expense claim pursuant to § 503(b)(1)(A) of the Bankruptcy Code, because TXT has, with GT Hong Kong's direct knowledge and consent, stored, preserved, and maintained the 10 ASFs, which are property of GT Hong Kong's estate.[3] The Arbitration Settlement required GT Hong Kong to retrieve the 10 ASFs at its sole cost and expense. GT Hong Kong has neither timely retrieved the 10 ASFs nor abandoned them nor provided for any other disposition of the property. Upon information and belief, GT Hong Kong would aggressively oppose any actions by TXT to sell or dispose of the 10 ASFs.[4] Accordingly, TXT has furnished consideration to GT Hong Kong after the Petition Date.

26. The original contractual purchase price of the 98 ASFs was between $690,000.00 and $724,350.00. Even accounting for a moderate discount in value due to the ASFs' noncompliance with the contract terms, it is clear that TXT's preservation of the 10 ASFs has provided a direct and tangible benefit to GT Hong Kong's estate, by preserving estate property. Moreover, the 10 ASFs are not property that can simply be left in a non-climate-controlled warehouse until they are needed. ASFs are precision machines that require climate-control, upkeep, utility services, and security to preserve their value. Elsewhere in these proceedings, the Debtor has indicated that it is "in the process of winding down its sapphire growth operations and marketing its ASF Furnaces for sale." See *Debtor's Motion to Approve Compromise under*

---

[3] TXT estimates that the cost to disassemble, pack, and deliver the 10 ASFs to an outside warehouse or return them to GT Hong Kong would be well in excess of $2,000,000.00 (not including storage costs at the outside warehouse), and such estimate is consistent with GT Hong Kong's own statements regarding the costs involved in packing and shipping ASFs.

[4] Even if TXT wished to sell or dispose of the 10 ASFs, it is barred from doing so without relief from the automatic stay, which TXT believes GT Hong Kong would also oppose.

*Rule 9019*, D.E. 1700, filed on April 22, 2015.  Accordingly, TXT's storage, preservation, and maintenance of the 10 ASFs was and is beneficial to GT Hong Kong's estate. See, e.g., In re Aerospace Technologies, Inc., 199 B.R. 331, 340 (Bankr. M.D.N.C. 1996) (finding that the "critical factors are whether the premises were utilized by the [debtor-in-possession] for storage and whether the estate thereby was benefitted. There is no requirement that there be an express agreement between the [debtor-in-possession] and the owner of the property."); In re R. Brown & Sons, Inc., 498 B.R. 425, 441 (Bankr. D. Vt. 2013) (finding that storage fees were "actually and necessarily incurred" and entitled to payment as an administrative expense); Mohawk Indus., Inc. v. Related Indus., Inc., 64 B.R. 667, 669 (D. Mass. 1986) (examining value of use and occupancy costs attributable to debtor-in-possession).

27.    Courts have also recognized a narrowly tailored exception to the traditional test for allowing an administrative expense by acknowledging that, under certain circumstances, a claim may qualify as an administrative expense if it: (1) arises out of a post-petition transaction with the debtor-in-possession or trustee; *and* (2) results in distinct, actual, post-petition harm to the claimant.  This line of cases stems from the Supreme Court's opinion in Reading, *supra*. In Reading, a receiver's negligence in operating the debtor's business resulted in a fire which not only consumed the debtor's property, but destroyed real and personal property of neighboring third parties.  The Supreme Court held:

> At the moment when an arrangement is sought, the debtor is insolvent. Its existing creditors hope that by partial or complete postponement of their claims they will, through successful rehabilitation, eventually recover from the debtor either in full or in larger proportion than they would in immediate bankruptcy. Hence the present petitioner did not merely suffer injury at the hands of an insolvent business: it had an insolvent business thrust upon it by operation of law.

Reading, 391 U.S. at 478. The Reading Court, based on considerations of "fundamental fairness," ruled "that damages resulting from the negligence of a receiver acting within the scope

8

of his authority as receiver give rise to 'actual and necessary costs' of a Chapter XI arrangement." Id. at 485.

28.     As courts in this Circuit have held, Reading speaks to the second prong of the In re Mammoth Mart, Inc., 536 F.2d 950 (1st Cir. 1976) / Hemingway analysis, as the special category of administrative expenses arises when the claimants are injured by the debtor-in-possession's operation of the business, even though their claims did not arise from transactions that were necessary to preserve or rehabilitate the estate.  In re Diomed Inc., 394 B.R. 260, 266, n.10 (Bankr. D. Mass. 2008) (citing First Circuit cases); see also  Munce's Superior Petrol. Prods., Inc. v. N.H. Dept. Envrmt. Servs. (In re Munce's Superior Petrol. Prods.), Inc., 736 F.3d 567, 571 (1st Cir. 2013) (interpreting Reading's holding as "post-petition tort damages caused by the court-appointed receiver can be treated as 'actual and necessary' costs of the estate, regardless of whether they are beneficial to the estate, and so may qualify for administrative priority.").

29.     Applying Reading, the First Circuit Court of Appeals has similarly held that where a debtor continues to breach an order[5] post-petition, the affected creditor may be entitled to an administrative priority claim on account thereof.  Cf. Spunt v. Charlesbank Laundry, Inc. (In re Charlesbank Laundry, Inc.), 755 F.2d 200 (1st Cir. 1985) ("an intentional act which violates the law and damages others should be" treated as an administrative priority claim); Munce's, 736 F.3d 567.

30.     TXT was harmed, and continues to be harmed, by GT Hong Kong's refusal to remove the 10 ASFs, and by incurring storage costs, as well as additional damages caused by the presence of the ASFs within its property.  Further, TXT has been damaged due to GT Hong

---

[5] The Arbitration Award is a final judgment, and must be afforded the same respect as a final judgment from a court of law or equity.

Kong's continuing failure to provide current and compatible software licenses for the 20 ASFs and provide the service necessary to render the software operational. Both categories of damages qualify for administrative status under <u>Reading</u> and its progeny in the First Circuit.

### Notice

31.  Pursuant to Rule 2002 and Rule 2002-1(b) of the Local Rules of Bankruptcy Practice, notice of this Motion has been provided to (i) the Office of the United States Trustee, 1000 Elm Street, Suite 605, Manchester, NH 03101, (ii) co-counsel for the Debtors, Nixon Peabody LLP, 900 Elm Street, Manchester, NH 03101, Attn: Holly Barcroft, Esq. and Daniel W. Sklar, Esq. (iii) co-counsel for the Debtors, Nixon Peabody LLP, 100 Summer Street, Boston, MA 02110, Attn: Richard C. Pedone, Esq., (iv) co-counsel for the Debtors, Paul Hastings LLP, 75 East 55th Street, New York, NY 10022, Attn: Luc. A. Despins, Esq., and Andrew V. Tenzer, Esq., (v) co-counsel for the Debtors, Paul Hastings LLP, 600 Travis Street, 58th Floor, Houston, TX 77002, Attn: James T. Grogan, III, (vi) counsel to the Creditors' Committee, Devine, Millimet & Branch PA, 111 Amherst Street, Manchester, NH 03101, Attn: Steven E. Grill, Esq., Matthew R. Johnson, Esq., Colin P. Maher, Esq., and Charles R. Powell, III, Esq., and (vii) all parties requesting notice in this case pursuant to Bankruptcy Rule 2002.

### Waiver of Memorandum of Law

32.  TXT respectfully requests that the Court waive and dispense with the requirement set forth in Rule 7102(b)(2) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of New Hampshire that any motion filed shall have an accompanying memorandum of law. The legal authorities upon which TXT relies are set forth in this Motion,

and this Court appears to have considered the legal issues contained herein before. See, e.g., In re Pyxsys Corp., 288 B.R. 309 (Bankr. D. Mass. 2003).

WHEREFORE, TXT respectfully requests that the Court enter an Order, in the form attached hereto, allowing and compelling payment of TXT's administrative expense claim within 10 business days of the entry of the Order pursuant to 11 U.S.C. § 503(b) in the amount of $3,789,963.00, and granting such other and further relief as the Court deems just and proper.

Dated: May 20, 2015                    Respectfully submitted,
                                       **TERA XTAL TECHNOLOGY CORP.**

                                       By its attorneys:

                                        /s/ Robert J. Keach
                                       Jennifer Rood, Esq., Bar No.01395
                                       Robert J. Keach, Esq.
                                       BERNSTEIN, SHUR, SAWYER & NELSON, P.A
                                       100 Middle Street, P. O. Box 9729
                                       Portland, Maine  04104-5029
                                       Telephone: (207) 774-1200
                                       Facsimile: (207) 774-1127